# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
### ASHLAND DIVISION

| | | |
|---|---|---|
| **DAVID ERMOLD, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **0:15-CV-00046-DLB** |
| | : | |
| **v.** | : | **DISTRICT JUDGE** |
| | : | **DAVID L. BUNNING** |
| **KIM DAVIS, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

---

## DEFENDANT KIM DAVIS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

Roger K. Gannam
Jonathan D. Christman
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
Tel: (800) 671-1776
Fax: (407) 875-0770
rgannam@lc.org
jchristman@lc.org

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
Tel: (606) 677-2741
Fax: (606) 678-2977
ACDonahue@DonahueLawGroup.com

*Attorneys for Defendant Kim Davis*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 2

   A.  Kentucky Marriage Law ................................................................................... 2

   B.  Plaintiffs' Allegations ..................................................................................... 3

   C.  Procedural Posture .......................................................................................... 4

STANDARD OF REVIEW ............................................................................................. 5

ARGUMENT ................................................................................................................... 5

   A.  Plaintiffs Have Failed To State Viable Federal Constitutional Claims To Bring A Section 1983 Action ...................................................................................... 5

   B.  Plaintiffs Have Failed To Adequately Plead The Unavailability Of A Kentucky Marriage License In Rowan County, Kentucky ................................................. 9

   C.  Plaintiffs' Individual Capacity Claims Against Davis Should Be Dismissed On Qualified Immunity Grounds ......................................................................... 12

   D.  Plaintiffs Have Failed To Join Required Parties To This Litigation ................ 17

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

### *State*

*Jones v. Hallahan*,
    501 S.W.2d 588 (Ky. App. 1973) ............................................................................2

### *Federal*

*Aldini v. Johnson*,
    609 F.3d 858 (6th Cir. 2010) ...................................................................................6

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*,
    512 F.3d 800 (6th Cir. 2008) .................................................................................20

*Anderson v. Creighton*,
    483 U.S. 635 (1987)..................................................................................13, 14, 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................5

*Ashland Hosp. Corp. v. Int'l Bro. of Elec. Workers Local 575*,
    807 F. Supp. 2d 633 (E.D. Ky. 2011) .......................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................5

*Bloch v. Ribar*,
    156 F.3d 673 (6th Cir. 1998) .....................................................................................5

*Brehm v. Wesseler*,
    No. 09-60, 2011 WL 1704347 (E.D. Ky. May 4, 2011).........................................5, 6

*Brosseau v. Haugen*,
    543 U.S. 194 (2004).........................................................................................14, 15

*Campbell v. City of Springboro, Ohio*,
    700 F.3d 779 (6th Cir. 2012) ...................................................................................13

*Cope v. Heltsley*,
    128 F.3d 452 (6th Cir. 1997) ...................................................................................14

*Crocket v. Cumberland Coll.*,
    316 F.3d 571 (6th Cir. 2003) ...................................................................................13

*Daugherty v. Campbell*,
  935 F.2d 780 (6th Cir. 1991) ...................................................................14

*Estate of Carter v. Detroit*,
  408 F.3d 305 (6th Cir. 2005) .................................................................12

*Eubank v. Wesseler*,
  No. 10-210, 2011 WL 3652558 (E.D. Ky. Aug. 19, 2011) ...............................5, 14

*Glancy v. Taubman Ctrs. Inc.*,
  373 F.3d 656 (6th Cir. 2004) .................................................................18

*Hall v. Allen*,
  No. 14-116, 2014 WL 6882264 (E.D. Ky. Dec. 4, 2014) ....................................18

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982)................................................................................12

*Holzemer v. City of Memphis*,
  621 F.3d 512 (6th Cir. 2010) .................................................................13

*Horn v. City of Covington*,
  No. 14-73, 2015 WL 4042154 (E.D. Ky. July 1, 2015)........................................13

*Kennedy v. City of Villa Hills, Ky.*,
  635 F.3d 210 (6th Cir. 2011) .................................................................14

*Keweenaw Bay Indian Community v. State of Michigan*,
  11 F.3d 1341 (6th Cir. 1993) .................................................................18

*Loving v. Virginia*,
  388 U.S. 1 (1968)....................................................................................7

*Malley v. Briggs*,
  475 U.S. 335 (1986)................................................................................12

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985)................................................................................13

*Montgomery v. Carr*,
  101 F.3d 1117 (6th Cir. 1996) ................................................................7

*Obergefell v. Hodges*,
  135 S.Ct. 2584 (2015).................................................................... *passim*

*O'Malley v. City of Flint*,
  652 F.3d 662 (6th Cir. 2011) .................................................................14

*PaineWebber, Inc. v. Cohen*,
    276 F.3d 197 (6th Cir. 2001) ....................................................17, 18

*Pearson v. Callahan*,
    555 U.S. 223 (2009)....................................................12, 13

*Radvansky v. City of Olmsted Falls*,
    395 F.3d 291 (6th Cir. 2005) ....................................................6

*Rondigo, LLC v. Twp. of Richmond*,
    641 F.3d 673 (6th Cir. 2011) ....................................................13

*Saucier v. Katz*,
    533 U.S. 194 (2001)....................................................13

