## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## ASHLAND DIVISION

| | | |
|---|---|---|
| **DAVID ERMOLD, et al.,** | **:** | **CIVIL ACTION** |
| | **:** | |
| **Plaintiffs,** | **:** | **0:15-CV-00046-DLB** |
| | **:** | |
| **v.** | **:** | **DISTRICT JUDGE** |
| | **:** | **DAVID L. BUNNING** |
| **KIM DAVIS,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

---

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT

Horatio G. Mihet
Roger K. Gannam
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@LC.org
rgannam@LC.org

A.C. Donahue
DONAHUE LAW GROUP, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
Tel: (606) 677-2741
Fax: (606) 678-2977
ACDonahue@DonahueLawGroup.com

*Attorneys for Defendant, Kim Davis*

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

REQUEST FOR ORAL ARGUMENT ............................................................................1

INTRODUCTION ............................................................................................................1

RELEVANT BACKGROUND .......................................................................................2

      A.     *Obergefell* and the Kentucky Marriage Licensing Scheme. ....................................3

      B.     Davis' Sincerely-Held Religious Beliefs about Marriage. ......................................3

      C.     The *Miller v. Davis* Litigation. ...............................................................................4

      D.     The Executive Order. ...............................................................................................5

      E.     SB 216....................................................................................................................6

      F.     Plaintiffs' Lawsuit...................................................................................................7

STANDARD OF REVIEW ..............................................................................................8

ARGUMENT ....................................................................................................................8

I.     THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE DAVIS IS IMMUNE FROM PLAINTIFFS' DAMAGES CLAIMS. ..................................................8

      A.     Immunity Claims Must Be Resolved at the Earliest Stage of Litigation. ...............9

      B.     In Her Official Capacity, Davis Is a State Agent with Sovereign Immunity under the Eleventh Amendment..........................................................................................10

      C.     In Her Individual Capacity, Davis Has Qualified Immunity from Plaintiffs' Damages Claims Because Davis Did Not Violate Any Clearly Established Law. ...........................................................................................................................14

II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO STATE VIABLE FEDERAL CONSTITUTIONAL CLAIMS....................................................................................22

CONCLUSION................................................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010)................................................................22

*Anderson v. Creighton*, 483 U.S. 635 (1987) .............................................................9,14,15,17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................8

*Ashland Hosp. Corp. v. Int'l Bro. of Elec. Workers Local 575*,
807 F. Supp. 2d 633 (E.D. Ky. 2011) ...........................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................8

*Bloch v. Ribar*, 156 F.3d 673 (6th Cir. 1998) ...........................................................8

*Brehm v. Wesseler*, No. 09-60, 2011 WL 1704347
(E.D. Ky. May 4, 2011) ...........................................................................22

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ...................................................................16

*Butz v. Economou*, 438 U.S. 478 (1978)......................................................................21

*Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009) .....................................................10

*Campbell v. City of Springboro*, 700 F.3d 779 (6th Cir. 2012) .....................................14

*Carroll v. Reed*, 425 S.W.3d 921 (Ky. Ct. App. 2014)....................................................13

*Cope v. Heltsley*, 128 F.3d 452 (6th Cir. 1997) .............................................................16

*Crocket v. Cumberland Coll.*, 316 F.3d 571 (6th Cir. 2003) ..........................................14

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)....................................................10

*Daugherty v. Campbell*, 935 F.2d 780 (6th Cir. 1991) ....................................................16

*Estate of Carter v. Detroit*, 408 F.3d 305 (6th Cir. 2005) .............................................14

*Eubank v. Wesseler*, No. 10-210, 2011 WL 3652558 (E.D. Ky. Aug. 19, 2011)..........................8

*Gibbs v. Lomas*, 755 F.3d 529 (7th Cir. 2014) .......................................................15,20

*Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684 (6th Cir. 2002) ...............................10,11,13

*Graves v. Mahoning County*, No. 4:10CV2821, 2015 WL 403156
(N.D. Ohio Jan. 28, 2015)..........................................................................11

*Graves v. Mahoning County*, 821 F.3d 772 (6th Cir. 2016) ....................................................11

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................................1,9,14,21

*Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010)..............................................14

*Kennedy v. City of Villa Hills*, 635 F.3d 210 (6th Cir. 2011) ........................................15

*Leslie v. Lacy*, 91 F. Supp. 2d 1182 (S.D. Ohio 2000) ....................................................11

*Loving v. Virginia*, 388 U.S. 1 (1968).............................................................................23

*Malley v. Briggs*, 475 U.S. 335 (1986) .........................................................................14

*Miller v. Davis*, 123 F. Supp. 3d 924 (E.D. Ky. 2015) ................................3,4,11,18,19

*Miller v. Davis*, 667 F. App'x 537 (6th Cir. 2016) .........................................................3,6

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...............................................................9,10,14

*Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996) .................................................23

*O'Malley v. City of Flint*, 652 F.3d 662 (6th Cir. 2011)................................................16

*Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)................................................... *passim*

*Pearson v. Callahan*, 555 U.S. 223 (2009)..............................................14,15,18,19,20

*Pinkhasov v. Petocz*, 331 S.W.3d 285 (Ky. App. 2011) ................................................11

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)....................................................................................................9,10

*Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993)..........................................10,11

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005).............................22

*Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)................................9

*Saucier v. Katz*, 533 U.S. 194 (2001) ......................................................................14,18

*Sims v. Bracken County Sch. Dist.*, No. 10-33, 2010 WL 4103167 (E.D. Ky. Oct. 18, 2010)........8

*Tenney v. Brandhove*, 341 U.S. 367 (1951).....................................................................21

*Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*,
    987 F.2d 376 (6th Cir. 1993) ...................................................................................10

*Turner v. Safley*, 482 U.S. 78 (1987) ...........................................................................24

*United States v. Windsor*, 133 S. Ct. 2675 (2013) ........................................................25

*Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703 (6th Cir. 2001) ...........................23

*Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993) ......................................16

*Zablocki v. Redhail*, 434 U.S. 374 (1978)..............................................................23,24

## **Statutes and Rules**

42 U.S.C. § 1983.................................................................................................2,13,22,26

Fed. R. Civ. P. 12 ...............................................................................................................8

2016 Kentucky Laws Ch. 132 (SB 216),
    General Assembly Reg. Sess. (Ky. 2016)............................................. 5,6,7,19,20

Kentucky Religious Freedom Restoration Act,
    Ky. Rev. Stat. § 446.350 (2013) ..................................................................... *passim*

Ky. Rev. Stat. § 402.005 ....................................................................................................3

Ky. Rev. Stat. § 402.080 ........................................................................................11,22,25

Ky. Rev. Stat. § 402.100 ........................................................................................3,6,11,25

Ky. Rev. Stat. § 402.110 ....................................................................................................6

Ky. Rev. Stat. § 446.010 ..................................................................................................12

Ky. Rev. Stat. § 446.030 ..................................................................................................12

Ky. Rev. Stat. § 446.090 ..................................................................................................12

Ky. Rev. Stat. § 446.140 ..................................................................................................12

Ky. Rev. Stat. § 64.5275 ..................................................................................................11

Ky. Rev. Stat. Ch. 402 ..................................................................................................5,11

Ky. Rev. Stat. Ch. 446 ....................................................................................................12

Md. Code Ann., Fam. Law § 2-401 .................................................................................24

Mich. Comp. Laws § 551.101..........................................................................................25

Mich. Comp. Laws § 551.103a........................................................................................25

Minn. Stat. § 517.07.........................................................................................................25

iv

Minn. Stat. § 517.08 ................................................................................................25

Ohio Rev. Code Ann. § 3101.05 ..............................................................................25

Tenn. Code Ann. § 36-3-103 ....................................................................................25

**Other Authorities**

Executive Order 2015-048 Relating to the Commonwealth's
    Marriage License Form ....................................................................5,6,7,12,19

**Constitutional Provisions**

Ky. Const. § 233A ......................................................................................................3

Ky. Const. § 246 .......................................................................................................11

U.S. Const. amend. I ............................................................................................17,19

U.S. Const. amend. XI .................................................................................2,8,9,10,13

## REQUEST FOR ORAL ARGUMENT

Kim Davis hereby requests oral argument on her Motion to Dismiss. Oral argument should be granted because there are various bases for dismissal which involve complex federal questions such as subject matter jurisdiction, sovereign immunity, and qualified immunity. Moreover, the competing constitutional claims and defenses involved in this appeal significantly impact the societal costs of suits against public officials recognized by the Supreme Court in *Harlow v. Fitzgerald*: "The societal costs include the expenses of litigation, the diversion of official energy from pressing pubic issues, and the deterrence of able citizens from acceptance of public office." 457 U.S. 800, 814 (1982).

