**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 15-46-DLB-EBA**

**DAVID ERMOLD, et al.**                                                                 **PLAINTIFFS**

**v.**

**KIM DAVIS,** *individually*                                                        **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

**CIVIL ACTION NO. 15-62-DLB-EBA**

**JAMES YATES, et al.**                                                                 **PLAINTIFFS**

**v.**

**KIM DAVIS,** *individually*                                                        **DEFENDANT**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

**I.      PROCEDURAL HISTORY**

This matter is before the Court on a number of Motions filed by Defendant Kim Davis, Plaintiffs David Ermold and David Moore (*Ermold* Plaintiffs), and Plaintiffs James Yates and Will Smith (*Yates* Plaintiffs).  These Motions arise from two separate cases against Defendant Kim Davis which have been pending on this Court's docket since 2015: (1) *Ermold, et al. v. Davis*, No. 0:15-cv-46; and (2) *Yates, et al. v. Davis*, No. 0:15-cv-62. Each case originated from Defendant Davis's refusal to issue marriage licenses to legally eligible couples following the Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015).

As noted in this Court's previous orders adjudicating Defendant Davis's Motions to Dismiss, these two cases are nearly identical. *Ermold, et al. v. Davis*, 0:15-cv-46 (E.D. Ky. Sept. 15, 2017), ECF No. 49 at 2; *Yates, et al. v. Davis*, 0:15-cv-62 (E.D. Ky. Sept. 15, 2017), ECF No. 48 at 2. The *Ermold* and *Yates* Plaintiffs each assert a 42 U.S.C. § 1983 claim against Defendant Davis who allegedly deprived Plaintiffs of their fundamental right to marry by refusing to issue them marriage licenses. *Ermold*, ECF No. 27 at 4; *Yates*, ECF No. 1 at 1. Plaintiffs request monetary damages for this violation. *Ermold*, ECF No. 27 at 6-7; *Yates*, ECF No. 1 at 7.

In July of 2017, Defendant Davis filed a Motion to Dismiss in *Ermold* and *Yates*. *Ermold*, ECF No. 29; *Yates*, ECF No. 29. Ultimately, while this Court dismissed Plaintiffs' claims against Davis in her official capacity, Plaintiffs' claims against Davis in her individual capacity were allowed to proceed. *Ermold*, ECF No. 49 at 21; *Yates*, ECF No. 48 at 21. While Davis argued that qualified immunity shielded her from liability in her personal capacity, the Court determined that Plaintiffs had plausibly alleged that (1) Davis had violated their constitutional rights and (2) their right to marry was clearly established at the time of Davis's violation, and therefore Davis was not entitled to qualified immunity. *Ermold*, ECF No. 49 at 20-21; *Yates*, ECF No. 48 at 20-21.

Following this Court's Orders on the Motions to Dismiss, the parties filed cross-appeals challenging the Court's determination on sovereign immunity and qualified immunity. Magistrate Judge Edward Atkins stayed proceedings in this matter while the parties litigated their appeal. *Ermold*, ECF No. 55; *Yates*, ECF No. 55. On August 23, 2019, the Sixth Circuit Court of Appeals affirmed this Court's decision. *Ermold v. Davis*, 936 F.3d 429 (6th Cir. 2019). In evaluating Davis's claim for qualified immunity against

the backdrop of *Obergefell*, the Sixth Circuit affirmatively stated that *Obergefell*'s recognition of same-sex marriage "made no mention of a limit on that right, of an exception to it, or of a multi-factor test for determining when an official violates it.  For a *reasonable* official, *Obergefell* left no uncertainty." *Id.* at 436 (emphasis in original).

Following the Sixth Circuit's decision in *Ermold v. Davis*, 936 F.3d 429, the stay of proceedings was lifted, and discovery commenced on a timeline set by Magistrate Judge Atkins.  *Ermold*, ECF No. 67; *Yates*; ECF No. 63.  After discovery was completed, the parties each filed dispositive motions with the Court: (1) the *Ermold* Plaintiffs filed a Motion for Summary Judgment, ECF No. 88, (2) the *Yates* Plaintiffs filed a Motion for Summary Judgment, ECF No. 81, and (3) Defendant Kim Davis filed Motions for Summary Judgment in both cases.  *Ermold*, ECF No. 93; *Yates*, ECF No. 84.  All of these Motions are fully briefed.  *Ermold*, ECF Nos. 104, 105, 106, and 107; *Yates*, ECF Nos. 93, 94, 95, and 96.  Defendant Kim Davis also filed a Motion for Leave to File Excess Pages and a Motion for Leave to File an Answer in both cases.  *Ermold*, ECF Nos. 94 and 96; *Yates*, ECF Nos. 85 and 87.  These Motions have also been fully briefed.  *Ermold*, ECF Nos. 95, 97, 98, 99, 100, and 101; *Yates*, ECF Nos. 86, 88, 89, and 90.

