NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0388n.06

Nos. 22-5260/5261

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 29, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DAVID ERMOLD; DAVID MOORE (22-5260), JAMES YATES; WILL SMITH (22-5261), <br>     Plaintiffs-Appellees, <br><br> v. <br><br> KIM DAVIS, Individually, <br>     Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY <br><br> OPINION |

Before: GRIFFIN, WHITE, and BUSH, Circuit Judges.

GRIFFIN, Circuit Judge.

Over three years ago, we considered whether plaintiffs, two same-sex couples who sought to marry in Rowan County, Kentucky, pleaded a plausible case that Kim Davis, then-Rowan County Clerk, violated their clearly established right to marry when she declined to issue marriage licenses based on her belief that same-sex marriage was immoral.  They did, meaning Davis was not entitled to qualified immunity at the motion-to-dismiss stage.  *Ermold v. Davis*, 936 F.3d 429, 432 (6th Cir. 2019).  At the summary-judgment stage, discovery proved the facts plaintiffs pleaded.  Thus, Davis is still not entitled to qualified immunity, and we again affirm the district court.

I.

The basic facts of this case have not changed since the last time it was before us:

In the summer of 2015, Kim Davis was the County Clerk for Rowan County, Kentucky.  One of her responsibilities was to issue marriage licenses.  But same-sex marriage offended her religious beliefs, so when the Supreme Court recognized

Nos. 22-5260/5261, *Ermold, et al. v. Davis*

> a constitutional right to same-sex marriage in *Obergefell v. Hodges*, [576 U.S. 644] (2015), Davis took matters into her own hands.
>
> One day after the Supreme Court released *Obergefell*, Davis stopped issuing marriage licenses. She didn't discriminate against same-sex couples, though; she stopped issuing licenses altogether. That meant that when plaintiffs—two same-sex couples who lived in Rowan County—sought marriage licenses from the Clerk's Office, they couldn't get them.
>
> With a constitutional right to marry yet no ability to obtain marriage licenses within Rowan County, plaintiffs sued Davis in her individual capacity and in her official capacity as County Clerk. One of the couples also sued the County. Plaintiffs sought damages for Davis's violation of their right to marry.
>
> \* \* \*
>
> Davis then moved to dismiss the complaints, arguing that sovereign immunity shielded her from suit in her official capacity and that qualified immunity shielded her from suit in her individual capacity. The district court sided with plaintiffs on the qualified-immunity issue (ruling that the doctrine didn't shield her) and with Davis on the sovereign-immunity issue (ruling that the doctrine did).

*Id.* at 432–33. On appeal, we affirmed both rulings. *Id.* at 438.

The case then returned to the district court for discovery, during which Davis confirmed key facts. She was the Rowan County Clerk in 2015, and she knew that the Supreme Court was considering *Obergefell* that summer. Davis sought a marriage-license accommodation from the state legislature because of her firmly held religious belief that marriage exists exclusively between one man and one woman, but the legislature did not act on her request.

Davis became aware of the Supreme Court's decision in *Obergefell* the day it was released. That same day, then-Governor Steve Beshear wrote a letter to county clerks addressing the decision and explaining that, effective that day, Kentucky would recognize same-sex marriages. Beshear encouraged the clerks to "consult with your county attorney on any particular aspects related to the implementation of the Supreme Court's decision." Davis read and understood that

Nos. 22-5260/5261, *Ermold, et al. v. Davis*

letter, and she spoke to the Rowan County Attorney, who advised her that she "had to issue the license[s]."

Despite these instructions, Davis directed employees of her office to "stop[] issuing a license to everybody." It was her decision to implement this policy in Rowan County, not anyone else's, and she implemented the policy in direct response to the *Obergefell* decision.

The Yates plaintiffs tried to obtain a marriage license from the Rowan County Clerk's office five times but were denied each time. The Ermold plaintiffs tried three times and were equally unsuccessful. On the Ermold plaintiffs' final attempt, Davis explained that she could not issue them a license "under God's authority." Eventually, both sets of plaintiffs were issued a marriage license by a Rowan County Deputy Clerk while Davis was in jail for contempt of court.

The district court concluded that this discovery proved Davis violated plaintiffs' clearly established right to marry by denying their repeated requests for marriage licenses. Accordingly, the court found that Davis was not entitled to qualified immunity. It went on to grant summary judgment in plaintiffs' favor on the merits of their claims, but left the amount of damages owed to be decided by a jury. Davis now appeals the denial of qualified immunity.

II.

We review the district court's ruling that Davis is not entitled to qualified immunity de novo. *Shanaberg v. Licking Cnty.*, 936 F.3d 453, 455 (6th Cir. 2019).

Qualified immunity shields public officials from personal liability under 42 U.S.C. § 1983 unless they "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a defendant is entitled to qualified immunity, we must ask two questions: (1) "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right," and

-3-

Nos. 22-5260/5261, *Ermold, et al. v. Davis*

(2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted).

Recall that plaintiffs alleged that "(1) the Fourteenth Amendment guarantees them the right, as same-sex couples, to marry; (2) they sought marriage licenses from Davis, whom Kentucky tasked with issuing those licenses; (3) under Kentucky law, they qualified for licenses; and (4) Davis refused to license them." *Ermold*, 936 F.3d at 435. That was enough to establish an alleged violation of a constitutional right. *Id.* As the district court recognized and as we have outlined above, those facts were proven in discovery, so plaintiffs have not only "alleged" but also now "shown" that Davis violated their constitutional right to marry. *Cf. Pearson*, 555 U.S. at 232. And, as we held three years ago, that right was "clearly established in *Obergefell*." *Ermold*, 936 F.3d at 437. Therefore, the district court correctly determined that Davis is not entitled to qualified immunity.

To the extent that Davis seeks to inject other issues into this appeal—largely based on the allegation that her First Amendment rights were violated—we cannot consider them at this juncture. Our jurisdiction is limited to considering "the legal issues that the [district court's] decision resolves in the course of denying qualified immunity—not other unrelated issues." *DeCrane v. Eckart*, 12 F.4th 586, 601–02 (6th Cir. 2021). We have now done so, and we may go no further.

Davis resists this conclusion by requesting that we exercise our "pendent appellate jurisdiction" over her arguments because they are "inextricably intertwined" with the qualified immunity analysis. *See id*. at 602. We disagree. Qualified immunity asks only two questions: did Davis violate plaintiffs' constitutional rights, and if so, were those rights clearly established? It does not ask whether Davis had a justification for taking the action (or, as here, inaction) that

-4-

Nos. 22-5260/5261, *Ermold, et al. v. Davis*

violated plaintiffs' constitutional rights. But that is exactly what Davis asks us to adjudicate: whether she has an affirmative "free exercise defense under the First Amendment" for her decision not to issue marriage licenses. Such a defense is not intertwined with qualified immunity; rather, it "can be effectively reviewed after a final judgment." *Campbell v. Cheatham Cnty. Sheriff's Dep't*, --- F.4th ---, 2022 WL 3714606, at *2 (6th Cir. Aug. 29, 2022); *see also DeCrane*, 12 F.4th at 602 (noting that a defense was not intertwined because "resolution of the immunity issue [did] not affect the defense's viability"). Therefore, we lack jurisdiction to consider her arguments.

III.

For these reasons, we affirm the judgment of the district court.