**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

| | | |
|---|---|---|
| **DAVID ERMOLD, ET AL.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | **0:15-CV-00046-DLB** |
| | : | |
| **v.** | : | **DISTRICT JUDGE** |
| | : | **DAVID L. BUNNING** |
| **KIM DAVIS, ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |

**DEFENDANT KIM DAVIS'S RESPONSE IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Pursuant to this Court's Order (dkt. 132), Defendant, Kim Davis, hereby responds in opposition to Plaintiffs' Motion for Attorney's Fees. (Dkt. 157, "Fee Motion.") For the following reasons, Plaintiffs' Fee Motion should be denied in part.[1]

## INTRODUCTION

In their Fee Motion, Plaintiffs seek $246,026.40 in attorney's fees and $14,058.30 in expenses. (Fee Motion at 8.) Plaintiffs err on multiple fronts, including by (a) seeking hourly rates far in excess of those appropriate for the Eastern District of Kentucky, where this case was litigated and tried, (b) seeking full compensation for claims that were largely mirror images of a complaint that pre-existed Plaintiffs' claims in this matter, and (c) providing the Court with insufficient billing records that fail to satisfy their burden to adequately justify the award requested. Plaintiffs impermissibly engage in block billing, improperly seek attorney rates for clerical time, inadequately justify their requested award on the sole basis of their own affidavits, insufficiently

---

[1] For purposes of the instant motion only, Defendant Davis assumes that Plaintiffs are prevailing parties for the time being, subject to further proceedings and appellate review of the forthcoming judgment, as to which Davis reserves all rights.

demonstrate that the time records submitted were contemporaneously kept, and unjustifiably seek full compensation for duplicative and excess work. Those errors and failures demand significant reductions in the requested award.

As recognized by numerous courts in the Sixth Circuit, a court is justified in "utiliz[ing] a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when the fee documentation is voluminous." *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, *6 (N.D. Ohio Mar. 31, 2009). Because Plaintiffs' billing records are voluminous and contain significant errors in billing practices, percentage reductions are appropriate for each error. Indeed, neither Defendant nor this Court are required to "'and indeed should not' become a 'green-eyeshade accountant' when reviewing a timesheet for attorney's fees." *L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713, 726-27 (E.D. Tenn. 2019) (quoting *Fox v.* Vice, 563 U.S. 826, 838 (2011)). Defendant's suggested percentage reductions for Plaintiffs' billing errors are appropriate and justified by precedent throughout the Sixth Circuit. Plaintiffs' requested attorney's fees should be reduced to $106,590.25, and claimed expenses should be allowed in the amount of $14,058.30, for a total award of $120,648.55.

## ARGUMENT

Section 1988 provides that "the court, in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). While there is little question that a prevailing party is entitled a reasonable attorney's fee, "[t]he amount of the fee, of course, must depend on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And, the burden to establish both entitlement to and the reasonableness of an attorney's fee under Section 1988 rests squarely on the movant. *Id.* at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended

and hourly rates."); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award.").

"The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed*, 179 F.3d at 471. "A reasonable fee under §1988 is one that is 'sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case' but does not 'produce a windfall to attorneys.'" *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 601 (6th Cir. 2014) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The starting place for an award of attorney's fees is the "lodestar" amount, "which is the proven number of hours reasonably expended on the case by an attorney multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). When awarding attorney's fees to a party claiming to have prevailed, the district court must "provide a concise but clear explanation for its reasons for the fee award" and "should make clear that it has considered the relationship between the amount of fees awarded and the results obtained." *Hensley*, 461 U.S. at 437.

## I.   THE HOURLY RATES REQUESTED BY PUBLIC CITIZEN LAW GROUP ARE UNREASONABLE FOR THE RELEVANT MARKET.

### A.   Plaintiffs Improperly Seek Rates Far Exceeding Those Appropriate for the Eastern District of Kentucky for Out-of-Town Counsel.