*Sims v. Bracken County Sch. Dist.*,
    No. 10-33, 2010 WL 4103167 (E.D. Ky. Oct. 18, 2010) ....................................................5, 13

*Turner v. Safley*,
    482 U.S. 78 (1987)....................................................8

*United States v. Windsor*,
    133 S.Ct. 2675 (2013)....................................................9

*Vaughn v. Lawrenceburg Power Sys.*,
    269 F.3d 703 (6th Cir. 2001) ....................................................7

*Walton v. City of Southfield*,
    995 F.2d 1331 (6th Cir. 1993) ....................................................14

*Zablocki v. Redhail*,
    434 U.S. 374 (1978)....................................................7, 8

## Constitutional Provisions

### *State*

KY. CONST. § 233A....................................................2

### *Federal*

U.S. CONST. amend I....................................................15, 16

## Statutes

### *State*

KY. REV. STAT. § 67.725 ....................................................11, 12

Ky. Rev. Stat. § 402.005 ...................................................................................2

Ky. Rev. Stat. § 402.050 ...................................................................................8

Ky. Rev. Stat. § 402.080 .............................................................................. *passim*

Ky. Rev. Stat. § 402.100 ...........................................................................8, 10, 19

Ky. Rev. Stat. § 402.110 ...........................................................................10, 19

Ky. Rev. Stat. § 402.240 ........................................................................10, 11, 12

Ky. Rev. Stat. § 446.350 .................................................................................19

Md. Code Ann., Fam. Law § 2-401(a) ...............................................................8

Mich. Comp. Laws § 551.101 ..........................................................................9

Mich. Comp. Laws § 551.103a ........................................................................9

Minn. Stat. § 517.07 ....................................................................................8, 9

Minn. Stat. § 517.08(a) ...................................................................................9

Ohio Rev. Code Ann. § 3101.05(a) ..................................................................9

Tenn. Code Ann. § 36-3-103............................................................................9

## *Federal*

42 U.S.C. § 1983.................................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 12(b)(6).....................................................................................5

Fed. R. Civ. P. 12(b)(7).....................................................................................17

Fed. R. Civ. P. 14............................................................................................20

Fed. R. Civ. P. 19............................................................................................17, 18

Defendant Kim Davis ("Davis"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion to Dismiss Plaintiffs' Complaint.

## I.   <u>INTRODUCTION</u>

In a targeted effort to force Davis to commit an act that violates her deeply held religious convictions and conscience, Plaintiffs have filed a federal lawsuit against her alleging a constitutional violation of the right to marry. However, Plaintiffs' claims against Davis are fatally flawed and do not survive this motion to dismiss, for multiple reasons:

*First*, Plaintiffs fail to state any viable federal constitutional claims against Davis in her individual or official capacity. Plaintiffs do not plead a viable claim relating to a fundamental right to marry because they do not allege that the Commonwealth of Kentucky is preventing them from marrying whom they want to marry. In fact, Plaintiffs plead just the opposite. Moreover, Plaintiffs do not allege that Kentucky is absolutely barring them from obtaining a Kentucky marriage license. In fact, Plaintiffs can obtain Kentucky marriage licenses elsewhere. Because Plaintiffs fail to plead a viable constitutional claim to assert a § 1983 action, their purported claims must be dismissed.

*Second*, Plaintiffs' purported "right to marry" claim rests entirely upon their assertion that they have been unable to obtain a valid marriage license "in Rowan County, Kentucky," but they have failed to even allege that they attempted all options for obtaining a Kentucky marriage license in Rowan County. As such, it is not clear from Plaintiffs' Complaint that, in fact, they are unable to obtain a marriage license in Rowan County. This pleading failure constitutes further grounds for dismissal of their Complaint.

*Third*, to the extent Plaintiffs allege claims against Davis in her individual capacity, such claims are barred on grounds of qualified immunity. As noted above, Plaintiffs have failed to plead a constitutionally-valid claim. This further demonstrates the fatal flaws to Plaintiffs' claims against

Davis in her individual capacity because Plaintiffs have not alleged the violation of any federal constitutional right, let alone one that is "clearly established." Accordingly, the individual capacity claims against Davis should be dismissed.

**Fourth**, Plaintiffs' Complaint also fails to join required parties to this litigation—specifically, the Kentucky Governor and the Commissioner of the Kentucky Department for Libraries and Archives ("KDLA"). This Court cannot afford complete relief among the existing parties without such persons joined to this action. Both the Kentucky Governor and KDLA Commissioner have an interest in this litigation that will be impaired without their involvement in this litigation and, without them, Davis is subject to inconsistent obligations.

For all the foregoing reasons, Plaintiffs' Complaint should be dismissed.

## II.    RELEVANT BACKGROUND

### A.    Kentucky Marriage Law.

The Commonwealth of Kentucky has a body of democratically-approved law regarding the definition of marriage. Among other things, in 2004, the Kentucky legislature proposed a constitutional amendment on marriage that was approved by seventy-four (74%) of the voters, and enacted in the Commonwealth's basic charter affirming that "[o]nly a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky." *See* KY. CONST. § 233A; *see also* KY. REV. STAT. § 402.005 ("'[M]arriage refers only to the civil status, condition, or relation of one (1) man and one (1) woman united in law for life, for the discharge to each other and the community of the duties legally incumbent upon those whose association is founded on the distinction of sex."); *Jones v. Hallahan*, 501 S.W.2d 588, 589 (Ky. App. 1973) (holding that two Kentucky women who had applied for a marriage license in Kentucky were not entitled to one because marriage was "the union of a man and a woman").