## INTRODUCTION

This case is not about whom a person may marry under Kentucky law, whether Kentucky must license the marriage of a same-sex couple, or even whether Plaintiffs could obtain a Kentucky marriage license when they wanted one. Nor is this case about a county clerk who wanted to re-litigate the Supreme Court's decision in *Obergefell v. Hodges*, or to prevent Plaintiffs or any other same-sex couple from receiving a marriage license in Kentucky.

Rather, this case has always been about Plaintiffs' attempt to force an "all or nothing" choice between same-sex "marriage" on the one hand, and religious liberty on the other, with no regard whatsoever for any reasonable accommodation. Now that Kentucky has moved on, after its highest officials changed the law to vindicate Davis' religious liberty rights and provide her requested accommodation, even while ensuring no Kentuckian was denied a valid marriage license, Plaintiffs want to punish Davis for resisting an act that would have violated her deeply held religious convictions and conscience.

Pursuant to the marriage license directive of former Kentucky Governor Steven Beshear following the Supreme Court's *Obergefell v. Hodges* decision, Plaintiffs' claim that Davis violated their right to marry when she raised a conscientious objection, according to her deeply held religious beliefs, to issuing marriage licenses to same-sex couples under her name and authority. In the context of this case, however, and under well-established precedent, Davis is immune from Plaintiffs' damages claims—by Eleventh Amendment sovereign immunity in her official capacity as a state official, and by qualified immunity in her individual capacity.

Moreover, Plaintiffs' claims present no cognizable federal constitutional question. Specifically, Plaintiffs have failed to identify any federal constitutional right to receive a marriage license from a particular state official (Davis) at a particular place (Rowan County), when no policy ever prevented either Appellant from marrying whom he wanted to marry, or obtaining a valid Kentucky marriage license.

For all the foregoing reasons, as explained more fully below, Plaintiffs' damages claims should be dismissed.

## RELEVANT BACKGROUND

Plaintiffs purport to assert a § 1983 damages action against Davis in her individual and official capacities, for allegedly violating Plaintiffs' constitutional right to marry. (Am. Compl., Doc. 27, at 4-7.) Plaintiffs were not, however, the first to sue Davis in the wake of *Obergefell*. Moreover, the legal landscape affecting marriage licenses in Kentucky has changed drastically since Plaintiffs' suit was filed. These pre- and post-filing contexts of Plaintiffs' lawsuit are presented below.

## A.    *Obergefell* **and the Kentucky Marriage Licensing Scheme.**

Importantly, prior to *Obergefell*, Kentucky constitutionally and statutorily defined marriage as the union between one man and one woman. Ky. Const. § 233A (2004); Ky. Rev. Stat. § 402.005 (1998). The pre-*Obergefell* statutory marriage license form included a license to marry under the name and authority of the county clerk. Ky. Rev. Stat. § 402.100 (2006); *Miller v. Davis,* 123 F. Supp. 3d 924, 931-32 (E.D. Ky. 2015), *vacated*, 667 F. App'x 537 (6th Cir. 2016).

On June 26, 2015, moments after the Supreme Court announced its decision in *Obergefell*, former Kentucky Governor Steven Beshear ("Gov. Beshear") issued a directive to all Kentucky county clerks (hereinafter, the "SSM Mandate") to "recognize as valid all same sex marriages performed in other states and in Kentucky." (SSM Mandate, Doc. 27-1 (*see also Miller*, 123 F. Supp. 3d at 932).) In this SSM Mandate, Gov. Beshear further commanded, "Kentucky . . . must license and recognize the marriages of same-sex couples," and ordered the creation and distribution of new marriage license forms to accommodate same-sex couples. (*Id.*) However, the new form retained the requirement to issue the license under the name and authority of the county clerk. (*See Miller*, 123 F. Supp. 3d at 931-32, 931 n.3.)

## B.    **Davis' Sincerely-Held Religious Beliefs about Marriage.**

Davis possesses a deeply-held Christian belief that marriage is a union between one man and one woman, only. (Am. Compl., Doc. 27, at 3, ¶¶ 21, 23 (*see also Miller*, 123 F. Supp. 3d at 932).) Davis cannot authorize the marriage of same-sex couples because it violates her core religious beliefs:  In her sincere belief, the endorsement of her name and authorization equates to approval and agreement. (*See Miller*, 123 F. Supp. 3d at 932.) Following the SSM Mandate, due to her religious beliefs, Davis discontinued authorizing marriage licenses. (Am. Compl., Doc. 27, at 3, ¶¶ 21, 23 (*see also Miller*, 123 F. Supp. 3d at 929-930).) Rather than withdraw her

authorization for only same-sex marriages, Davis withdrew her authorization to issue *any* marriage license in her name to *any* couple. (*See Miller*, 123 F. Supp. 3d at 929-930.)

C.     The *Miller v. Davis* Litigation.

Plaintiffs were not the first to file suit against Davis following *Obergefell*. On July 2, 2015, less than one week after Gov. Beshear issued his SSM Mandate, the plaintiffs in *Miller v. Davis* (two same-sex and two different-sex couples) filed suit alleging federal constitutional claims and demanding issuance of marriage licenses to them in Rowan County, under Kim Davis' name and authority. (*Miller v. Davis,* No. 0:15-cv-44-DLB (E.D. Ky.), Compl., Doc. 1, at 1-15.[1]) The *Miller* Plaintiffs filed the action on behalf of themselves and "a putative class of individuals who are qualified to marry and who intend to seek a marriage license from the Rowan County Clerk." (*Id.*)

On August 12, 2015, this Court preliminarily enjoined Davis, in her official capacity, "from applying her 'no marriage licenses' policy to future marriage license requests submitted by Plaintiffs." (*Miller*, 123 F. Supp. 3d at 930, 944.) On September 3, 2015, the Court expanded the preliminary injunction to apply to "other individuals who are legally eligible to marry in Kentucky." (*Miller*, Order, Sep. 3, 2015, Doc. 74.) Davis appealed the August 12 and September

---

[1]  Although this Court did not formally consolidate *Miller* with this case, the Court treated the cases, along with a third case, *Yates v. Davis*, as consolidated for some purposes, including dismissal. (*See* Order, Doc. 19 (dismissing together *Miller*, *Yates*, and the instant case under the caption *In re: Ashland Civil Actions*, referring to *Miller* as "the lead case"); *see also* Order, Doc. 13 (staying briefing in instant case pending outcome of appeal in "related case" *Miller*)). Furthermore, this Court expressly contemplated Plaintiffs' claims herein when it expanded the *Miller* preliminary injunction to benefit not only the *Miller* Plaintiffs, but all persons who may seek a marriage license in Rowan County. (*Miller*, Hr'g Tr. Sep. 3, 2015, Doc. 78, at 9:4-19:17 ("There are a couple of companion cases, [*Ermold*, 15-]46 and [*Yates*, 15-]49? 51? I can't remember the numbers, but there are three cases now pending with various plaintiffs.") ("[I]n granting that relief that's requested at Docket 68, the Court finds that given the fact that it does have two companion cases that involve, in essence, the very same allegations with the same lawyers, it just makes judicial sense to have the Circuit review the decision for all three of them.")) Accordingly, it is appropriate to consider some portions of the *Miller* proceedings as part of the record in the instant case.