For the reasons stated herein, the *Ermold* Plaintiffs' Motion for Summary Judgment is **granted**, ECF No. 88, the *Yates* Plaintiffs' Motion for Summary Judgment is **granted**, ECF No. 81, and Defendant Kim Davis's Motions for Summary Judgment are **denied**. *Ermold*, ECF No. 93; *Yates*, ECF No. 84.  Defendant Kim Davis's Motions for Leave to File Excess Pages are **granted**.  *Ermold*, ECF No. 94; *Yates*, ECF No. 85.  Lastly, Kim Davis's Motions for Leave to File Answers are **granted**. *Ermold*, ECF No. 96; *Yates*, ECF No. 87.

## II.    FACTUAL BACKGROUND

On June 26, 2015, the United States Supreme Court held that "the right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty."   *Obergefell*, 576 U.S. at 675. Consequently, state laws which "exclude[d] same-sex couples from civil marriage" were held invalid, including Kentucky's marriage licensing law. *Id.*  At the time of the *Obergefell* decision, Defendant Kim Davis was the County Clerk in Rowan County, Kentucky, who famously refused to comply with *Obergefell*, which required her to issue marriage licenses to same-sex couples.  *Ermold*, ECF No. 88-2 at 3; *Yates*, ECF No. 80 at 14.  Though Davis had urged the legislature to provide her an accommodation prior to the ruling in *Obergefell*, they had failed to act.  *Yates*, ECF No. 80 at 32-33.

Davis read and understood the *Obergefell* decision.  *Ermold*, ECF No. 88-2 at 18; *Yates*, ECF No. 80 at 64-65 ("Yeah, it told [same-sex couples] that they could get a license").  On the same day *Obergefell* was decided, then-Governor Steve Beshear wrote a letter to Kentucky county clerks explaining the decision, stating "[t]he Obergefell decision makes plain that the Constitution requires that Kentucky – and all states – license and recognize the marriages of same-sex couples . . . [e]ffective today, Kentucky will recognize as valid all same sex marriages performed in other states and in Kentucky." *Ermold*, ECF No. 88-3; *Yates*, ECF No. 80-2.  Governor Beshear advised the county clerks to "consult with your county attorney on any particular aspects related to the implementation of the Supreme Court's decision."  *Ermold*, ECF No. 88-3; *Yates*, ECF No. 80-2.  Davis received this letter, read this letter, and understood this letter.  *Ermold*,

ECF No. 88-2 at 10-11; *Yates*, ECF No. 80 at 43-44.  Davis then sought the advice of the Rowan County Attorney, as suggested in Governor Beshear's letter, who advised her that the law required her to issue marriage licenses to same-sex couples.  *Ermold*, ECF No. 88-2 at 20; *Yates*, ECF No. 80 at 78.

Davis ignored the Rowan County Attorney's advice.  *Ermold*, ECF No. 88-2 at 20; *Yates*, ECF No. 80 at 78.  Instead, Davis directed her employees at the Rowan County Clerk's Office not to issue marriage licenses directly following the *Obergefell* decision. *Ermold*, ECF No. 88-2 at 11; *Yates*, ECF No. 80 at 44.  On July 6, 2015, both the *Ermold* Plaintiffs and *Yates* Plaintiffs traveled to the Rowan County Clerk's Office to apply for a marriage license.  *Ermold*, ECF No. 88-5 at 5; *Yates*, ECF No. 78 at 61.  Davis, or a deputy clerk in reliance on Davis's instituted policy, denied both requests on July 6, 2015. *Ermold*, ECF No. 88-2 at 12; *Yates*, ECF No. 78 at 61.  Davis told the *Ermold* Plaintiffs that she could not give them a marriage license "under God's authority."  *Ermold*, ECF No. 88-2 at 16.  Thereafter, the *Ermold* Plaintiffs attempted to apply for a marriage license two more times—on August 13, 2015 and September 1, 2015—and were denied by Davis or a deputy clerk following Davis's instituted policy.  *Ermold*, ECF No. 88-2 at 14-15, 17. Likewise, the *Yates* Plaintiffs were denied a marriage license at the Rowan County Clerk's Office four more times—on August 12, 2015, August 21, 2015, August 27, 2015, and September 1, 2015.  *Yates*, ECF No. 80 at 94-97.  Finally, the *Ermold* and *Yates* Plaintiffs were granted marriage licenses on September 4, 2015 by a deputy clerk, while Davis was in jail for contempt of court.  *Ermold*, ECF No. 88-2 at 17; *Yates*, ECF No. 80 at 98.