"A trial court, in calculating the 'reasonable hourly rate' component of the computation, should initially assess the *prevailing market rate in the relevant community*." *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)) (emphasis original). Here, it is Plaintiffs' burden to demonstrate the appropriateness and reasonableness of the relevant rate requested. *Blum*, 465 U.S. at 895 n.11 ("courts properly have required prevailing attorneys to

justify the reasonableness of the requested rate or rates."). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command *within the venue of the court of record*." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007) (emphasis added). *See also Ohio Right to Life Soc'y*, 590 F. App'x at 601 (same).

> The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, *rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge*.

*Adcock-Ladd*, 227 F.3d at 350 (cleaned up) (emphasis added). *See also Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983) ("[T]he community to be looked to was 'the jurisdiction where the case was tried.'" (quoting *Horace v. City of Pontiac*, 624 F.2d 765, 770 (6th Cir. 1980)).

Here, Plaintiffs make a slapdash contention in their Fee Motion that certain counsel are entitled to an award of rates far exceeding those of the Eastern District of Kentucky. (Fee Motion at 6.) Plaintiffs suggest that attorneys for Public Citizen Litigation Group (PCLG) should be awarded rates established in the Washington D.C. market, namely $578.00 per hour for Attorney Adam Pulver, $723.00 per hour for Attorney Allison Zieve, and $486.00 per hour for Attorney Kaitlan Leary. (Dkt. 157-3, Declaration of Adam R. Pulver, "Pulver Decl.," ¶¶13, 17.) Plaintiffs' basis for claiming an award of rates far exceeding the Eastern District of Kentucky—the relevant market where the case was tried and where Plaintiffs' instant Motion pends—is based on the matrix maintained by the United States Attorney's Office in Washington D.C., and not any substantive or

relevant authorities from the relevant jurisdiction. (Pulver Decl. ¶14.) And, PCLG suggests that the requested rates are justified because of their "knowledge of the special kinds of arguments needed to oppose a writ of certiorari in the Supreme Court," and "opposing certiorari entails a different approach," with a purported requirement of specialized knowledge. (*Id.* ¶15.)

Logic and precedent dictate a different result. **First**, abundant precedent (and common sense among litigators who present arguments to the Supreme Court) dictate that—contrary to PCLG's contention—there is no specialized "expertise" required for opposing something that is routinely denied thousands of times per year. *See, e.g.*, *Idaho Dep't of Employment v. Smith*, 434 U.S. 100, 104 (1977) (Stevens, J., dissenting) ("We are much too busy to correct every error that is called to our attention in the thousands of certiorari petitions that are filed each year."); *Singleton v. C.I.R.*, 439 U.S. 940, 946 (1978) (Stevens, J., opinion) (noting the "processing of thousands of certiorari petitions that are reviewed each year). *See also* Tom Staunton, *Annual Survey of Am. Law* 1992/1993 ANNSAL 347, 353 (1994) (noting the "thousands of unofficial pronouncements that are made in the form of certiorari denials" each year).

PCLG's contention that they have specialized expertise in obtaining denials of certiorari, and that this purported expertise was required here, rings hollow. Something that is a virtual statistical certainty cannot require expertise to obtain. And, PCLG's reference to Justice Thomas's statement in the denial of Defendant's petition for certiorari adds no substance to the claim. (*See* Pulver Decl. ¶15.) As Justice Marshall has pointed out, viewing a case as an inappropriate vehicle for certiorari review is quite common. As he noted, "in the thousands of cases in which we annually deny certiorari," the Justices routinely see "many cases in which a colleague's dissent from the denial of certiorari pointed to an issue of great concern . . . but in which we did not join because we did not consider the case to be an appropriate vehicle for determination of that issue." *United*

*States v. Kras*, 409 U.S. 434, 461 & n.3 (1973) (Marshall, J. dissenting). Indeed, "the denial of certiorari should suggest, again, nothing at all about the views of any other Members of the Court on the merits of the petition." *Id.* at 461 n.3. "Under this definition of expertise, apparently anyone . . . should be considered an expert in the field." *Parker v. United States*, No. 4:92-CV-28, 1993 WL 300184, *5 n.10 (W.D. Mich. May 10, 1993).