But on June 26, 2015, a majority of the United States Supreme Court held that democratically-approved laws from four states, including Kentucky, defining marriage as the union of a man and a woman were "invalid to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." *Obergefell v. Hodges*, 135 S.Ct. 2584, 2605 (2015). According to the "five lawyer" majority, *id.* at 2612, 2624 (Roberts, C.J., dissenting), the United States Constitution "does not permit the State to bar same-sex couples from marriage on the same terms as accorded to couples of the opposite sex," *id.* at 2607 (Kennedy, J., majority).

Before the ink was even dry from this opinion, Kentucky Governor Steven L. Beshear ("Governor Beshear"), the "state official[] responsible for enforcing" the Kentucky marriage law in question in *Obergefell*, 135 S.Ct. at 2593, sent a letter on the same day to all "Kentucky County Clerks" informing them that "[e]ffective today, Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky." *See* D.E. 1-1, Ex. 1 to Plaintiffs' Complaint, Ltr. from Gov. Steven L. Beshear to Kentucky County Clerks, dated June 26, 2015 ("Beshear Letter"). Governor Beshear stated that "Kentucky . . . must license and recognize the marriages of same-sex couples," and further instructed that "[n]ow that same-sex couples are entitled to the issuance of a marriage license, the Department of Libraries and Archives will be sending a gender-neutral form to you today, along with instructions for its use." *Id.*

**B.**     **Plaintiffs' Allegations.**

Plaintiffs are allegedly two males residing in Kentucky who purportedly desire a Kentucky marriage license. *See* D.E. 1, Compl., at ¶¶ 3-4, 7, 13. Plaintiffs allegedly want to marry each other. *Id.* at ¶¶ 6, 9, 13. Plaintiffs allege that Kentucky is recognizing same-sex "marriage" ("SSM") as marriage, and the Kentucky Governor sent a letter to all Kentucky County Clerks after the

*Obergefell* decision ordering them to issue marriage licenses, including SSM licenses. *Id.* at ¶¶ 11-12; *see also* D.E. 1-1, Beshear Letter.. *Id.* at ¶ 11. Plaintiffs allege that they meet all of the necessary qualifications for obtaining a Kentucky marriage license. *Id.* at ¶ 9.

Plaintiffs allege they were unable to obtain a Kentucky marriage license at the Rowan County clerk's office when they physically went to that office on July 6, 2015 to obtain such a license. *Id.* at ¶¶ 13, 17. Plaintiffs allege that they physically went to the county clerk's office following the Supreme Court's decision in *Obergefell* to obtain a "marriage license from the Rowan County Clerk." *Id.* at ¶ 13. Plaintiffs claim that Davis, the duly-elected Rowan County Clerk, is preventing them from obtaining a Kentucky marriage license. *See* D.E. 1, Compl., at ¶¶ 5, 12, 16-17. Plaintiffs allege that Davis was unable to issue SSM licenses based upon her "deeply held Christian beliefs" about marriage. *Id.* at ¶¶ 17-18.

In their Complaint, Plaintiffs purport to bring a Section 1983 action against Defendant Davis in her individual and official capacities alleging a deprivation of the fundamental right to marry. *See* D.E. 1, Compl., at p. 3. Plaintiffs are seeking declaratory and injunctive relief, as well as damages, including punitive damages, attorneys' fees, and costs against Davis. *See id.* at p. 6, Wherefore Clause.

### C.    <u>Procedural Posture.</u>

Plaintiffs' Complaint was filed and served upon Davis on July 10, 2015. *See* D.E. 1, 4. On July 31, 2015, this Court entered a stipulated order extending the time for Davis to file her response to Plaintiffs' Complaint until August 4, 2015. *See* D.E. 10. Davis now timely files this Motion to Dismiss.

### III.    STANDARD OF REVIEW

Under a Rule 12(b)(6) motion to dismiss, "the Court's job is to test the sufficiency of the complaint." *Ashland Hosp. Corp. v. Int'l Bro. of Elec. Workers Local 575*, 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011) (Bunning, J.). Although a Court reviewing a Rule 12(b)(6) motion "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true," *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted), this Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Ashland Hosp.*, 807 F. Supp. 2d at 638 (internal citations omitted).

To survive a motion to dismiss, Plaintiffs' complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Plaintiffs' complaint must therefore provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Eubank v. Wesseler*, No. 10-210, 2011 WL 3652558, at *3 (E.D. Ky. Aug. 19, 2011); *Sims v. Bracken County Sch. Dist.*, No. 10-33, 2010 WL 4103167, at *4 (E.D. Ky. Oct. 18, 2010) (Bunning, J.).