4

3, 2015 preliminary injunction orders to the Sixth Circuit. (*Miller v. Davis,* 6th Cir. Case No. 15-5880.)

At the September 3, 2015 district court hearing in *Miller*, where the Court expanded the *Miller* preliminary injunction to apply to Plaintiffs, the Court expressed hope for a legislative or executive accommodation of the kind ultimately granted by Gov. Bevin in his Executive Order 2015-048, and made permanent by the enactment of Kentucky Senate Bill 216 (*see infra* Relevant Background Parts D, E): "I recognize, and I mentioned this when we first came out earlier this morning, that the legislative and executive branches do have the ability to make changes. And those changes may be beneficial to everyone. Hopefully, changes are made." (*Miller,* Hr'g Tr. Sept. 3, 2015, Doc. 78, at 96:5-9.) "If legislative or executive remedies . . . come to fruition, as I stated, better for everyone." (*Id.* at 97:3-5.)

At the same hearing, this Court granted the motion of Kentucky Senate President Robert Stivers for leave to file an amicus brief in support of Davis (*Miller,* Hr'g Tr. Sept. 3, 2015, Doc. 78, at 19:20-20:23), in which he advised the court that "the concept of marriage as between a man and a woman is so interwoven into KRS Chapter 402 that the defendant County Clerk cannot reasonably determine her duties until such time as the General Assembly has clarified the impact of *Obergefell* by revising KRS Chapter 402 through legislation," or "[a]lternatively the clerk's duties could be clarified by Executive Order of the Governor . . . ." (*Miller,* Mot. Ky. Senate Pres. Stivers Leave to File Br. as *Amicus Curiae*, Doc. 73, at 1-2.)

    D.    **The Executive Order.**

On December 22, 2015, newly elected Kentucky Governor Matt Bevin  ("Gov. Bevin") issued Executive Order 2015-048 Relating to the Commonwealth's Marriage License Form (the "Executive Order," copy attached hereto as Exhibit A), which explicitly acknowledged the protections afforded county clerks under Kentucky's Religious Freedom Restoration Act

5

("Kentucky RFRA"), Ky. Rev. Stat. § 446.350 (2013). Specifically, the Executive Order established that (1) the SSM Mandate placed a substantial burden on the free exercise of religion by some county clerks and their employees, (2) the Kentucky RFRA requires that the Commonwealth use the least restrictive means available to carry out Kentucky marriage license policy in light of that substantial burden, (3) there is no compelling governmental interest to justify requiring the name and authority of county clerks on marriage licenses, (4) a reasonable accommodation for county clerks could easily and must be made, and (5) the Commonwealth is legally obligated to comply with Kentucky RFRA through the creation and provision of a revised marriage license form removing the requirement of a county clerk's name and authority. (Exec. Order, Ex. A.)

**E.    SB 216.**

On July 14, 2016, Kentucky Senate Bill 216 ("SB 216") took effect, permanently modifying Kentucky law regarding the issuance and authorization of marriage licenses beyond the Executive Order. Specifically, SB 216 expressly modified the Kentucky marriage licensing scheme to remove entirely a County Clerk's name, personal identifiers, and authorization from any license, thereby providing through a permanent change in the law the very religious accommodation Davis sought from the beginning of this litigation. The Kentucky Legislature unanimously passed SB 216 and Gov. Bevin signed it into law on April 13, 2016, thereby amending Ky. Rev. Stat. §§ 402.100 and 402.110. *See* 2016 Kentucky Laws Ch. 132 (SB 216), General Assembly Reg. Sess. (Ky. 2016).

SB 216 rendered moot Davis' appeals from this Court's preliminary injunction orders in *Miller*. Accordingly, the Sixth Circuit dismissed the *Miller* appeals and remanded the case to this Court, instructing it to vacate the August 12 and September 3, 2015 preliminary injunction orders. (Order, Doc. 19 (quoting *Miller v. Davis,* 667 F. App'x 537 (6th Cir. 2016).)

F.    **Plaintiffs' Lawsuit.**

Plaintiffs filed suit against Davis on July 10, 2015, after *Miller v. Davis* was filed, but before the Executive Order and enactment of SB 216. (Compl., Doc. 1; *see supra* Parts C, D, E.) Following the Sixth Circuit's vacatur of the *Miller* preliminary injunction orders, this Court consolidated the instant case with *Miller* and *Yates*, under the caption *In re: Ashland Civil Actions*, for the purpose of dismissing all three actions as moot. (Order, Doc. 19.)

Plaintiffs appealed the dismissal of their case. (Doc. 20.) The Sixth Circuit reversed the Dismissal Order, and remanded the case for reinstatement of Plaintiffs' claims. (Docs. 21-23.) The Court granted Plaintiffs leave to amend their complaint (Doc. 26 at 1), and Plaintiffs filed their First Amended Complaint on June 8, 2017 (Doc. 27).

According to the Amended Complaint, Plaintiffs are two males residing in Rowan County, Kentucky, who desired but were denied a Kentucky marriage license. (Doc. 27 at 1-3, 5, ¶¶ 3, 4, 7, 19, 22, 24, 25.) Based on *Obergefell* and Gov. Beshear's SSM Mandate, Plaintiffs claim their constitutional right to marry includes the right to be issued a marriage license **by Davis, in Rowan County**.[2] (*Id.* at 1-3, 6, ¶¶ 3-4, 7-8, 15, 17, 19, 22, 24, 25, 43.) Davis' observance of her "deeply held Christian beliefs" about marriage, Plaintiffs claim, violated their constitutional right to marry. (*Id.* at 3, 6, ¶¶ 21, 43.) Plaintiffs seek actual and punitive damages, pre- and post-judgment interest, and attorneys' fees and costs against Davis. (*Id.* at 7.)

---

[2]    Plaintiffs received a Kentucky marriage license while Davis was incarcerated for contempt of this Court's preliminary injunction orders in *Miller*. (Am. Compl., Doc. 27, at 3-4, ¶¶ 26-27; Doc. 27-4 at 1-2). Plaintiffs' allegation that the marriage license they received was "issued . . . by Davis" (*id.* at 4, ¶ 31), however, is contradicted by the article Plaintiffs attached to their Amended Complaint as Exhibit 4 (Doc. 27-4 at 1-2 ("[T]he licenses issued while Davis was in jail do not have the clerk's authority . . . .").

7

**STANDARD OF REVIEW**

Under a Rule 12(b)(6) motion to dismiss, "the Court's job is to test the sufficiency of the complaint." *Ashland Hosp. Corp. v. Int'l Bro. of Elec. Workers Local 575*, 807 F. Supp. 2d 633, 638 (E.D. Ky. 2011) (Bunning, J.). Although a Court reviewing a Rule 12(b)(6) motion "must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true," *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citations omitted), this Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Ashland Hosp.*, 807 F. Supp. 2d at 638 (internal citations omitted).