III.    **DISCUSSION**

A.    **Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)).  In deciding a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).  Summary judgment should ultimately determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

B.    **Davis's Request for Qualified Immunity**

Defendant Davis once again uses arguments recycled from her Motion to Dismiss briefing to argue that she is entitled to qualified immunity in her personal capacity. *Ermold*, ECF No. 93 at 59; *Yates*, ECF No. 84 at 56.  Again, this Court finds that Davis is

not entitled to qualified immunity.  Although this Court, and the Sixth Circuit, explained this analysis *ad nauseum* in its previous orders, it will briefly address this issue.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In effect, qualified immunity gives public officials "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law.'" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam)).

The inquiry into whether a public official is entitled to qualified immunity is comprised of two parts.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the Court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.*  Second, the Court must decide "if the right at issue was 'clearly established' when the event occurred such that a reasonable [official] would have known that [her] conduct violated it."  *Id.*  While the Court is no longer required to analyze each of the two steps sequentially, "it is often beneficial[,]" as it is here.  *Pearson*, 555 U.S. at 236.  When a defendant asserts entitlement of qualified immunity at the summary judgment stage, "the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right."  *Williams v. Maurer*, 9 F.4th 416, 431 (6th Cir. 2021).

### 1.    *Violation of Plaintiffs' Constitutional Rights*

As the Court noted in its previous Order discussing qualified immunity, "[i]t is undisputed that the right to marry is protected by . . . the Fourteenth Amendment." *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (citing *Zablocki v. Redhail*, 434 U.S. 374, 383 (1978)).  The Supreme Court affirmed this right for same-sex couples in *Obergefell*:

> [T]he right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty.  The Court now holds that same-sex couples may exercise the fundamental right to marry.  No longer may this liberty be denied to them . . . State laws challenged by Petitioners in these cases are now held invalid to the extent that they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples.

576 U.S. at 675-76.  As explained by the Sixth Circuit, "[t]he Court made no mention of a limit on that right, of an exception to it, or of a multi-factor test for determining when an official violates it." *Ermold*, 936 F.3d at 436.[1]

In the Sixth Circuit's opinion, it unequivocally stated that Plaintiff's allegations at the Motion to Dismiss stage "adequately alleged the violation of a constitution[al] right." *Id.* at 435.  As the Sixth Circuit aptly explained, Plaintiffs alleged that the Fourteenth Amendment guaranteed them the right to marry, that they sought marriage licenses from Defendant Davis, an elected official who "Kentucky tasked with issuing those licenses[,]" that they qualified for those licenses, and that "Davis refused to license them." *Id.*  Now,

---

[1]    This Court does not engage in a scrutiny analysis typically applicable to constitutional questions because, as noted by the Sixth Circuit, "the direct prohibition on same-sex marriage" in *Obergefell* "didn't trigger the tiers-of-scrutiny analysis typical in many other constitutional inquiries." *Ermold*, 936 F.3d at 437.  Assuming *arguendo* that a scrutiny analysis should be applied, Davis's actions would fail even rational basis review.  As explained by Judge Bush's concurrence in *Ermold*, "government actions based on moral disapproval of homosexuality fail rational basis review." 936 F.3d at 441 (Bush, J. concurring) (citing *Romer v. Evans*, 517 U.S. 620, 632 (1996)).

at the summary judgment stage, the discovery material available to the Court proves that these allegations are undeniable.

It is readily apparent that *Obergefell* recognizes Plaintiffs' Fourteenth Amendment right to marry.  It is also readily apparent that Davis made a conscious decision to violate Plaintiffs' right.  Both the *Ermold* and *Yates* Plaintiffs sought marriage licenses from either Defendant Davis or the deputy clerks who were acting in conformance with the policy instituted by Davis—a policy directing deputy clerks to refuse to issue marriage licenses in the wake of *Obergefell*.  *Ermold*, ECF No. 88-2 at 12; *Yates*, ECF No. 78 at 61.  Each time, Plaintiffs' requests for marriage licenses were refused.  *Id.*  In total, the *Ermold* Plaintiffs were refused a marriage license three times, ECF No. 88-2 at 14-15, 17, and the *Yates* Plaintiffs were refused a license five times, ECF No. 80 at 94-97.  These facts were solicited from Defendant Davis's *own* testimony.  Defendant Davis violated Plaintiffs' constitutional right to marry by refusing to issue them marriage licenses, either personally or through the policy she established for the Rowan County Clerk's office.