PCLG's precise contention was addressed in *Deal ex rel Deal v. Hamilton Cnty. Dep't of Educ.*, No. 1:01-cv-295, 2006 WL 2854463 (E.D. Tenn. Aug. 1, 2006). There, the district court correctly noted that "the fact remains that obtaining certiorari is a much more difficult task than defeating a petition for certiorari based on the *miniscule percentage of petitions granted* by the Supreme Court." *Id.* at *16 (emphasis added). As such, "while it may behoove a party to hire extremely experienced Supreme Court practitioners to craft a petition for certiorari, the need for experienced practitioners is not as great when drafting an opposition to a petition for certiorari." *Id.* at *15. And, because of this indisputable fact, Plaintiffs are not entitled to rates far in excess of those appropriate for the Eastern District of Kentucky for a practice that requires no expertise.

Much like Plaintiffs here, the plaintiffs in *Wayne v. Village of Sebring* argued that "the court should have considered the prevailing market rates for the attorney's home practice." 36 F.3d 517, 533 (6th Cir. 1994). The Sixth Circuit rejected that argument finding instead that it was proper for the district court "to apply *local* market rates." *Id.* (emphasis added). Where, as here, "competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by an out-of-town specialist." *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016). Since no expertise is required to obtain that which thousands of attorneys obtain every year (*i.e.*, a denial of certiorari), no out-of-town rates are warranted or appropriate here. Indeed, "Section 1988 does not guarantee

6

civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). And, alleged "[p]roof that [PCLG] has a national reputation for expertise in this kind of litigation does not constitute proof that [its] expertise was necessary." *Id.*

**Second**, even if this Court were to conclude that PCLG's claimed expertise was necessary in this case, which it should not, Plaintiffs' request for out-of-market rates fails for another separate and independent reason – Plaintiffs' abject failure to demonstrate that such claimed expertise was not available from local practitioners. In fact, much like the Sixth Circuit recognized in *Hadix*, here "[t]he record is devoid of any suggestion that local counsel made any attempt to investigate the availability of competent counsel in the local market," 65 F.3d at 535, and thus "fee petitioners failed to carry the initial burden of showing that it was necessary to resort to an out-of-town specialist." *Id.* The same is true of Plaintiffs' motion here. Plaintiffs only contention is that it was reasonable to retain PLCG's purported expertise in opposing certiorari because of the "high-profile nature of the case" and that it takes them less time to prepare an opposition to certiorari. (Pulver Decl. ¶15.)  There is no allegation, nor could there be, that no competent local counsel was available to perform the task of opposing a writ of certiorari. The rates for PCLG attorneys should therefore be reduced to the relevant community rates.

### B.   Plaintiffs Improperly Rely Solely on PCLG's Own Affidavits to Support the Requested Rates Far Exceeding Those Appropriate for the Eastern District of Kentucky.

Leaving aside that no specialization was required to oppose a petition that is denied by the thousands every year, and that no proof exists in the record that any claimed expertise was unavailable locally, PCLG's requested rates are unreasonable for a separate and independent reason—they are supported solely by the affidavits of the attorneys requesting them. As the

Supreme Court has recognized, "the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (emphasis added). *See also Dye v. Bellsouth Tele., Inc.*, 462 F. Supp. 2d 485 (W.D. Tenn. 2006) (same). Here, PCLG attorneys submit only the Pulver Declaration to suggest that they are experts in the field of opposing certiorari and that rates far in excess of the relevant community are justified. (*See generally* Pulver Decl. ¶¶1-17.) No other satisfactory evidence is submitted to demonstrate the need for their participation, that other counsel in the Eastern District of Kentucky could not have provided similar services, or that Plaintiffs sought unsuccessfully to obtain local counsel skilled enough to obtain a certiorari denial that is all but a statistical certainty in just about every case. That fact alone demands reducing the rates of PCLG attorneys to the relevant market rates in the Eastern District of Kentucky.

### C.     PCLG's Requested Fee Should Be Reduced by Fifty Percent Across the Board Because Its Work Was Performed for Two Separate Cases, Only One of Which Requests Fees.