### IV.    ARGUMENT

####   A.    Plaintiffs Have Failed To State Viable Federal Constitutional Claims To Bring A Section 1983 Action.

For Plaintiffs' § 1983 claims to succeed against Davis, they must "establish a violation of **some right guaranteed by the United States Constitution or federal statute** by one acting under the color of state law." *Brehm v. Wesseler*, No. 09-60, 2011 WL 1704347, at *4 (E.D. Ky. May 4,

2011) (Bunning, J.) (emphasis added) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005). This is because "[s]ection 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). Plaintiffs, however, identify no federal constitutional right that has been infringed by Davis. Although Plaintiffs reference a "constitutional right to marry," *see*, *e.g.*, D.E. 1, Compl., at ¶ 26, they fail to allege any viable federal constitutional claims in their Complaint.

Critically, Plaintiffs do not allege that the Commonwealth of Kentucky is preventing them from marrying whom they want to marry, or barring them from obtaining a Kentucky marriage license. To the contrary, Plaintiffs' Complaint actually concedes that marriage licenses, including their desired SSM license, are readily available throughout Kentucky, and have been for more than one month. *See* D.E. 1, Compl., at ¶ 11. Under Kentucky law, a marriage license "may be issued by any county clerk" so long as "the female" in the proposed union is "eighteen (18) years of age or over or a widow, and the license is issued on her application in person or by writing signed by her." Ky. Rev. Stat. § 402.080. Thus, under Kentucky law, **individuals who reside in one Kentucky county are not required to obtain their marriage license in that county**. In this matter, the Plaintiffs allegedly reside in Rowan County, *see* D.E. 1, Compl., at ¶¶ 3-4, 7, but Kentucky law does not mandate that they must obtain a marriage license in their home county. In fact, Kentucky marriage licenses, including SSM licenses, are being issued (or will be issued) to individuals (including Plaintiffs) throughout Kentucky.

Thus, Plaintiffs do not allege a violation of a fundamental constitutional right to marry. Instead, Plaintiffs allege a violation of a purported federal constitutional right to receive a marriage license signed by a particular individual ("from the Rowan County Clerk") in a particular county

("a valid marriage license in Rowan County, Kentucky"). *See* D.E. 1, Compl., at ¶¶ 13, 30. There is no such right, let alone a clearly established one. In demanding a fundamental right to have a specific individual approve of and participate in their marriage, Plaintiffs overlook clear precedent that not every act, policy, rule, or regulation "which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). Heightened scrutiny only applies to restrictions on the right to marry that are "direct and substantial." Contrary to Plaintiffs' suggestion, "[m]erely placing a non-oppressive burden on the decision to marry . . . is not sufficient to trigger heightened constitutional scrutiny." *Montgomery v. Carr*, 101 F.3d 1117, 1125 (6th Cir. 1996). Instead, a "direct and substantial" burden requires an "absolute barrier" in which individuals are "absolutely or largely prevented from marrying" who they want to marry or "absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). The lack of a marriage license "from the Rowan County Clerk," *see* D.E. 1, Compl., at ¶ 13, "does not change the essential fact" that Plaintiffs are not barred "from getting married, nor did it prevent them from marrying a large portion of population even in [Rowan] County." *Vaughn*, 269 F.3d at 712. No allegation has been made in this case that any absolute barrier exists preventing either Plaintiff from marrying whom they want to marry in Kentucky, and from having that marriage recognized by the Commonwealth of Kentucky.

The right to marry cases cited by Plaintiffs in their Complaint do not compel a different conclusion. Critically, unlike here, the cases of *Loving v. Virginia*, 388 U.S. 1 (1968), and *Obergefell*, 135 S.Ct. 2584, involve state-wide bans affecting marriage. *See*, *e.g.*, *Loving*, 388 U.S. at 11-12 (striking down Virginia ban on inter-racial marriages); *Obergefell*, 135 S.Ct. at 2593,

2599-2605 (redefining marriage to include same-sex couples, and striking down Kentucky, Tennessee, Michigan and Ohio marriage laws to the contrary).[1]

Moreover, despite Plaintiffs' constant refrain in their Complaint, this case is neither the same case as *Obergefell* nor controlled by it. Before *Obergefell*, Plaintiffs, as two men, were "absolutely prevented" from obtaining a Kentucky marriage license if they wanted to marry each other. No same-sex couple was able to obtain a Kentucky marriage license in any one of Kentucky's 120 counties. And even if Plaintiffs had gotten "married" in a different state, their "marriage" would not have been recognized in Kentucky. But now individuals desiring SSM licenses can obtain them because Kentucky is recognizing same-sex "marriage" and, in fact, nearly all county clerks are issuing SSM licenses. *See* D.E. 1, Compl., at ¶ 11; *see also* D.E. 1-1, Beshear Letter. Nevertheless, Plaintiffs are claiming a violation of the fundamental right to marry unless they (i) obtain a marriage license in their home county and (ii) it is approved by a particular individual. Neither is a right mandated by *Obergefell*, and neither implicates a direct and substantial burden on a fundamental right to marry.

Furthermore, state marriage laws differ across the country, and Kentucky marriage law is far less restrictive than other states, even if Davis is exempted from administering it on the basis of her sincerely held religious beliefs. For instance, some states require prospective couples to obtain a license in the county where the ceremony will occur, *see*, *e.g.*, MD. CODE ANN., FAM. LAW § 2-401(a), whereas others permit residents to obtain their license in one county and hold their ceremony in another county, *see*, *e.g.*, KY. REV. STAT. §§ 402.050, 402.080, 402.100; MINN. STAT.