To survive a motion to dismiss, Plaintiffs' complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it must present "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Plaintiffs' complaint must therefore provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Eubank v. Wesseler*, No. 10-210, 2011 WL 3652558, at *3 (E.D. Ky. Aug. 19, 2011); *Sims v. Bracken County Sch. Dist.*, No. 10-33, 2010 WL 4103167, at *4 (E.D. Ky. Oct. 18, 2010) (Bunning, J.).

**ARGUMENT**

I.    **THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE DAVIS IS IMMUNE FROM PLAINTIFFS' DAMAGES CLAIMS.**

Davis is immune from Plaintiffs' damages claims—by sovereign immunity under the Eleventh Amendment in her official capacity, and by qualified immunity in her individual capacity. Because these immunities are immunities from suit, rather than mere defenses to liability,

8

they must be addressed at the earliest possible stage of litigation, and before discovery where they may be established as a matter of law. Because Davis' immunities claims are established as a matter of law, no further findings or proceedings are necessary or appropriate before resolving them.

### A.    Immunity Claims Must Be Resolved at the Earliest Possible Stage of Litigation.

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "*Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an *immunity from suit* rather than a mere defense to liability . . . ." *Mitchell*, 472 U.S. at 526. "One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government. For this reason, **we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation**." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (emphasis added) (internal quotation marks and citation omitted); *see also Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) ("The purpose of the doctrine is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation.")

The same immunity from suit principles apply to claims of sovereign immunity under the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). "Under the terms of the Amendment, '[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one

of the United States by Citizens of another State . . . .' This withdrawal of jurisdiction effectively

confers an immunity from suit." *Id.* "Eleventh Amendment immunity, like the benefit conferred

by qualified immunity to individual officials, is for the most part lost as litigation proceeds past

motion practice." *Id.* at 145. Thus, like claims of qualified immunity, claims of sovereign immunity

must be resolved at the earliest possible stage of litigation.[3]

**B.     In Her Official Capacity, Davis Is a State Agent with Sovereign
        Immunity under the Eleventh Amendment.**

Unlike in *Miller*, where the Plaintiffs sought prospective injunctive relief, Plaintiffs in this

case seek only damages. Thus, the question of Eleventh Amendment immunity for state officials

is front and center, and separate from any question decided by *Obergefell*. The Eleventh

Amendment "bars suits for monetary relief against state officials sued in their official capacity."

*Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.,* 987 F.2d 376, 381 (6th Cir. 1993);

*see also Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 692 (6th Cir. 2002) ("[I]t is well

established that states and state officers acting in their official capacities are immune from suits

for damages in federal court . . . ."). Where a county officer's duties "clearly flow from the State,"

the officer is a state official for purposes of Eleventh Amendment immunity. *Gottfried*, 280 F.3d

at 693 (holding county sheriff state official when enforcing state court injunction); *cf. D'Ambrosio

v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (holding county prosecutor state official when

prosecuting state crimes); *Cady v. Arenac County*, 574 F.3d 334, 342 (6th Cir. 2009) (same); *Pusey

v. City of Youngstown,* 11 F.3d 652, 657 (6th Cir. 1993) ("[A] city official pursues her duties as a

---

[3]     The immunity from suit principles also dictate that denials of claims of qualified and
sovereign immunity are immediately appealable. *See, e.g., Mitchell*, 472 U.S. at 526–27 (qualified
immunity); *Puerto Rico Aqueduct*, 506 U.S. at 147 (sovereign immunity).

state agent when enforcing state law or policy."); *Graves v. Mahoning County*, No. 4:10CV2821, 2015 WL 403156, *6 (N.D. Ohio Jan. 28, 2015) (holding township clerks acted as state officials when issuing arrest warrants pursuant to state statute), *aff'd*, 821 F.3d 772 (6th Cir. 2016); *Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1194 (S.D. Ohio 2000) (holding county clerk acted as agent of state, not county, where relevant job duties specified by state law and subject to control of state).

Kentucky law leaves no doubt that, in issuing and declining to issue marriage licenses, Davis is a state official. County clerks, such as Davis, are statutorily conferred duties and jurisdiction "coextensive with that of the Commonwealth." *See* Ky. Rev. Stat. § 64.5275(1); *see also* Ky. Const. § 246. In Kentucky, the Commonwealth has "**absolute jurisdiction over the regulation of the institution of marriage**." *Pinkhasov v. Petocz*, 331 S.W.3d 285, 291 (Ky. App. 2011) (emphasis added). All matters relating to marriage in Kentucky, including its definition and the procedures for licensing, solemnizing, and dissolving marriages are governed by Chapter 402 of the Kentucky Revised Statutes. In particular, the duty of county clerks to issue marriage licenses is governed by section 402.080, and the license form that county clerks must use for marriage licenses by section 420.100. Gov. Beshear's SSM Mandate was a directive from the state to all county clerks in the state. In light of this absolute state control over marriage in Kentucky, this Court concluded, in the related *Miller* case,

> The State not only enacts marriage laws, it prescribes procedures for county clerks to follow when carrying out those laws, right down to the form they must use in issuing marriage licenses. Thus, **Davis likely acts for the State of Kentucky, and not as a final policymaker for Rowan County, when issuing marriage licenses**.

123 F. Supp. 3d at 933 (citations omitted) (emphasis added).

Davis' marriage licensing duties and obligations "clearly flow from the state." *See Gottfried*, 280 F.3d at 693. And Davis' decision *not* to issue marriage licenses was no less the act of a state official because that decision was likewise sanctioned by Kentucky state law. As

11

ultimately acknowledged by Governor Bevin's Executive Order, Davis' right to relief from carrying out Gov. Beshear's SSM Mandate against her conscience is protected by and entrenched in Kentucky RFRA which provides, in pertinent part:

> Government shall not substantially burden a person's[4] freedom of religion. The right to act **or refuse to act** in a manner motivated by a sincerely held religious belief may not be substantially burdened unless the government proves by clear and convincing evidence that it has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest.

Ky. Rev. Stat. § 446.350 (emphasis added).

Kentucky RFRA applies to all Kentucky statutes. Kentucky RFRA is housed under Chapter 446, which is entitled "Construction of Statutes," and includes such other generally applicable provisions as "Definitions for Statutes Generally," "Computation of Time," "Severability," and "Titles, Headings, and Notes." Ky. Rev. Stat. §§ 446.010, 446.030, 446.090, 446.140. Even more specifically, Kentucky RFRA is included under a section of Chapter 446 reserved for "Rules of Codification." As such, Kentucky's marriage statutes—much like any other body of Kentucky law—cannot be interpreted without also considering and applying Kentucky RFRA.

Thus, the right to **refuse to act** against religious conscience is expressly conferred by Kentucky RFRA, which applies to Kentucky marriage licensing statutes. Moreover, the specific application of this right to county clerks in the issuance of marriage licenses was expressly established by the Executive Order. Put differently, Kentucky (*i.e.*, Davis in her official capacity) has a duty under Kentucky RFRA not to substantially burden "the right of any person" (*i.e.*, Davis

---

[4] While "person" is not defined in the Kentucky RFRA, it is defined in Kentucky's general definitions statute to include "bodies-politic and corporate, societies, communities, the public generally, **individuals**, partnerships, joint stock companies, and limited liability companies." *See* KY. REV. STAT. § 446.010(33) (emphasis added). There is no exception from the definition for individuals who are publicly elected officials.

in her individual capacity) "to act **or refuse to act** in a manner motivated by a sincerely held religious belief . . . ." Ky. Rev. Stat. § 446.350 (emphasis added). Accordingly, both in issuing marriage licenses, and in not issuing licenses pursuant to Kentucky RFRA, in her official capacity, Davis was at all times a state official enforcing and applying state law.[5]

Plaintiffs likely will argue that Davis is a county official, and not a state official, under *Carroll v. Reed*, 425 S.W.3d 921 (Ky. Ct. App. 2014). (Am. Compl., Doc. 27, at 2, ¶ 12.) The Court should reject this argument. The issue in *Carroll* was the validity of a county ordinance requiring the county clerk and county sheriff to remit certain funds to the control of the county fiscal court. 425 S.W.3d at 922-23. The court rejected the county clerk's absolute argument that "the Clerk is not a local official subject to control by the Fiscal Court," and held that county clerks "are considered local officials **subject to a measure of control** by the fiscal court." *Id.* at 924 (emphasis added). Thus, the *Carroll* court did not decide that county clerks are "local officials" **for all purposes**, but only for purposes of limited financial controls exercised by the fiscal court. *Id.* ("a degree of financial control"). Moreover, the *Carroll* court did not consider the nature of a county clerk's marriage licensing function, or any other function, in the context of a § 1983 claim. *Cf. Gottfried*, 280 F.3d at 693 (holding county sheriff to be state official for § 1983 purposes, even though "Ohio law classifies sheriffs as county officials").