### 2.    *Plaintiffs' Right to Marry was Clearly Established*

As discussed above, the Supreme Court's decision clearly established the right of same-sex couples to receive marriage licenses from the State government.  Since the Supreme Court's decision in *Obergefell*, it has not further limited the right of same-sex couples to marry or provided accommodations for officials who are tasked with licensing marriages in their state.

Defendant Davis boldly suggests that she did not violate a constitutional right because "*Obergefell* did not clearly establish a constitutional right to demand a state-issued marriage license from a particular state official."  *Ermold*, ECF No. 93 at 61; *Yates*,

ECF No. 84 at 58.  But this same argument was unavailing the first time Defendant made it.  This Court determined that "officials can still be on notice that their conduct violates established law even in novel factual circumstances."  *Yates*, ECF No. 48 at 17 (quoting *Sutton v. Metro. Gov't of Nashville*, 700 F.3d 865, 876 (6th Cir. 2012)).  This Court then went on to explain: "[e]ven if considered a 'novel factual circumstance,' the Plaintiffs' fundamental right to marry was so 'obvious' after *Obergefell* that Defendant had fair notice that adopting her 'no marriage licenses' policy was unconstitutional."  *Yates*, ECF No. 48 at 17-18.  Again, the Sixth Circuit explicitly held that "[f]or a *reasonable* official, *Obergefell* left no uncertainty.  For Davis, however, the message apparently didn't get through." *Ermold*, 936 F.3d at 436 (emphasis in original).  The Sixth Circuit went on to address the exact argument Davis makes again here—that *Obergefell* did not "clearly establish a right to demand marriage licenses from particular state officials."  *Id.*  The Sixth Circuit disposed of this argument succinctly: "no where in the Constitution—or in constitutional law for that matter—does it say that a government official may infringe constitutional rights so long as another official might not have."  *Id.*  Instead, *Obergefell* and the United States Constitution *require* "*all* government officials [to] respect *all* constitutional rights."  *Id.* (emphasis in original).

The explicit holding in *Obergefell* was that states could not exclude same-sex couples from civil marriage.  The logical next step is clear.  Davis, an elected county official who was tasked by her constituents to manage marriage licensing in Rowan County, could not exclude same-sex couples from civil marriage.  Kentucky statute provides that "[n]o marriage shall be solemnized without a license therefor.  The license shall be issued by the clerk of the county in which the [applicant] resides . . ."  Ky. Rev.

Stat. § 402.080.  If the state may not exclude same-sex couples from marriage under *Obergefell*, but it requires applicants to receive a license from the county clerk in order to enter into a marriage, refusal of that license by a county clerk violates *Obergefell*, as a license from the county clerk is the only avenue to legalize a marriage in Kentucky.

Davis then argues that her conduct was "objectively reasonable" and "[q]ualified immunity allows for mistaken judgments and balancing reasonable uncertainties." *Ermold*, ECF No. 93 at 66; *Yates*, ECF No. 84 at 63.  Davis is correct that qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violated the law.'" *Johnson*, 790 F.3d at 653 (quoting *Hunter*, 502 U.S. at 229 (per curiam)).  However, "[t]he operative inquiry is not whether a previous court faced perfectly analogous facts—it is 'whether it would be clear to a reasonable [official] that [her] conduct was unlawful in the situation [she] confronted.'" *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 904 (6th Cir. 2018) (quoting *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015)).  Davis did not make a mistake.  Rather, she knowingly violated the law.

Prior to the decision in *Obergefell*, Davis was aware that the Supreme Court was hearing the case and wrote to her legislators to request an accommodation.  *Yates*, ECF No. 80 at 29-33.  Davis recognized that without an accommodation for religious beliefs, she would be required to issue marriage licenses to same-sex couples if the Supreme Court sided with the plaintiffs in *Obergefell*.  *Id.* ECF No. 80-1.  Following *Obergefell*, Davis received a letter from then-Governor Steve Beshear explaining that "[t]he Obergefell decision makes plain that the Constitution requires that Kentucky – and all states – license and recognize the marriages of same-sex couples."  *Ermold*, ECF No.