As the Pulver Declaration candidly admits, PCLG's work on behalf of Plaintiffs in this action was also performed on behalf of the plaintiffs in *Yates v. Davis*. (Pulver Decl. ¶3 ("PCLG agreed to file a joint opposition on behalf of both Plaintiffs and James Yates and Will Smith.").) Thus, by PCLG's own admission, it engaged in dual representation for two separate actions at the same time. And this is reflected in PCLG's opposition, wherein the *Yates* plaintiffs are discussed by name repeatedly. (*See, e.g.*, Pulver Decl. at 9 (noting PCLG's as Counsel of Record for Respondents David Ermold, David Moore, *and* James Yates, and Will Smith); *id.* at 19 (discussing the factual background of the *Yates* plaintiffs); *id.* at 22-24 (repeatedly discussing this Court's decision in the *Yates* action); *id.* at 25 (noting the Sixth Circuit's decision "[i]n a consolidated

8

opinion addressing both cases"); *id.* at 32 (discussing the application of relevant arguments concerning the *Yates* plaintiffs).)

As this Court is aware, the *Yates* plaintiffs obtained a verdict of $0.00 and have not sought an award of attorney's fees. Thus, because PCLG attorneys admit that they split their time equally between the Plaintiffs here and the *Yates* plaintiffs who have not sought, and are not entitled to, attorney's fees, the requested award should be reduced by fifty (50) percent (after the hourly rate reduction discussed above) to account for work on behalf of plaintiffs who did not prevail.

      **D.**    **PCLG's Requested Award Should Be Reduced to $8,572.50.**

Based on the local market rates this Court has awarded in similar cases, *e.g.*, *Miller v. Davis*, 267 F. Supp. 3d 961 (E.D. Ky. 2017) (BUNNING, J), and after reducing the requested hours by fifty percent as demonstrated above, PCLG's requested award should be reduced to $8,572.50 as follows:

| Attorney | Appropriate Rate | Reduced Hours | TOTAL |
|---|---|---|---|
| Adam Pulver | $300.00 | 16.65 | $4,995.00 |
| Allison Zieve | $350.00 | 3.4 | $1,190.00 |
| Kaitlin Leary | $250.00 | 9.55 | $2,387.50 |

The foregoing calculations produce a lodestar amount using the appropriate market rates for the Eastern District of Kentucky, reducing the hours by a 50% across the board for PCLG's equally divided representation of clients not entitled to an award of fees.

**II.**    **THE HOURLY RATES REQUESTED BY LOCAL COUNSEL ARE UNREASONABLE AND EXCEED WHAT THIS COURT AWARDED IN IDENTICAL LITIGATION.**

In *Miller v. Davis*, the companion to these cases, this Court awarded prevailing party fees Eastern District of Kentucky hourly rates between $250.00 and $350.00 for attorneys of comparable skill and experience to those who represent Plaintiffs here. 276 F. Supp. 3d 961, 995 (E.D. Ky. 2017). Attorney Michael Gartland seeks an hourly rate of $375, which is more than what

this Court awarded in *Miller*. (Dkt. 157-1, Declaration of Michael Gartland, "Gartland Decl.," ¶12.) Under this Court's prior decision in *Miller*, Mr. Gartland's rate should be reduced to $350.00 per hour. *See also L.M. by and through M.M. v. Henry Cnty. Bd. of Educ.*, No. 3:18-cv-37-GFVT, 2021 WL 236307 (E.D. Ky. Jan. 22, 2021) (approving rates of $325 for attorneys of comparable skill and experience).

Based on comparable skill and experience, the requested rate for attorney Joseph Buckles should also be reduced. Mr. Buckles requests a rate of $275.00 for his services. (Dkt. 157-2, Declaration of Joseph Buckles, "Buckles Decl.," ¶5.) For attorneys of similar skill in *Miller*, this Court awarded fees at the rate of $250.00. 276 F. Supp. 3d at 995. (*See* dkt. 183-1, *Miller v. Davis*, 0:150cv044-DLB, at 18-19, 25.) The Court should reduce Mr. Buckles's requested rate accordingly.