---

[1]     Other right to marry cases from the Supreme Court similarly involve state-wide bans barring individuals from marrying whom they want to marry. *See Turner v. Safley*, 482 U.S. 78, 81-82, 99 (1987) (striking down Missouri prison regulation that represented a near "almost complete ban" on inmate marriage); *Zablocki*, 434 U.S. at 379, 390-91 (striking down Wisconsin law that required any resident with child support obligations to satisfy such obligations before marrying and to obtain a court order permitting the marriage).

§ 517.07. Some states require a prospective couple to obtain their license in their home county, *see*, *e.g.*, MICH. COMP. LAWS § 551.101; OHIO REV. CODE ANN. § 3101.05(a), whereas others allow residents to obtain a license in any county, *see* KY. REV. STAT. § 402.080; TENN. CODE ANN. § 36-3-103. Some states require a prospective couple to wait to receive their license upon application, *see*, *e.g.*, MICH. COMP. LAWS § 551.103a (3 days); MINN. STAT. § 517.08(a) (5 days), whereas others (*e.g.*, Kentucky, Ohio, Tennessee) have no waiting period. To find that Plaintiffs state a viable federal constitutional claim here—when they can marry whom they want, obtain a marriage license throughout Kentucky, and have their "marriage" recognized by the Commonwealth of Kentucky—would turn every commonplace marriage-related law in all fifty states into a possible federal constitutional claim. However, laws regarding "the definition and regulation of marriage" have "long been regarded as a virtually exclusive province of the States." *United States v. Windsor*, 133 S.Ct. 2675, 2689-91 (2013). Moreover, a mere inconvenience at a governmental office does not constitute an irreparable harm. Otherwise, everyone who has ever visited the local DMV has suffered a potential federal constitutional injury to be litigated in the federal courts pursuant to § 1983. In the case at bar, Plaintiffs are neither absolutely nor largely prevented from marrying whom they want under Kentucky law. Therefore, no viable federal constitutional right has been alleged in their Complaint to pursue a Section 1983 action and therefore Plaintiffs' Complaint must be dismissed against Davis.

### B. Plaintiffs Have Failed To Adequately Plead The Unavailability Of A Kentucky Marriage License In Rowan County, Kentucky.

Plaintiffs' purported "right to marry" claim rests entirely upon their assertion that "a valid marriage license in Rowan County, Kentucky" is unavailable to them. *See* D.E. 1, Compl., at ¶ 30. Yet Plaintiffs' Complaint does not even allege that Plaintiffs have attempted all options for

obtaining a Kentucky marriage license in Rowan County, Kentucky. As such, it is not clear from Plaintiffs' Complaint that, in fact, they are unable to obtain a marriage license in Rowan County.

As noted above, under Kentucky marriage law, individuals may obtain a marriage license from the county clerk in any of Kentucky's 120 counties, **irrespective of their county of residence**. KY. REV. STAT. § 402.080. Pursuant to Kentucky's marriage licensing scheme, "[e]ach county clerk shall use the form proscribed by the Department for Libraries and Archives [KDLA] when issuing a marriage license," KY. REV. STAT. § 402.100, that "[t]he form of marriage licensed prescribed in KRS 402.100 shall be uniform throughout this state," KY. REV. STAT. § 402.110.[2] **But Kentucky marriage law also provides an alternative procedure for the issuance of marriage licenses** "[i]n the absence of the county clerk, or during a vacancy in the office." KY. REV. STAT. § 402.240. According to this option, the county judge/executive for each county "may issue the license" instead of the county clerk "and, in so doing, he shall perform the duties and incur all the responsibilities of the clerk. The county judge/executive shall return a memorandum thereof to the clerk, and the memorandum shall be recorded as if the license had been issued by the clerk." *Id.*

Because of her religious conscience objection founded upon her "deeply held Christian beliefs," which Plaintiffs concede in their Complaint, *see* D.E. 1, Compl., at ¶ 16, Davis should be rendered legally absent for purposes of issuing marriage licenses, triggering Section 402.240 of

---

[2] This KDLA-approved form used by county clerks "shall consist of" a "marriage license" that includes an "authorization statement of the county clerk issuing the license" and "[t]he date and place the license is issued, and the signature of the county clerk or deputy clerk issuing the license." KY. REV. STAT. § 402.100(1). This form "shall" also include a "marriage certificate" that includes "[a] signed statement by the county clerk or a deputy county clerk of the county in which the marriage license was issued that the marriage license was recorded." KY. REV. STAT. § 402.100(2). Upon solemnization, the form is to be returned to the county clerk's office and "shall provide" certain "information as recorded on the license authorizing the marriage," including the "***the name of the county clerk under whose authority the license was issued***, and the county in which the license was issued." KY. REV. STAT. § 402.100(3) (emphasis added). Thus, no marriage license is issued by a county clerk without their authorization and without their imprimatur.

Kentucky's marriage law. In their Complaint, however, Plaintiffs alleged no facts that they have even attempted to obtain a marriage license from the Rowan County Judge/Executive pursuant to Section 402.240. Plaintiffs' failure to plead that they have attempted all options available for obtaining a marriage license in Rowan County is further reason for dismissing this action based upon an alleged inability to obtain a marriage license "in Rowan County, Kentucky." *See* D.E. 1, Compl., at ¶ 30.