Because Plaintiffs' damages claims against Davis in her official capacity constitute damages claims against a state official, the claims are barred by the Eleventh Amendment, and this Court should dismiss Plaintiffs' claims.

---

[5]    Even if the Court concludes Davis, in her official capacity, applied the Kentucky RFRA incorrectly, the Kentucky RFRA is still a state law and not a county policy.

**C.    In Her Individual Capacity, Davis Has Qualified Immunity from Plaintiffs' Damages Claims Because Davis Did Not Violate Any Clearly Established Law.**

Qualified immunity generally "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Estate of Carter v. Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. at 818). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity is also intended to serve the public interest "by permitting officials to take action with independence and without fear of consequences." *Crocket v. Cumberland Coll.*, 316 F.3d 571, 579 (6th Cir. 2003) (internal quotations omitted).

In reviewing qualified immunity at this stage, this Court determines whether an official is entitled to qualified immunity under a two-step inquiry: (1) whether a constitutional right has been violated, and (2) if so, whether the right was clearly established and one that a reasonable official should have known. *See Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). In connection with this second inquiry, Sixth Circuit Courts consider whether the official's alleged conduct was objectively unreasonable in light of a clearly established constitutional right. *See*, *e.g.*, *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010); *see also Anderson v. Creighton*, 483 U.S. at 640. "Unless the plaintiff's allegations state a claim of violation of **clearly established law**, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." *Mitchell*, 472 U.S. at 526 (emphasis added).

The Supreme Court, in *Pearson v. Callahan*, 555 U.S. 223, examined the two-step inquiry set forth in *Saucier*, and concluded,

> while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

555 U.S. at 236. This conclusion was appropriate, in part, because "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 237. Thus, "[i]f *either* inquiry is answered in the negative, the defendant official is entitled to [prevail]." *See Gibbs v. Lomas,* 755 F.3d 529, 537 (7th Cir. 2014) (holding police officer entitled to qualified immunity where alleged constitutional right not clearly established).

In the case at bar, Plaintiffs have failed to allege facts sufficient to overcome the application of the doctrine of qualified immunity, and the claims against Davis individually should be dismissed. As discussed *infra* in Part II*,* and incorporated by reference here, Plaintiffs have failed to state a viable federal constitutional claim:  There is no constitutional right for any couple to receive a marriage license **from a particular official, in a particular place**.

But even if Plaintiffs had sufficiently alleged the violation of a federal constitutional right, they have not demonstrated a "clearly established" constitutional right. Such a "right 'must have been clearly established **in a . . . particularized . . . sense**: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011) (emphasis added) (quoting *Anderson*, 483 U.S. at 640) (internal quotations omitted). The official's "unlawfulness" must be "apparent" in "the light of pre-existing law." *Anderson*, 483 U.S. at 640.

In deciding whether a constitutional right is clearly established, the Sixth Circuit "'look[s] first to decisions of the Supreme Court, then to decisions of this court and other courts within our

15

circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) (quoting *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)); *see also O'Malley v. City of Flint*, 652 F.3d 662, 667-68 (6th Cir. 2011). "This standard requires the courts to examine the asserted right **at a relatively high level of specificity**," and "on a fact-specific, case-by-case basis." *Cope v. Heltsley*, 128 F.3d 452, 458–59 (6th Cir. 1997) (emphasis added) (internal quotation marks and citations omitted). Where a case arises in an area "in which the result depends very much on the facts of each case," and no case "squarely governs the case here," no clearly established right is demonstrated. *See Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

The relevant constitutional question in this matter is **not** whether the Commonwealth of Kentucky is required to license and recognize SSM as a matter of clearly established law. Immediately after *Obergefell*, Gov. Beshear publicly declared that Kentucky will issue SSM licenses and recognize SSM licenses issued by other states. (Am. Compl., Doc. 27, at 2, ¶ 15; Doc. 27-4.) Instead, the particular inquiry governing this specific matter is whether *Obergefell* requires Kentucky to compel each and every county clerk to authorize and approve SSM licenses **without any accommodation for their sincerely-held religious beliefs**. This issue has not been specifically litigated in Kentucky courts, let alone decided by the Sixth Circuit or the Supreme Court (either in its recent *Obergefell* decision or any other case), and therefore the law cannot be "clearly established." Certainly then, this case is not "squarely" governed by any single case, or set of cases.[6]

To the extent Plaintiffs point to any "pre-existing law" that was clearly established, *see*

---

[6]    As shown *infra* in Part II, *Obergefell* does not require states to issue marriage licenses through any particular official or on any particular form. Even if, however, Plaintiffs desired to challenge a state marriage license policy that provides an accommodation to some license issuers under a state RFRA, such a claim would not lie against a state official, individually, for availing herself of an accommodation expressly provided by state law.

*Anderson*, 483 U.S. at 640, to overcome Davis' qualified immunity, they will be limited exclusively to the sudden redefinition of marriage on June 26, 2015 in the *Obergefell* decision. But **in *Obergefell*, the Court unanimously agreed that First Amendment protections remain despite same-sex "marriage."** *See Obergefell v. Hodges,* 135 S. Ct. 2584 (2015). Specifically, dissenting justices in *Obergefell* recognized that "[m]any good and decent people oppose same-sex marriage as a tenet of faith, and their freedom to exercise religion" is specifically "spelled out" in the First Amendment of the Constitution. *Obergefell*, 135 S. Ct. at 2625 (Roberts, C.J., dissenting). Continuing, these Justices noted that "[r]espect for sincere religious conviction has led voters and legislators in every State that has adopted same-sex marriage democratically to include accommodations for religious practice." *Id.*; *see also id.* at 2638 (explaining the historical significance of "religious liberty") (Thomas, J., dissenting). **The majority opinion also recognized that religious freedoms continue unabated even as they redefined marriage**:

> Finally, it must be emphasized that religions, and those who adhere to religious doctrines, may continue to advocate with utmost, sincere conviction that, by divine precepts, same-sex marriage should not be condoned. The First Amendment ensures that religious organizations and **persons** are given proper protection as they seek to teach the principles that are so fulfilling and so central to their lives and faiths, and to their own deep aspirations to continue the family structure they have long revered.

*Obergefell*, 135 S. Ct. at 2607 (Kennedy, J., majority) (emphasis added).

Not only that, but the nature of the religious objection in the context of marriage is even more firmly established in history because the "meaning of marriage" as a union between one man and one woman "has persisted in every culture," "has formed the basis of human society for millennia," and has singularly "prevailed in the United States throughout our history." *Obergefell*, 135 S. Ct. at 2612-13 (Roberts, C.J., dissenting); *see also id.* at 2641 ("For millennia, marriage was inextricably linked to the one thing that only an opposite-sex couple can do: procreate.")