88-3; *Yates*, ECF No. 80-2.  This same letter encouraged Davis to consult the Rowan County Attorney about the implementation of the *Obergefell* decision.  *Id.*  Davis sought the advice of the Rowan County Attorney, who also advised her that the law required her to issue marriage licenses to same-sex couples.  *Ermold*, ECF No. 88-2 at 20; *Yates*, ECF No. 80 at 78.  As a result of (and directly in contradiction with) Governor Beshear's letter and the *Obergefell* decision, Davis instituted a policy directing the employees of the Rowan County Clerk's Office to not issue marriage licenses.  *Ermold*, ECF No. 88-2 at 11; *Yates*, ECF No. 80 at 44.  Davis still implemented this policy after reading and understanding *Obergefell*, Governor Beshear's letter, and after consultation with the Rowan County Attorney who explained that she was required by law to issue marriage licenses.  Davis clearly recognized that *Obergefell* had "put numerous County Clerks' moral and religious beliefs at odds with their current required duties."  *Yates*, ECF No. 80-3.

Davis's own testimony regarding her decision not to issue marriage licenses only further illustrates that she knowingly violated the law.  Davis described the situation as "a very clear heaven or hell issue"—meaning that "[t]he hell decision would be to capitulate to their demands even though I knew it wasn't right and to let my name be affixed to a license or an application that would say that they were authorized – that they met the requirements of what a marriage is."  *Yates*, ECF No. 80 at 57-58.  Davis clarified that "their demands" included the demands of the *Ermold* Plaintiffs, Governor Beshear, and five Supreme Court Justices.  *Id.* at 58.  Ultimately, Davis "chose to stand for what [she] believe[s] in over what was contrary to that"—the law.  *Id.* at 59-61.  Any argument that

Davis made a mistake, instead of a conscious decision to violate the law, is not only contrary to the record, but also borders on incredulous.

Further, balancing reasonable uncertainties does not allow for state officials to consciously disregard their duties under the law in favor of their "rights of conscience" as argued by Davis. *Ermold*, ECF No. 93 at 67; *Yates*, ECF No. 84 at 64. Davis again argues that her actions were reasonable under Kentucky's Religious Freedoms Restoration Act ("KRFRA"), KRS § 446.350. *Ermold*, ECF No. 93 at 70; *Yates*, ECF No. 84 at 67. Again, Davis burdens the Court with an argument that has already been thoroughly examined. As explained by the Sixth Circuit, "[i]n the presence of *Obergefell*'s clear mandate that 'same-sex couples may exercise the fundamental right to marry,' and in the absence of any legal authority to support her novel interpretation of Kentucky law, Davis should have known that *Obergefell* required her to issue marriage licenses to same-sex couples." *Ermold*, 936 F.3d at 437 (internal citations omitted). Ultimately, the qualified immunity inquiry involves a determination of whether *Plaintiffs'* constitutional rights were violated, not whether Davis's actions should be excused by her claim to religious freedom. The question is simple—did Davis knowingly violate the law? The answer here is clear—yes. Davis is therefore not entitled to qualified immunity.

### C.    Plaintiffs' Claims under 42 U.S.C. § 1983

As Davis is not entitled to qualified immunity, Plaintiffs' § 1983 claims against her in her individual capacity may proceed. Plaintiffs each allege that Davis violated their fundamental, constitutional right to marriage under the Fourteenth Amendment, and accordingly bring suit under 42 U.S.C. § 1983. *Ermold*, ECF No. 27 at ¶¶ 33-53; *Yates*, ECF No. 1 at ¶¶ 1, 20-30.

The Fourteenth Amendment provides that states may not "deprive any person of life, liberty or property, without due process of law" or "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  In *Obergefell*, the Supreme Court explained that the "right to marry is a fundamental right inherent in the liberty of the person" and both the Due Process and Equal Protection Clauses of the Fourteenth Amendment prevent states from depriving same-sex couples "of that right and that liberty."  576 U.S. at 675.  Indeed, "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  While the Fourteenth Amendment grants Plaintiffs these rights, § 1983 is the avenue by which they are able to vindicate them.

Section 1983 confers civil liability on any "person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution."  To establish liability under § 1983, a plaintiff must show "that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution . . . ." *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001).  As discussed in detail above, *supra* III.B.1-2, Davis knowingly deprived Plaintiffs of a right secured to them by the Constitution—the right to marry.  While this right was only acknowledged to apply to same-sex couples a mere seven years ago, this Nation "has long held the right to marry is protected by the Constitution." *Obergefell*, 576 U.S. at 664.  Davis decided to deny Plaintiffs this fundamental right thereby ignoring the demands of the Fourteenth Amendment and the Supreme Court.  By denying same-sex couples this right, it "disparage[s] their choices and diminish[es] their personhood." *Id.* at 672.  Therefore, the only remaining question is

whether Davis was acting under color of state law when she made this decision.  This Court finds that Davis was acting under color of state law.