## III.  THE HOURS EXPENDED WERE UNREASONABLE, DUPLICATIVE, AND INSUFFICIENTLY JUSTIFIED BY CONTEMPORANEOUS RECORDS.

"In calculating a fee applicant's lodestar, a district court should exclude hours that were not reasonably expended by counsel." *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm.*, 590 F. App'x 597, 602 (6th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "It is the responsibility of the prevailing party's counsel to exclude from their fee requests those hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 602-03 (quoting *Hensley*, 461 U.S. at 434). Here, Plaintiffs' records reveal a failure to keep contemporaneous time records (which is all but admitted by Attorney Buckles), reflect duplicative efforts, and seek attorney compensation for clerical tasks. The requested award should therefore be reduced accordingly.

**A.    Plaintiffs' Fee Award Should Be Reduced for Time Not Kept Contemporaneously.**

As the Sixth Circuit has made clear, "it is the burden of the party seeking attorneys' fees to adequately documents its hours." *Ohio Right to Life*, 590 F.App'x at 603. *See also Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992) ("the absence of detailed *contemporaneous* time records, except in extraordinary circumstances, will call for a *substantial reduction* in any award." (emphasis added)); *Americans United for Separation of Church & State v. Sch. Dist. of the City of Grand Rapids*, 717 F. Supp. 488, 492 (W.D. Mich. 1989) ("courts have likewise reduced the number of hours sought in a case . . . when a lawyer does not keep contemporaneous time records"); *id.* at 494 ("the Court observes that some reduction is necessary to reflect the fact that no attorney except Mr. A. Dilley kept contemporaneous time records."). Indeed, the Supreme Court has explicitly sanctioned the reduction of *thirty percent* of an attorney's time for failure to keep contemporaneous records. *Hensley*, 461 U.S. at 429, 438 n.13 ("the District Court properly considered the reasonableness of the hours expended, and reduced the hours of one attorney by thirty percent to account for his inexperience and failure to keep contemporaneous time records").

In sharp contrast to the Gartland and Pulver Declarations, Attorney Buckles does not testify that he kept contemporaneous time records. (*Compare* (dkt. 157-2, Buckles Decl. at ¶5 (noting that Attorney Buckles merely provided "[a] description of the tasks performed, the amount of time spent on each, and the reimbursable expenses . . ." but failing to state that time records were kept contemporaneously with the work performed)), *with* (dkt. 157-1, Gartland Decl. ¶11 (testifying that "[t]he entries on Exhibit A were contemporaneously recorded n the timekeeping program used by DLG in the ordinary course of its business")) and (Pulver Decl. ¶9 ("The entries of Exhibit C were contemporaneously recorded in the timekeeping program used by PCLG.")).) Mr. Buckles's failure to swear that his time records were contemporaneously kept is understandable – many of

11

the entries in his records are merely copied from entries supplied by Mr. Gartland, and thus could not have been contemporaneously entered. (*Compare* Gartland Decl. at 7 (entry for 9/21/2016 ("Email to J. Buckles re request for copy of two documents filed in 16-6412")), *with* (Buckles Decl. 6 (entry for 9/21/2016 ("Correspondence with M. Gartland via email requesting Documents filed in 16-6412")); Gartland Decl. at 8 (entry of 10/27/2016 ("Email exchanges with J. Buckels and T. Sczygielski re attorney's fees and collectible from K. Davis as Clerk of Rowan County")), *with* (Buckles Decl. at 7 (entry of 10/27/2016 ("Email exchange with co-counsel regarding attorney's fees and collectible from K. Davis as Clerk of Rowan County")).

Because Mr. Buckles failed to keep and provide time entries that were contemporaneously kept, his requested hours "call for a substantial reduction." *Lipsett*, 975 F.2d at 938. Mr. Buckles's requested hours should receive a thirty percent across the board reduction for failure to keep contemporaneous records. *Hensley*, 461 U.S. at 429, 438 n.13.