By its terms, Section 402.240 is not exclusively limited to vacancies in the county clerk position for it also applies "[i]n the absence of the county clerk." *Id.* The word "absence" is not defined in this statute or Kentucky's general statute providing definitions for statutory terms, and no legislative history for this statute was found. As a result, this Court is left to interpret the meaning of "absence" in this provision. This Court should interpret "absence" to include unavailability based upon religious conscience objections. Among its dictionary definitions, "absence" can mean "[w]ant, lack, privation, or failure of something," or "a failure to . . . be available . . . when expected," Black's Law Dictionary (10th ed. 2014). The effectual purpose of the provision supports an interpretation that includes religious conscience-based objections. Davis is not available to issue marriage licenses bearing her imprimatur and requiring her authorization because she has a religious conscience objection based upon "deeply held Christian beliefs." *See* D.E. 1, Compl., at ¶ 16. The statute envisions situations (but does not specifically delineate the terms) in which a county clerk may be unable or unavailable to issue a license to a couple looking to be married under Kentucky law.

"Absence" need not be limited to physical absence from the county clerk's office for if the Kentucky legislature intended "absence" to be so limited, it could have expressly limited its definition, as it did in KY. REV. STAT. § 67.725 ("For the purpose of KRS 67.730 to 67.745, the

regular county judge/executive . . . shall be deemed 'absent' when he is outside the county at the time of the occurrence or declaration of the emergency and is unable to return"). By not similarly limiting "absence" in Section 402.240, the word absence need not be so constricted. Therefore, a county clerk's absence could result from a medical procedure, a disability, a vacation, or their conscience. In none of these situations is the purpose of the statute abrogated. Furthermore, interpreting Section 402.240 to include conscience-based objections does not shift an unmanageable burden upon county judge/executives in general because this provision is only triggered if a county clerk asserts a religious conscience-based objection deeming him or her legally absent, which appears to have happened in only a few counties across Kentucky. Because a county judge/executive possesses authority to issue a marriage license when a county clerk is legally absent from issuing marriage licenses based upon her religious conscience objection, Plaintiffs possess another option for obtaining a marriage license in Rowan County that they appear to have not even pursued. Instead, Plaintiffs waited to seek a license "from the Rowan County Clerk" until after they learned of her religious conscience objection to SSM. *See* D.E. 1, Compl., at ¶¶ 11-12. As a result, by failing to allege any facts regarding this possible alternative in Rowan County for obtaining a marriage license in Rowan County, Plaintiffs have failed to adequately plead that a "marriage license in Rowan County, Kentucky" is unavailable to them.

### C. Plaintiffs' Individual Capacity Claims Against Davis Should Be Dismissed On Qualified Immunity Grounds.

Qualified immunity generally "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (citation omitted). "The purpose of the doctrine is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation," *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 231), thereby saving the official from the burdens of discovery and the costs of trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Sims*, 2010 WL 4103167, at *4. Qualified immunity is also intended to serve the public interest "by permitting officials to take action with independence and without fear of consequences." *Crocket v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003) (internal quotations omitted).

In reviewing qualified immunity at this stage, this Court determines whether an official is entitled to qualified immunity under a two-step inquiry: (1) whether a constitutional right has been violated and (2) if so, whether the right was clearly established and one that a reasonable official should have known. *See Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); *Horn v. City of Covington*, No. 14-73, 2015 WL 4042154, at *5 (E.D. Ky. July 1, 2015) (Bunning, J.); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). In connection with this second inquiry, Sixth Circuit Courts consider whether what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right. *See*, *e.g.*, *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Unless the plaintiff's allegations state a claim of violation of **clearly established law**, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." *Mitchell*, 472 U.S. at 526 (emphasis added).

In the case at bar, Plaintiffs have failed to allege facts sufficient to overcome the application of the doctrine of qualified immunity. As discussed above in Section IV.A, *supra*, and incorporated by reference here, Plaintiffs have failed to state a viable federal constitutional claim. In that same vein, they have failed to sufficiently allege the violation of a federal constitutional right, a prerequisite for overcoming a qualified immunity defense. Indeed, there is no constitutional right to have a particular person authorize a SSM license and affix their imprimatur to that permanent public record, especially if that person holds "deeply held Christian beliefs" prohibiting her from participating in and approving of SSM.

But even if Plaintiffs had sufficiently alleged the violation of a federal constitutional right, they have not demonstrated a "clearly established" constitutional right. This "right 'must have been clearly established **in a . . . particularized . . . sense**: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 214 (6th Cir. 2011) (emphasis added) (quoting *Anderson*, 483 U.S. at 640) (internal quotations omitted); *see also Eubank*, 2011 WL 3652558, at *10. The official's "unlawfulness" must be "apparent" in "the light of pre-existing law." *Anderson*, 483 U.S. at 640.

In deciding whether a constitutional right is clearly established, the Sixth Circuit "'look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991); *see also O'Malley v. City of Flint*, 652 F.3d 662, 667-68 (6th Cir. 2011). "This standard requires the courts to examine the asserted right **at a relatively high level of specificity**[,]" and "on a fact-specific, case-by-case basis[.]" *Cope v. Heltsley*, 128 F.3d 452, 458–59 (6th Cir. 1997) (emphasis added)

(citations and internal quotation marks omitted). Where a case arises in an area "in which the result depends very much on the facts of each case," and no case "squarely governs the case here," no clearly established right is demonstrated. *See Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (per curiam).