(Alito, J., dissenting). In fact, the majority in *Obergefell* conceded that the institution of marriage as exclusively a union between a man and a woman "has existed for millennia and across civilizations" and this view "long has been held—**and continues to be held—in good faith by reasonable and sincere people here and throughout the world**." *Obergefell*, 135 S. Ct. at 2594 (Kennedy, J., majority) (emphasis added). Thus, although the traditional view of marriage was discarded in *Obergefell*, that long-held view of marriage provides the historical underpinnings for a religious exemption and accommodation from the redefinition of marriage.

The Supreme Court, in *Obergefell*, specifically recognized the tensions that would occur for religious believers and in the law regarding religious accommodations. In *Pearson v. Callahan*, the Supreme Court also specifically contemplated how to analyze claims of qualified immunity in the face of such tensions when it receded from its holding in *Saucier*: "A constitutional decision resting on an **uncertain interpretation of state law** is also of doubtful precedential importance." 555 U.S. at 238 (emphasis added). Plaintiffs' alleged constitutional violation from a newly minted right to marry for same-sex couples (which is more accurately stated as the right to have a license issued by a particular county clerk, in a particular county) is in direct competition with Davis' constitutional and statutory rights, specifically including the right to a reasonable accommodation of her religious beliefs under Kentucky RFRA. When Plaintiffs filed their Complaint just two weeks after the *Obergefell* decision, the Kentucky courts had not determined whether Kentucky RFRA would afford a county clerk, who is an elected official, a reasonable accommodation of her religious beliefs. The right to same-sex "marriage" was literally brand new.

To be sure, this Court, in its preliminary injunction order in the *Miller* case, immediately recognized the tension presented by the newfound right to same-sex marriage in *Obergefell*:

> At its core, **this civil action presents a conflict between two individual liberties held sacrosanct in American jurisprudence**.

> One is the fundamental right to marry implicitly recognized in the Due Process Clause of the Fourteenth Amendment. The other is the right to free exercise of religion explicitly guaranteed by the First Amendment. Each party seeks to exercise one of these rights, but in doing so, they threaten to infringe upon the opposing party's rights.

*Miller*, 123 F. Supp. 3d at 930 (emphasis added). This acknowledgement by the Court was not some casual observation, for it was made with the benefit of a factual record following two evidentiary hearings on the *Miller* plaintiffs' motion for preliminary injunction. *Id.* at 930.

Thus, both the *Obergefell* Court and this Court acknowledged the tension between old and new rights, and Kentucky's highest officials took action to resolve it. Kentucky Senate President Robert Stivers showed this Court that *Obergefell* made the law unclear, requiring action by the Kentucky Governor or General Assembly to clarify the respective rights of county clerks and marriage licensees. (*Miller*, E.D. Ky. No. 0:15-cv-44-DLB, Mot. Ky. Senate Pres. Stivers Leave to File Br. as *Amicus Curiae*, Doc. 73, at 1-2.) Gov. Bevin answered the tension with his Executive Order, which explicitly recognized the substantial burden placed upon county clerks' religious beliefs, explicitly declared that there was no compelling governmental interest to justify requiring the name and authority of county clerks on marriage licenses, and explicitly declared that a reasonable accommodation could easily and must be made. (*See supra* Relevant Background Part D.) The Kentucky General Assembly further answered the tension by unanimously passing SB 216. (*See supra* Relevant Background Part E.) Given that Kentucky's highest executive and legislative branch officials took official action to not only identify the uncertainty and tension in Kentucky marriage law following *Obergefell*, but also to explicitly vindicate Davis' position (which official action the district court invited as "better for everyone" (*see supra* Relevant Background Part C)), it cannot be reasonably argued that the supposed right asserted by Plaintiffs was clearly established (if established at all). As the Supreme Court noted in *Pearson v. Callahan*,

"where there is a divergence of views on [the constitutional question], it is improper to subject [the public officials] to money damages for their conduct." 555 U.S. at 245.

A similar situation occurred in the Seventh Circuit case *Gibbs v. Lomas*, 755 F.3d 529. In *Gibbs*, the plaintiff challenged the constitutionality of the defendant Wisconsin police officer's arrest and search of the plaintiff's car, and the qualified immunity analysis centered on a recently amended law's effect on the reasonableness of the officer's actions. 755 F.3d at 532. The incidents in question took place the year following enactment of the amended law. *Id*. at 532, 539. At that time, the "Wisconsin courts [had] not yet answered important questions about [the amended statute]," such as what specific kind of conduct would be prohibited or protected. *Id*. at 539. Thus, the Seventh Circuit determined that it "would be imprudent to base our decision on speculation about the appropriate scope of the Wisconsin statute." Because the "interpretive problems [were] best answered by the Supreme Court of Wisconsin," the court held that "the alleged right at issue was not clearly established at the time [the officer] acted." *Id*. at 540 (internal quotation marks and citation omitted).

Like the situation in *Gibbs*, prior to the Kentucky General Assembly's enactment of SB 216, the Kentucky courts had not decided how requests for religious accommodations would be addressed either constitutionally or under Kentucky RFRA by those required to execute the state's marriage laws. The instant litigation (with related cases), coupled with Gov. Bevin's and the General Assembly's swift actions to recognize the need for and provide an accommodation at the state level, demonstrate not only that the alleged right in question (the right to obtain a marriage license from a specific clerk in a specific county) was not clearly established (thus making Davis' conduct reasonable), but also that making judicial decisions on the alleged constitutional question without input from Kentucky courts is not prudent.

20

In light of the foregoing, Plaintiffs have not sufficiently alleged that Davis' actions were objectively unreasonable to survive dismissal of their claims on qualified immunity grounds. Although Plaintiffs' Amended Complaint includes perfunctory allegations of malice and bad faith (Doc. 27 at 6, ¶¶ 44-48), "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow*, 457 U.S. at 817-18. In this case, Plaintiffs' Amended Complaint is bereft of anything beyond a bare allegation of malice, bad faith, or the like. Conversely, the Amended Complaint explicitly alleges the critical fact that Davis' actions were based upon her "deeply held Christian beliefs." (Doc. 27 at 3, ¶ 21.) The very basis for the Supreme Court's adherence to a broad grant of qualified immunity rests upon the doctrine as "the best attainable accommodation of competing values," *Harlow*, 457 U.S. at 814 (citing *Butz v. Economou,* 438 U.S. 478, 507-08 (1978)). This is so because, in light of "claims that frequently run against the innocent as well as the guilty—at a cost not only to the defendant officials, but to society as a whole." *Harlow*, 457 U.S. at 814. "'In times of political passion, dishonest or vindictive motives are readily attributed . . . and as readily believed.'" *Harlow*, 457 U.S. at 815, n.23 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)).

In sum, in light of the suddenly changed legal landscape engendered by the Supreme Court's ruling in *Obergefell*, the enumerated United States and Kentucky Constitutional and statutory protections for conscience, religious freedom, and speech, the long-standing historical definition of marriage in Kentucky that comports with Davis' sincerely-held religious beliefs, the undisputed conviction with which Davis holds her religious beliefs, and the obvious constitutional conflict presented by the case at bar, the doctrine of qualified immunity protects Davis from any

civil damages in her individual capacity. Therefore, this Court should dismiss Plaintiffs' claims against Davis individually.