*Obergefell* acknowledged that much of the opposition to same-sex marriage came from individuals who reached this conclusion "based on decent and honorable religious or philosophical premises," which may very well describe Davis.  *Id.* at 672.  However, "when that sincere, personal opposition becomes enacted law and public policy, the necessary consequence is to put the imprimatur *of the State itself* on an exclusion that soon demeans or stigmatizes those whose own liberty is then denied."  *Id.* (emphasis added).  Whether a state actor acts under color of state law typically turns on whether the "conduct occurs in the course of performing an actual or apparent duty of [her] office." *Waters*, 242 F.3d at 359.  As noted by the Sixth Circuit, "Kentucky law vests county clerks with the duty of issuing marriage licenses, recording marriage certificates, and reporting marriages."  *Ermold*, 936 F.3d at 434 (citing Ky. Rev. Stat. §§ 402.080, 403.220, 402.230). The only officer in Kentucky who can issue a marriage license is the county clerk.  Ky. Rev. Stat. § 402.080.   It is therefore clear that Davis was "performing an actual or apparent duty of [her] office"—issuing marriage licenses—when she denied Plaintiffs their constitutional right to marriage.

"[A] defendant's private conduct, outside the course or scope of [her] duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law."  *Waters*, 242 U.S. at 359.  Therefore, Davis's conscientious religious objection to same-sex marriage outside of her official duties is not actionable, but she is liable for her actions within the scope of her work as county clerk.  Davis argues that this Court may not impose § 1983 liability on her because it would violate *her*

Constitutional right to free exercise of religion.  *Ermold*, ECF No. 93 at 11; *Yates*, ECF No. 84 at 11.  As thoughtfully explained by the Sixth Circuit, while *Obergefell* may have raised "serious questions about religious liberty," 576 U.S. at 711 (Roberts, C.J., dissenting), "it said nothing to suggest that government officials may flout the Constitution by enacting religious-based policies to accommodate their own religious beliefs." *Ermold*, 936 F.3d at 437.  Similarly, this Court can find no example, nor has Davis provided one, where a defendant's constitutional rights were found to be a valid defense for violating the constitutional rights of others.[2]  Ultimately, this Court's determination is simple—Davis cannot use her own constitutional rights as a shield to violate the constitutional rights of others while performing her duties as an elected official.

### D.    Plaintiffs' Damages Claims

While Plaintiffs do not request summary judgment as to their damage claims, Davis asserts that she is entitled to summary judgment on this issue.  *Ermold,* ECF No. 93 at 72; *Yates*, ECF No. 84 at 69.  Damages flowing from a § 1983 claim cannot be solely based on "[t]he abstract value of a constitutional right."  *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986).  Instead, nominal damages are appropriate when a plaintiff cannot show actual injury.  *Schock v. Redman*, 924 F.2d 1059 (6th Cir. 1991)

---

[2]    It is also important to note that because Davis was acting in her capacity as County Clerk when asserting her First Amendment rights, her actions likely are not protected.  In *Garcetti v. Ceballos*, the Supreme Court made clear that "[r]estricting speech that owes its existence to a public employee's professional responsibilities *does not infringe* any liberties the employee might have enjoyed as a private citizen."  547 U.S. 410, 421-22 (2006) (emphasis added).  While employees of the government receive "constitutional protection for their contributions to [] civic discourse[,]" this protection "does not invest them with the right to perform their jobs however they see fit." *Id.*  While *Garcetti* involved whether an employee could be fired or disciplined for speech related to their official duties, this same reasoning is applicable to the current situation.  Davis receives less constitutional protection when she is acting on behalf of the state, instead of in her personal capacity as a citizen.

(unpublished table decision).  "[S]ubstantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights."  *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 603 (6th Cir. 2006).  However, presumed damages are sometimes appropriate in place of compensatory damages when an injury has occurred but is difficult to establish.  *Memphis Cmty.*, 477 U.S. at 310-11.  Ultimately, "[t]he determination of the amount of damages to be awarded is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case."  *Smith v. Heath*, 862 F.2d 597, 606 (6th Cir. 1988).