**B.    Plaintiffs' Fee Award Should Be Reduced for Excessive Billing That Largely Mirrored Prior Litigation.**

The Sixth Circuit has "repeatedly upheld reductions in attorneys' fees for duplicative or excessive billing." *Ohio Right to Life*, 590 F.App'x at 603 (citing *Coulter v. State of Tennessee*, 805 F.2d 146, 152 (6th Cir. 1986)); *see also Hudson v. Reno*, 130 F.3d 1193, 1209 (6th Cir. 1997). And, the fact that Plaintiffs in this matter were largely replicating a prior complaint that was virtually identical to the instant action demonstrates that much of the work was necessarily duplicative. *See, e.g.*, *Citizens for Community Values, Inc. v. Upper Arlington Pub. Library Bd. of Trustees*, No. C-2-08-223, 2010 WL 1253892, *3 (S.D. Ohio Mar. 24, 2010) ("where the prevailing party's counsel has filed similar complaints in other matters, or drafted briefs duplicating the same research, case law and legal arguments filed in other cases, this is a legitimate basis to reduce the party's claimed attorney's fees as excessive"); *Estep v. Blackwell*, No.

12

1:06CV106, 2006 WL 3469569, *3 (S.D. Ohio Nov. 29, 2006) (reducing time spent preparing documents "which to a great percentage [were] duplicative" of pleadings filed by counsel in another case); *Disabled Patriots of Am. v. Genesis Dreamplex, LLC*, No. 3:05CV7153, 2006 WL 2404140, *4-5 (N.D. Ohio Aug. 18, 2006) (imposing a thirty percent reduction because documents filed in the case "closely duplicate[d]" documents filed in similar cases).

The pleadings in this matter largely mirrored and presented the same arguments as those already filed and litigated in *Miller v. Davis*. (*Compare* dkt. 1, Complaint at 2-6 (challenging Defendant's no-marriage-license policy as a violation of the Fourteenth Amendment), *with* No. 0:15-cv-44-DLB, Complaint at 10-12 (same)). Precedent in the Sixth Circuit demands a reduction of thirty percent (30%) across the board for excessive and duplicative work by DelCotto Law Group (DLG) and Buckles Law Office attorneys that largely mirrored prior litigation. *Estep v. Blackwell*, 2006 WL 3469569, at *3.

### C.   Plaintiffs' Fee Award Should Be Reduced for Impermissible Block Billing.

Plaintiffs' time records are also rife with impermissible block billing that fails to provide appropriate details concerning the time claimed, and fails to satisfy Plaintiffs' burden "to adequately document [their] hours." *Ohio Right to Life*, 590 F.App'x at 603 (cleaned up). In such scenarios, courts across the Sixth Circuit have noted that a percentage reduction in the hours requested is appropriate. *See, e.g.*, *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-CRS, 2021 WL 863203, *20 (W.D. Ky. Mar. 8, 2021) (reducing a prevailing party's requested hours by 50% for records that were "block billed such that the Court cannot discern what work was done for numerous entries"); *Herdguard, LLC v. NXT Generation Pet, Inc.*, No. 5:16-cv-468-JMH-EBA, 2019 WL 3082458, *10 (E.D. Ky. July 15, 2019), set aside on other grounds, *Herdguard, LLC v. NXT Generation Pet, Inc.*, No. 5:16-cv-468-JMH-EBA, 2020 WL

618821 (E.D. Ky. Feb. 10, 2020) ("to the extent that block-billed professional service descriptions contain insufficient detail, the entire entry containing an insufficient description must be deducted because, based on the insufficient description, the Court is unable to determine how much time was spent on each activity"); *Erbel v. Johanns*, No. 3:04-CV-555(PHILLIPS/GUYTON), 2008 WL 11284907, *5 (E.D. Tenn. Sept. 5, 2008) ("The Court further finds that attorney Morton's use of block billing further aggravates the problem, as the Court cannot, in most instances, determine the amount of time actually spent on the vaguely described items. Accordingly, the Court finds that a percentage reduction of the fee is necessary to correct for these problems."). The use of a percentage reduction is also appropriate where—as here—the fee records are voluminous and contain substantial entries reflecting block billing. *See, e.g.*, *Gratz v. Bollinger*, 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005) (imposing a 10 percent across the board reduction for block billing).