The relevant constitutional law in this matter is not whether the Commonwealth of Kentucky is required to issue and recognize SSM as a matter of clearly established law. The Kentucky Governor has already publicly declared that Kentucky will issue SSM licenses and recognize SSM licenses issued by other states. *See* D.E. 1, Compl., at ¶ 11; *see also* D.E. 1-1, Beshear Letter. Instead, the particular inquiry governing this specific matter is whether each and every county clerk must authorize and approve SSM without any accommodation for their sincerely-held religious beliefs. This issue has not been specifically litigated in Kentucky, let alone decided by the Sixth Circuit or the Supreme Court (whether in its recent *Obergefell* decision or some other case), and therefore the law cannot be "clearly established." Certainly then, this case is not "squarely governed" by any single (or set) of cases.

Moreover, in this matter, to the extent Plaintiffs point to any "pre-existing law" that was clearly established, *Anderson*, 483 U.S. at 640, to overcome Davis' qualified immunity, they will be limited exclusively to the sudden redefinition of marriage on June 26, 2015 in the *Obergefell* decision. But **in *Obergefell*, the Court unanimously agreed that First Amendment protections remain despite same-sex "marriage."** Specifically, dissenting justices in *Obergefell* recognized that "[m]any good and decent people oppose same-sex marriage as a tenet of faith, and their freedom to exercise religion" is specifically "spelled out" in the First Amendment of the Constitution. *Obergefell*, 135 S.Ct. at 2625 (Roberts, C.J., dissenting). Continuing, these Justices noted that "[r]espect for sincere religious conviction has led voters and legislators in every State

that has adopted same-sex marriage democratically to include accommodations for religious practice." *Id*.; *see also id.* at 2638 (explaining the historical significance of "religious liberty") (Thomas, J., dissenting). **The majority opinion also recognized that religious freedoms continue unabated even as they redefined marriage**:

> Finally, it must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and **persons** are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

*Obergefell*, 135 S.Ct. at 2607 (Kennedy, J., majority) (emphasis added).

Not only that, the nature of the religious objection in the context of marriage is even more firmly established in history because the "meaning of marriage" as a union between one man and one woman "has persisted in every culture," "has formed the basis of human society for millennia," and has singularly "prevailed in the United States throughout our history." *Obergefell*, 135 S. Ct. at 2612-13 (Roberts, C.J., dissenting); *see also id.* at 2641 ("For millennia, marriage was inextricably linked to the one thing that only an opposite-sex couple can do: procreate.") (Alito, J., dissenting). In fact, the majority in *Obergefell* conceded that the institution of marriage as exclusively a union between a man and a woman "has existed for millennia and across civilizations" and this view "long has been held—**and continues to be held—in good faith by reasonable and sincere people here and throughout the world**." *Obergefell*, 135 S. Ct. at 2594 (Kennedy, J., majority) (emphasis added). Thus, although the traditional view of marriage was discarded in *Obergefell*, that long-held view of marriage provides the historical underpinnings for a religious exemption and accommodation from the redefinition of marriage. In light of the

foregoing, Plaintiffs have offered no evidence or factual allegations that Davis' actions were objectively unreasonable.

Furthermore, similar to any other case involving religious conscience claims and religious accommodation concerns, the facts of each case are critical, and no less here. In this matter, Plaintiffs are not required by state law to obtain a marriage license in their home county. *See* KY. REV. STAT. § 402.080. Also, in fact, Davis is one of only two or three (out of 120 County Clerks across the Commonwealth of Kentucky) who has expressly raised and consistently maintained a conscience objection to issuing SSM licenses following *Obergefell*. Finally, Plaintiffs openly concede that Davis maintains "deeply held Christian beliefs" against SSM, *see* D.E. 1, Compl., at ¶ 16, and yet, rather than attempting to obtain a license elsewhere (such as one of the seven counties neighboring Rowan County), they have filed a purported § 1983 action demanding that Davis approve, endorse, and authorize their same-sex "marriage" with her name and imprimatur.

In sum, in light of the sudden wake and changing legal landscape engendered by the Supreme Court's ruling in *Obergefell*, the enumerated United States and Kentucky Constitutional protections for conscience, religious freedom, and speech, the long-standing historical definition of marriage in Kentucky that comports with Davis' sincerely-held religious beliefs, the undisputed conviction with which Davis holds her religious beliefs, and the obvious constitutional conflict presented by the case at bar, the doctrine of qualified immunity protects Davis from any civil damages in her individual capacity. Therefore, any such claims against Davis must be dismissed.

### D.    Plaintiffs Have Failed To Join Required Parties To This Litigation.

Federal Rule of Civil Procedure 12(b)(7) permits dismissal of an action based upon a failure to join a party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). "If a person has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2). This case cannot proceed without the Kentucky Governor (Steve Beshear) and KDLA Commissioner

(Wayne Onkst), and therefore must be dismissed unless these persons are joined in their official capacities to this litigation. Rule 19 "establishes a three-step analysis for determining whether a case should proceed in the absence of a particular party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001); *see also Glancy v. Taubman Ctrs. Inc.*, 373 F.3d 656, 666 (6th Cir. 2004); *Hall v. Allen*, No. 14-116, 2014 WL 6882264, at *3 (E.D. Ky. Dec. 4, 2014) (Thapar, J.).