## II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO STATE VIABLE FEDERAL CONSTITUTIONAL CLAIMS.

For Plaintiffs' claims under 42 U.S.C. § 1983 to succeed against Davis, they must "establish a violation of **some right guaranteed by the United States Constitution or federal statute** by one acting under the color of state law." *Brehm v. Wesseler*, No. 09-60, 2011 WL 1704347, at *4 (E.D. Ky. May 4, 2011) (Bunning, J.) (emphasis added) (citing *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005)). "Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). Ermold and Moore failed to identify any federal constitutional right that has been infringed by Davis. Their reference to a "constitutional right to marry" is not sufficient. (Am. Compl., Doc. 27, at 5, ¶ 39.)

Critically, the Complaint does not allege that Kentucky prevented Plaintiffs from marrying whom they want to marry or barred them from obtaining a marriage license. To the contrary, the Complaint concedes that marriage licenses, including SSM licenses, were readily available. (Am. Compl., Doc. 27, at 2, ¶ 15.) Under Kentucky law, Ermold and Moore could obtain a marriage license from "*any* county clerk." Ky. Rev. Stat. § 402.080 (emphasis added). Thus, although Plaintiffs allegedly reside in Rowan County (Am. Compl., Doc. 27, at 1-2, ¶¶ 3-4, 7), Kentucky law does not mandate that they must obtain a marriage license from Rowan county.

Thus, Plaintiffs do not allege a violation of a fundamental constitutional right to marry. Instead, Plaintiffs allege a violation of a purported federal constitutional right to receive a marriage license signed by a particular individual ("from the Rowan County Clerk") in a particular county ("a valid marriage license in Rowan County, Kentucky"). (Am. Compl., Doc. 27, at 3, 6, ¶¶ 19,

43.) There is no such right, let alone a clearly established one. In demanding a fundamental right to have a specific individual approve of and participate in their marriage, Plaintiffs overlook clear precedent that not every act, policy, rule, or regulation "which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny." *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). Heightened scrutiny only applies to restrictions on the right to marry that are "direct and substantial." Contrary to Plaintiffs' suggestion, "[m]erely placing a non-oppressive burden on the decision to marry . . . is not sufficient to trigger heightened constitutional scrutiny." *Montgomery v. Carr*, 101 F.3d 1117, 1125 (6th Cir. 1996). Instead, a "direct and substantial" burden requires an "absolute barrier" in which individuals are "absolutely or largely prevented from marrying" who they want to marry or "absolutely or largely prevented from marrying a large portion of the otherwise eligible population of spouses." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). The lack of a marriage license "from the Rowan County Clerk" (Am. Compl., Doc. 27, at 3, at ¶ 19) "does not change the essential fact" that Plaintiffs are not barred "from getting married, nor did it prevent them from marrying a large portion of population even in [Rowan] County." *Vaughn*, 269 F.3d at 712. No allegation has been made in this case that any absolute barrier existed preventing either Plaintiff from marrying whom he wanted to marry in Kentucky, and from having that marriage recognized by the Commonwealth.

The right to marry cases cited by Plaintiffs in their Amended Complaint do not compel a different conclusion. Critically, unlike here, the cases of *Loving v. Virginia*, 388 U.S. 1 (1968), and *Obergefell*, 135 S. Ct. 2584, involve state-wide bans affecting marriage. *See*, *e.g.*, *Loving*, 388 U.S. at 11-12 (striking down Virginia ban on inter-racial marriages); *Obergefell*, 135 S. Ct. at

23

2593, 2599-2605 (redefining marriage to include same-sex couples, and striking down Kentucky, Tennessee, Michigan and Ohio marriage laws to the contrary).[7]

Moreover, despite Plaintiffs' constant refrain in their Amended Complaint, this case is neither the same case as *Obergefell* nor controlled by it. Before *Obergefell*, Plaintiffs, as two men, were "absolutely prevented" from obtaining a Kentucky marriage license if they wanted to marry each other. No same-sex couple was able to obtain a Kentucky marriage license in any one of Kentucky's 120 counties. And even if Plaintiffs had gotten "married" in a different state, their "marriage" would not have been recognized in Kentucky. But now individuals desiring SSM licenses can obtain them because Kentucky is recognizing same-sex "marriage" and, in fact, nearly all county clerks are issuing SSM licenses. (Am. Compl., Doc. 27, at 2, ¶ 15; Doc. 27-1.) Nevertheless, Plaintiffs are claiming a violation of the fundamental right to marry because they (i) could not obtain a marriage license in their home county (ii) approved by a particular individual. Neither is a right mandated by *Obergefell*, and neither implicates a direct and substantial burden on a fundamental right to marry.

Furthermore, state marriage laws differ across the country, and Kentucky marriage law is far less restrictive than other states, even if Kentucky exempted Davis from administering it on the basis of her sincerely held religious beliefs. For instance, some states require prospective couples to obtain a license in the county where the ceremony will occur, *see*, *e.g.*, Md. Code Ann., Fam. Law § 2-401(a), whereas others, like Kentucky, permit residents to obtain their license in one

---

[7]    Other right to marry cases from the Supreme Court similarly involve state-wide bans barring individuals from marrying whom they want to marry. *See Turner v. Safley*, 482 U.S. 78, 81-82, 99 (1987) (striking down Missouri prison regulation that represented a near "almost complete ban" on inmate marriage); *Zablocki*, 434 U.S. at 379, 390-91 (striking down Wisconsin law that required any resident with child support obligations to satisfy such obligations before marrying and to obtain a court order permitting the marriage).

county and hold their ceremony in another county, *see*, *e.g.*, Ky. Rev. Stat. §§ 402.080, 402.100; Minn. Stat. § 517.07. Some states require a prospective couple to obtain their license in their home county, *see*, *e.g.*, Mich. Comp. Laws § 551.101; Ohio Rev. Code Ann. § 3101.05(a), whereas others, like Kentucky, allow residents to obtain a license in any county, *see* Ky. Rev. Stat. § 402.080; Tenn. Code Ann. § 36-3-103. Some states require a prospective couple to wait to receive their license upon application, *see*, *e.g.*, Mich. Comp. Laws § 551.103a (3 days); Minn. Stat. § 517.08(a) (5 days), whereas others, like Kentucky, Ohio, and Tennessee, have no waiting period. These various state regulations on the process and personnel for issuing marriage licenses differ widely in location and timing of access to licenses, and *Obergefell* has nothing to say about the disparity from state to state, provided the regulations treat same-sex couples and different-sex couples on the same terms. To be sure, there is no plausible argument that *Obergefell* requires every state to issue licenses in the home county of every applicant, regardless of the availability of licenses elsewhere.

To find that Plaintiffs state a viable federal constitutional claim here—when they could marry whom they wanted, obtain a marriage license in practically any Kentucky county, and have their "marriage" recognized by the Commonwealth—would turn every commonplace marriage-related law in all fifty states into a possible federal constitutional claim. Such a view would upend the axiom that "the definition and regulation of marriage" have "long been regarded as a virtually exclusive province of the States." *United States v. Windsor*, 133 S. Ct. 2675, 2689-91 (2013). Moreover, a mere inconvenience at a governmental office does not constitute an irreparable harm. Otherwise, everyone who has ever visited the local DMV has suffered a potential federal constitutional injury to be litigated in the federal courts pursuant to § 1983. In the case at bar, Plaintiffs were neither absolutely nor largely prevented from marrying whom they wanted under

Kentucky law. Therefore, no viable federal constitutional violation has been alleged in their

Complaint under § 1983, and Plaintiffs' Amended Complaint must be dismissed.

<u>**CONCLUSION**</u>

For all the foregoing reasons, this Court should dismiss Plaintiffs' Amended Complaint.