The *Ermold* and *Yates* Plaintiffs request the same damages: compensatory and punitive damages, pre and post judgment interest, and costs and attorneys' fees under 42 U.S.C. § 1988.  *Ermold*, ECF No. 27 at 7; *Yates*, ECF No. 1 at 8.  More specifically, the *Ermold* Plaintiffs "seek damages for mental anguish, emotional distress, humiliation and reputation damages suffered by Davis's actions."  *Ermold*, ECF No. 104 at 5.  The *Yates* Plaintiffs explain that their experience with Defendant Davis caused emotional harm among other compensatory damages.  *Yates*, ECF No. 93 at 6-10.  The Plaintiffs' deposition testimony at the very least creates a genuine issue of material fact as to whether they are entitled to damages.  For example, Plaintiff Ermold stated that "[e]very time I think of my marriage, I have to think about Kim Davis and the experience, how we were humiliated and treated like less than human beings."  *Ermold*, ECF No. 90-1 at 105.  Plaintiff Yates testified that his damages claim is for "the suffering and pain that went on because of what [Davis] did."  *Yates*, ECF No. 78 at 121.  He further explained that the damages award would compensate him and Plaintiff Smith for the experience with Davis,

the resulting publicity, and the threats that were a result of their interactions with Davis. *Id.* at 122.  Plaintiff Smith explained that Davis's actions "affects [his] anxiety" and that he discusses Davis with his therapist.  ECF No. 79 at 57.   Ultimately, Plaintiffs' alleged damages are a question of fact that will be determined by a jury.

Finally, punitive damages may very well be an available remedy for Plaintiffs. Punitive damages are available for § 1983 actions if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Based on the record before the Court, it seems plausible that Davis could have acted with reckless indifference to the constitutional rights of Plaintiffs.   Davis was aware that *Obergefell* prohibited states from excluding same-sex couples from the right to marry, yet she still refused to issue marriage licenses to Plaintiffs.  *Ermold*, ECF No. 88-2 at 11, 18; *Yates*, ECF No. 80 at 44, 64-65.  Davis described understanding the impact of *Obergefell*: "[y]eah, it told [same-sex couples] that they could get a license."  *Ermold*, ECF No. 88-2 at 18; *Yates*, ECF No. 80 at 64-65.  Davis argues her conduct was justified, Plaintiffs argue that it was not.  Consequently, this dispute is appropriate for a jury to consider.

### E.    Defendant's Motions for Leave to File an Answer

While this Motion ultimately makes no difference in the outcome of the Court's ruling, as the Court has faithfully evaluated Defendant's arguments, for the sake of clarity, the Court will **grant** Defendant's Motions for Leave to File an Answer.  *Ermold*, ECF No. 96; *Yates*, ECF No. 87.  Davis argues that she is not required to file an Answer, "but does so out of an abundance of caution."  *Ermold*, ECF No. 96 at 1; *Yates*, ECF No. 87 at 1. Davis argues that because the Court stayed proceedings following the entry of its Orders

on Davis's Motions to Dismiss, and when it lifted the stay, did not set a new answer deadline, she was never required to file an answer. *Ermold*, ECF No. 96 at 2-3; *Yates*, ECF No. 87 at 2-3.  Because of the untraditional posture of this case, the Court understands Davis's confusion, and will allow her to file an answer.

Federal Rule of Civil Procedure 12 requires a defendant to serve an answer following the adjudication of a motion to dismiss.  Specifically, Rule 12(a)(4)(A) states: "[u]nless the court sets a different time, serving a motion under this rule alters these periods as follows: if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action[.]" Following the Sixth Circuit's affirmation of the denial of Davis's Motions to Dismiss, Magistrate Judge Atkins lifted the stay and entered a scheduling order "outlining the new deadlines for this matter," which did not include a deadline by which Davis was required to file an answer. *See Ermold*, ECF Nos. 66 and 67; *Yates*, ECF Nos. 62 and 63.  Davis argues that by not acting, Judge Atkins implicitly "set[] a different time."  While the Court, through its interpretation of Rule 12(a)(4)(A) finds Davis should have filed an answer within fourteen days of Judge Atkins's lifting of the stay, it was reasonable of Davis to be confused by the language in Rule 12(a)(4)(A) and how it interacted with Judge Atkins's statement regarding entering a scheduling order to "outlin[e] the new deadlines for this matter." *Ermold*, ECF No. 66; *Yates*, ECF No. 62.  Further, the Court finds that that Plaintiffs were aware that Davis was disputing their version of events and Davis's failure to file an answer caused them no unfair surprise.