Here, even a cursory perusal of the DLG time records reveals substantial amounts of block billing. (*See, e.g.*, Gartland Decl. at 7 (entry for 9/29/2016 for Michael Gartland, combining in one time entry "Attention to: review of certain documents filed in district court action; prepare entry of appearance, civil appeal statement and issues; prepare corporate disclosure statements of D. Ermold and D. Moore; draft certification of non-ordering of transcript; email exchange with J. Buckles re draft documents to be filed with Sixth Circuit; email to clients re documents filed with Sixth Circuit"); *id.* at 8 (entry for 10/25/2016 for Michael Gartland, lumping in one time entry "Attention to telephone from M Davis of Clerk's Office of the Sixth Circuit re need to file corrected brief and include standard of review; legal research re standard of review of order dismissing a case as moot; email to J. Buckles re same; edit corrected brief"); *id.* at 9 (entry for 3/03/2017 of Allison Steinberg, combining in one time entry "Attention to conference with M. Gartland re arguments to be made at oral argument; research for oral argument re municipal-

14

abortion cases and other grounds on which to argue that substantive-due-process rights run to local officials; research re state/county classification of Davis in her official capacity"); *id.* (entry for 3/4/2017 of Allison Steinberg, lumping in one entry "Attention to pre-oral-argument research re validity of technically defective marriage licenses under Kentucky law; state/county official classification of Davis for purposes of official-capacity claim; municipal-abortion cases; drafting of outlines for M. Gartland of oral argument."); *id.* at 9 (entry for 3/06/2017 for Allison Steinberg, combining together in one entry "Attention to research re rational-basis review of minor burdens on right to marry; conference with M. Gartland re arguments to be made at oral argument"); *id.* (entry of 4/6/2017 for Michael Gartland, combining together in one entry "Attention to: review of briefs of appellants; brief of appellee, and reply brief; review two memoranda filed by A. Steinberg; conference with A. Steinberg re arguments and counterarguments").)

Because of the voluminous billing records submitted, this court has the discretion "to utilize a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions." *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, *6 (N.D. Ohio Mar. 31, 2009) (collecting cases). Plaintiffs' requested hours should be reduced by at least ten percent (10%) across the board for the use of vague block-billing.

**D.    Plaintiffs' Fee Award Should Be Reduced for Clerical Tasks.**

"District courts within the Sixth Circuit have reduced attorney's fees for *purely* clerical matters which do not call for the exercise of legal expertise and which could be performed by clerical staff." *Goza v. Memphis Light, Gas & Water Div.*, No. 2:17-cv-2873-JPM-dkv, 2019 WL 5855705, *4 (W.D. Tenn. Oct. 8, 2019) (emphasis original). *See also E.E.O.C. v. Whirlpool Corp.*, No. 3:06-cv-0593, 2011 WL 3321291, *7 (M.D. Tenn. Aug. 2, 2011) ("[t]ime spent by a lawyer on purely clerical matters not calling for the exercise of legal expertise or judgment, and which

could be equally well performed by clerical staff, should not be recoverable under §1988." (quoting *Tierney v. City of Toledo*, No. 83-40, 1989 WL 161543, *12 (N.D. Ohio Aug. 28, 1989)). And, the Sixth Circuit, too, has affirmed a district court's reduction of fees for clerical work requested for compensation at attorney rates. *See, e.g.*, *B&G Mining, Inc. v. Director, Officer of Workers Comp. Prog.*, 522 F.3d 657, 666 (6th Cir. 2008).