First, the Court must determine whether party is necessary to the litigation under Rule 19(a). *PaineWebber*, 276 F.3d at 200; *Glancy*, 373 F.3d at 666. A party's presence in an action is necessary or "required" under Rule 19 if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1); *Glancy*, 373 F.3d at 666.

Second, this Court considers whether joinder of that person will deprive this Court of jurisdiction. *PaineWebber*, 276 F.3d at 200; *Glancy*, 373 F.3d at 666. Third, if joinder is not feasible because it will eliminate the Court's jurisdiction, this Court must consider Rule 19(b) factors to "determine whether the court should "in equity and good conscience" dismiss the case because the absentee is indispensable." *Glancy*, 373 F.3d at 666 (citing Fed. R. Civ. P. 19(b)). In this action, because joinder of the Kentucky Governor and KDLA Commissioner will not deprive this Court of its "ability to hear the case," *Glancy*, 373 F.3d at 666, the second (jurisdiction) and third (indispensability) factors need not be considered. *See Keweenaw Bay Indian Community v. State of Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). Accordingly, the only remaining analysis

necessary at this junction is whether the Kentucky Governor and KDLA Commissioner are "required" parties within one of the provisions of Rule 19(a).

In the case at bar, this Court cannot accord complete relief among the existing parties without the Kentucky Governor and KDLA Commissioner joined to this action. Plaintiffs are demanding that Davis personally approve and authorize with her name and imprimatur **Kentucky** marriage licenses without considering all of Kentucky marriage law, including the Kentucky Religious Freedom Restoration Act ("Kentucky RFRA"), codified at KY. REV. STAT. § 446.350, and the enumerated United States and Kentucky Constitutional protections for conscience, religious liberty, and speech. Davis has expressly requested religious accommodation from the Kentucky Governor's mandate and directive to all "Kentucky County Clerks" to issue SSM licenses. Without the Kentucky Governor and KDLA Commissioner joined to this action, this Court cannot accord complete relief among the existing parties.

Additionally, the Kentucky Governor and KDLA Commissioner have an interest in the subject matter of this action and disposing of this action in their absence will impair or impede their ability to protect their interest. First, the Kentucky Governor and KDLA Commissioner (who oversees the department responsible for designing the prescribed marriage license form in Kentucky, *see* KY. REV. STAT. §§ 402.100, 402.110) have a clear and unmistakable interest in Kentucky marriage law. Second, the Kentucky Governor has an obligation to ensure that Kentuckians' consciences and religious liberties are protected, including those of Davis, as set forth in the United States and Kentucky Constitutions, the Kentucky RFRA, and other civil rights legislation. Third, the Kentucky Governor has an interest in protecting the Commonwealth of Kentucky from the possibility of an adverse judgment for which it may be responsible.

Plaintiffs' failure to join the Kentucky Governor and KDLA Commissioner to this litigation also leaves Davis subject to a substantial risk of incurring inconsistent obligations. Without joining the Kentucky Governor and KDLA Commissioner, Davis may be affirmatively enjoined to issue a Kentucky marriage license in this matter while simultaneously receiving her own injunction against the Kentucky Governor and KDLA Commissioner in an entirely separate matter.[3]

## V.     CONCLUSION

For all the foregoing reasons, Davis' Motion to Dismiss Plaintiffs' Complaint should be granted.

DATED: August 4, 2015

Respectfully submitted:

/s/ Jonathan D. Christman

A.C. Donahue
Donahue Law Group, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
Tel: (606) 677-2741
Fax: (606) 678-2977
ACDonahue@DonahueLawGroup.com

Roger K. Gannam
Jonathan D. Christman
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
Tel: (800) 671-1776
Fax: (407) 875-0770
rgannam@lc.org
jchristman@lc.org

*Attorneys for Defendant Kim Davis*

---

[3]     For multiple reasons, including the possibility of inconsistent obligations, and their liability to Davis in connection with Plaintiffs' claims, Davis will bring a Third-Party Complaint naming Governor Beshear and Commissioner Onkst as third-party defendants for any claims against Davis that survive the pleading stage in this action. *See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (the purpose of third-party complaints under Rule 14 is to avoid "duplicative actions" and permit "additional parties whose rights may be affected by the decision in the original action to be joined so as to expedite the final determination of the rights and liabilities of all the interested parties in one suit"). The foregoing representation should not be construed as a waiver of any arguments, defenses, or objections raised herein or to be raised by Davis in answering Plaintiffs' Complaint, if an answer is ultimately required.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF

filing system and therefore service will be effectuated by the Court's electronic notification system

upon all counsel or parties of record:

Joseph D. Buckles
Thomas P. Szczygielski
149 North Limestone
Lexington, KY 40507
joe@joebuckles.com
tom@tpslawoffice.com

DATED: August 4, 2015

/s/ Jonathan D. Christman
Jonathan D. Christman
*Attorney for Defendant Kim Davis*