Respectfully submitted,

A.C. Donahue                                      /s/ Roger K. Gannam
Donahue Law Group, P.S.C.                Horatio G. Mihet
P.O. Box 659                                       Roger K. Gannam
Somerset, Kentucky 42502                 Liberty Counsel
Tel: (606) 677-2741                           P.O. Box 540774
Fax: (606) 678-2977                           Orlando, Florida 32854
ACDonahue@DonahueLawGroup.com    Tel: (407) 875-1776
                                                          Fax: (407) 875-0770
                                                          hmihet@LC.org
                                                          rgannam@LC.org

                                                          *Attorneys for Defendant Kim Davis*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF

filing system and therefore service will be effectuated by the Court's electronic notification system

upon all counsel or parties of record:

Michael J. Gartland                          Joseph D. Buckles
DelCotto Law Group PLLC                      Thomas P. Szczygielski
200 North Upper Street                       149 North Limestone
Lexington, KY 40507                          Lexington, KY 40507
mgartland@dlgfirm.com                        joe@joebuckles.com
                                             tom@tpslawoffice.com


DATED this July 10, 2017                     /s/ Roger K. Gannam
                                             Roger K. Gannam
                                             *Attorney for Defendant Kim Davis*



**MATTHEW G. BEVIN**
GOVERNOR

**EXECUTIVE ORDER**

Secretary of State
Frankfort
Kentucky

**2015-048**
**December 22, 2015**

### RELATING TO THE COMMONWEALTH'S
### MARRIAGE LICENSE FORM

**WHEREAS**, the Constitution of the Commonwealth of Kentucky, Section 233a

states: "Only a marriage between one man and one woman shall be valid or recognized

as a marriage in Kentucky. A legal status identical or substantially similar to that of

marriage for unmarried individuals shall not be valid or recognized"; and

**WHEREAS**, on June 26, 2015, the Supreme Court of the United States issued a

decision styled *Obergefell v. Hodges*, 135 S. Ct. 2584, holding that a fundamental right to

marry is guaranteed to same-sex couples under the United States Constitution; and

**WHEREAS**, the Kentucky Constitution, Section 233a, is now in conflict with the

Constitution of the United States; and

**WHEREAS**, as a result of the Supreme Court decision in *Obergefell v. Hodges*,

the offices of the County Clerks of the Commonwealth are now required to issue

marriage licenses in accordance with KRS Chapter 402 to all eligible applicants,

including those intending to enter into same-sex marriages; and

**WHEREAS**, KRS 446.350 (the Kentucky Religious Freedom Restoration Act, or

"RFRA"), states:

> **KRS 446.350 – Prohibition upon government
> substantially burdening freedom of religion – Showing
> of compelling governmental interest – Description of
> "burden."** Government shall not substantially burden a
> person's freedom of religion. The right to act or refuse to
> act in a manner motivated by a sincerely held religious
> belief may not be substantially burdened unless the
> government proves by clear and convincing evidence that it
> has a compelling governmental interest in infringing the
> specific act or refusal to act and has used the least
> restrictive means to further that interest. A "burden" shall
> include indirect burdens such as withholding benefits,
> assessing penalties, or an exclusion from programs or
> access to facilities; and

### EXHIBIT A



**MATTHEW G. BEVIN**
GOVERNOR

**EXECUTIVE ORDER**

**Secretary of State**
Frankfort
Kentucky

**2015-048**
**December 22, 2015**

  **WHEREAS**, the issuance of marriage licenses on the form currently prescribed by the Kentucky Department for Libraries and Archives ("KDLA") creates a substantial burden on the freedom of religion of some County Clerks and employees of their offices because the current form bears the name of the issuing County Clerk, and some County Clerks and their employees sincerely believe that the presence of their name on the form implies their personal endorsement of, and participation in, same-sex marriage, which conflicts with their sincerely held religious beliefs; and

  **WHEREAS**, KRS 446.350 requires use of the least restrictive means available to carry out compelling governmental interests, and there are less restrictive means available to further the governmental interest of issuing marriage licenses to all applicants who qualify than the form that is currently being used; and

  **WHEREAS**, there is no compelling governmental interest, particularly under the heightened "clear and convincing evidence" standard required by KRS 446.350, necessitating that the name and signature of County Clerks be present on the marriage license form used in the Commonwealth; and

  **WHEREAS**, the KDLA can readily prescribe a different form that reasonably accommodates the interests protected by KRS 446.350, while at the same time complying with the United States Constitution, *i.e.*, that allows for County Clerks to issue marriage licenses to same-sex couples, thereby satisfying the compelling governmental interest and complying with the decision in *Obergefell*, without substantially burdening the free exercise of religion by those County Clerks and their employees who hold sincerely-held religious beliefs that conflict with same-sex marriage.



**MATTHEW G. BEVIN**
GOVERNOR

## EXECUTIVE ORDER

Secretary of State
Frankfort
Kentucky

**2015-048**
**December 22, 2015**

**NOW, THEREFORE,** in consideration of the foregoing and by virtue of the

authority vested in me by Section 69 of the Constitution of the Commonwealth of

Kentucky and KRS 446.350, I, Matthew G. Bevin, Governor of the Commonwealth of

Kentucky, do hereby Order and Direct the following effective immediately:

I. That the Kentucky Department for Libraries and Archives, through its duly
appointed commissioner or other authorized officials, shall forthwith create,
prescribe and publish to all County Clerks in the Commonwealth a marriage
license form substantially identical to the form attached hereto, henceforth to be
used by the offices of all County Clerks in the Commonwealth.

II. This Executive Order requires modification only to the existing "Marriage
License" form but not to the existing "Marriage Certificate" form and "Certificate
of Marriage" form.

MATTHEW G. BEVIN, GOVERNOR
Commonwealth of Kentucky

ALISON LUNDERGAN GRIMES
Secretary of State

## Marriage License
Valid ONLY in the
Commonwealth of Kentucky

To Any Person or Religious Society Qualified to Perform Marriages per KRS 402.050: You are hereby authorized to join together in the state of matrimony, according to the laws of the Commonwealth of Kentucky.

First Party Full Name _____

Current Residence _____

Second Party Full Name _____

Current Residence _____

|  | First Party | Second Party |
|---|---|---|
| Date of Birth (Age) | _____ | _____ |
| Place of Birth | _____ | _____ |
| Mother's Full Name (Including Maiden) | _____ | _____ |
| Father's Full Name | _____ | _____ |
| Condition (Single, widowed, divorced, annulled) | _____ | _____ |
| No. of Previous Marriages | _____ | _____ |
| Occupation | _____ | _____ |
| Race | _____ | _____ |
| Relationship to other party | _____ | _____ |

We hereby certify the above information is true to the best of our knowledge.

_____    _____
(First Party Signature)                          (Second Party Signature)

Issued this _____/_____/_____ pursuant to KRS Ch. 402 in _____
                (mo.)     (day)     (year)                                          (county name)

County, _____, Kentucky by _____, _____
         (city)                        (name of issuing official)        (title of issuing official)

*Note: License valid for 30 days only, including the date it is issued, per KRS 402.105!*

## Marriage Certificate
(type or print with black ink ball-point pen only)

I do certify that: _____ and _____
were united in marriage on the _____ day of _____, at _____ Kentucky, under the
authority of the above license and in the presence of (Please PRINT witnesses' names)

_____ and _____

Given under my hand this _____ day of _____, _____.

_____, _____, of the _____
(Signature of person performing ceremony)        (title)                   (church, religion, or civil authority)

Note: Person failing to return this Certificate to the Clerk of the County in which it was issued within one month shall be guilty of a violation per KRS 402.990(11).

Recorded this _____/_____/_____ in the office of _____, _____
                (mo.)     (day)     (year)                              (name)                   (county name)

County Clerk, in Marriage Book _____, page _____.

_____, _____ Clerk
(recorder's signature)                   (recorder's title)