In operation, the failure to file an answer under Rule 12 may result in the admission of certain facts under Rule 8(b)(6).  Rule 8(b)(6) provides that "[a]n allegation—other than

one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."  However, Rule 8(b)(6) is not without exceptions.  First, "the failure to file an answer does not mean that a defendant admits legal conclusions." *Jones v. Pekoske*, No. 21-1061, 2021 WL 5782380, at *2 (6th Cir. Dec. 7, 2021) (citing *Thompson v. Dewine*, 976 F.3d 610, 615 n.5 (6th Cir. 2020) (per curiam)).  Additionally, "the failure to file an answer may be harmless, most usually where the plaintiff is consistently on notice that the defendant is disputing the facts." *Id.*

Davis's entire summary judgment argument was dependent on legal conclusions—that the Free Exercise Clause protected Davis from Plaintiffs' § 1983 claims and that Davis is entitled to qualified immunity because she did not violate Plaintiffs' constitutional right to marry, and if she did, that right was not clearly established. *Ermold*, ECF No. 93 at 11; *Yates*, ECF No. 84 at 11; *see also Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 573 ("whether qualified immunity is applicable to an official's actions is a question of law").  While the Court ultimately found these conclusions meritless, even without filing an answer, Davis was entitled to make these arguments. Further, even if Plaintiffs believe that Davis does dispute specific facts, in this Order, the Court has resolved those facts in their favor.

It is this Court's opinion that Davis violated Plaintiffs' constitutional right to marry and the only remaining issue is the issue of damages.  Moreover, this lawsuit has been litigated in this Court and at the Court of Appeals for six and a half years.  Plaintiffs were more than aware of Davis's arguments, as she has made the same ones, albeit unsuccessfully, and thus her filing of an answer will not cause Plaintiffs any harm or undue surprise.  *See Thompson*, 976 F.3d at 615 n.5 (finding that a defendant's "consistent[]"

arguments "both before the district court and before [the Sixth Circuit]" rebutted the plaintiffs claim that the defendant admitted certain factual disputes).

The Court is also not persuaded by the *Ermold* Plaintiffs' argument that they will be harmed because Davis asserts certain affirmative defenses in her answer, and Plaintiffs have not had the benefit of discovery as to those defenses. *Ermold*, ECF No. 99 at 11. While Rule 8(c) requires defendants to raise affirmative defenses in the first responsive pleading, the purpose of this rule "is to give the opposing party notice of the affirmative defense and a chance to respond." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir. 1997). The first four affirmative defenses listed in Davis' answer have already been addressed within this Order and dismissed. The next four affirmative defenses alleged by Davis are: (1) Plaintiffs have suffered no cognizable injury, (2) Plaintiffs' alleged injuries were not caused by Davis, (3) every item of damages claimed by Plaintiffs is barred by Plaintiffs' failure to mitigate their alleged damages, and (4) Plaintiffs are not entitled to special, exemplary, or punitive damages. *Id.* ECF No. 96-1 at 7. The Sixth Circuit has held that "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice." Each of these defenses were addressed thoroughly in Davis's Motion for Summary Judgment. *Ermold*, ECF No. 93 at 72-78; *see also Sushka*, 117 F.3d at 969 (finding a defendant did not waive an affirmative defense when it was raised in a summary judgment motion).

Finally, all of these defenses relate to Plaintiffs' alleged injuries caused by Davis's actions. If Plaintiffs have not conducted any discovery as to their *own injuries*, that cannot possibly be said to be Defendant Davis's fault. This evidence is required for them to prove

their entitlement to damages for Davis's violation of their constitutional rights.  Therefore, Defendant Davis's Motions for Leave to File an Answer are **granted**.  *Ermold*, ECF No. 96; *Yates*, ECF No. 87.

## IV.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   Defendant's Motions for Summary Judgment, *Ermold*, ECF No. 93 and *Yates*, ECF No. 84, are **DENIED**;

(2)   The *Ermold* Plaintiffs' Motion for Summary Judgment, ECF No. 88, is **GRANTED**;

(3)   The *Yates* Plaintiffs' Motion for Summary Judgment, ECF No. 81, is **GRANTED**;

(4)   Defendant's Motions for Leave to File Excess Pages, *Ermold*, ECF No. 94 and *Yates*, ECF No. 85, are **GRANTED**;

(5)   Defendant's Motions for Leave to File Answers, *Ermold*, ECF No. 96 and *Yates*, ECF No. 87, are **GRANTED**; and

(6)   A **telephonic status conference** is scheduled for **Friday, April 1, 2022 at 10:00 a.m.**  The parties **must dial in to this conference at least five (5) minutes before the scheduled time** by following these steps:

- Call AT&T Teleconferencing at 1-877-336-1839; and
- Enter Access code 8854898

This 18th day of March, 2022.



Signed By:

*David L. Bunning*   *DB*

**United States District Judge**