Plaintiffs' billing records are rife with clerical tasks billed at attorney rates. (*See, e.g.*, Gartland Decl. at 7 (entry of 9/21/2016 for Michael Gartland noting "Email to J. Buckles re request for copy of two documents filed in 16-6412"); *id.* at 8 (entry for 10/24/2016 of Michael Gartland noting "Email to clients and co-counsel re filing of brief of appellants on 10/21/16"); *id.* at 9 (entry for 12/20/2016 of Michael Gartland noting "Email to D. Ermold re transmittal of filed reply brief of appellants"); *id.* at 10 (entry for 5/30/2017 of Michael Gartland noting "Drafting of supplemental engagement letter to Messrs. Ermold and Moore and email to clients re same"); *id.* at 13 (entry for 8/4/2017 of Michael Gartland noting "Email to Messrs. Ermold and Moore re filed opposition memorandum"); Buckles Decl. at 10 (entry for 9/6/2017 noting "Review letter from court; docket deadline to file documents with Sixth Circuit"); *id.* at 15 ((entry for 1/23/2019 noting "Review letter from M. Gartland re clerk letter").) Because of the litany of clerical tasks for which Plaintiffs seek attorney compensation, the court should again reduce Plaintiffs' requested hours by ten percent (10%).

## IV. AFTER APPROPRIATE PERCENTAGE REDUCTIONS FOR EXCESS BILLING, BLOCK BILLING, AND OTHER ERRORS, THE AWARD OF ATTORNEY'S FEES SHOULD BE REDUCED TO $106,590.25.

For PCLG counsel, after reducing the hourly rates to those appropriate in the jurisdiction in which this case was tried and otherwise adjusting the lodestar as outlined *supra* Section I, the lodestar should be as follows:

16

| Attorney | Appropriate Rate | Reduced Hours | TOTAL |
|---|---|---|---|
| Adam Pulver | $300.00 | 16.65 | $4,995.00 |
| Allison Zieve | $350.00 | 3.4 | $1,190.00 |
| Kaitlin Leary | $250.00 | 9.55 | $2,387.50 |

For DLG counsel, after reducing the hourly rates to those appropriate for the Eastern District of Kentucky for attorneys of comparable skill and experience as outlined *supra* Section II, and applying the percentage reductions necessary for redundant, excessive, or improper records, the lodestar should be adjusted as follows:

| Attorney | Appropriate Rate | Reduced Hours | TOTAL |
|---|---|---|---|
| Michael Gartland | $350.00 | 139.35 | $48,772.50 |
| Allison Steinberg | $225.00 | 126.65 | $28,496.25 |
| Paralegals | $150.00 | 21.8 | $3,270.00[2] |

For Attorney Buckles, after reducing the hourly rates to those appropriate for the Eastern District of Kentucky for attorneys of comparable skill and experience as outlined *supra* Section II, and applying the percentage reductions necessary for redundant, excessive, or improper records, the lodestar should be adjusted as follows:

| Attorney | Appropriate Rate | Reduced Hours | TOTAL |
|---|---|---|---|
| Joseph Buckles | $275.00 | 63.56 | $17,479.00 |

Thus, after making appropriate and legally required reductions to rates and hours expended by Plaintiffs' counsel, the final lodestar produces the following reduced award:

| FIRM | RATES | HOURS | TOTAL |
|---|---|---|---|
| DLG | $150.00-$350.00 | 287.8 | $80.538.75 |
| Buckles Law | $275.00 | 63.56 | $17,479.00 |
| PCLG | $250.00-$350.00 | 29.60 | $8,572.50 |

---

[2]     Defendant has not requested any reduction for the time expended by Plaintiffs' paralegal at DLG, but the calculation using Plaintiffs' own hourly rate and hours expended is not $3,405.00 as calculated in the Gartland Declaration, but totals instead $3,270.00.

## CONCLUSION

For the foregoing reasons, Plaintiffs' requested fee award should be reduced to $106,590.25, and the expenses should be allowed in the amount of $14,058.30.

Respectfully submitted,

/s/ Daniel J. Schmid

| | |
|---|---|
| A.C. Donahue | Mathew D. Staver |
| Donahue Law Group, P.S.C. | Horatio G. Mihet |
| P.O. Box 659 | Daniel J. Schmid |
| Somerset, Kentucky 42502 | LIBERTY COUNSEL |
| (606) 677-2741 | P.O. Box 540774 |
| ACDonahue@DonahueLawGroup.com | Orlando, Florida 32854 |
| | (407) 875-1776 |
| | hmihet@LC.org |
| | dschmid@LC.org |
| | court@LC.org |

*Attorneys for Defendant, Kim Davis*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of November, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's NEF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid