UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND
CIVIL NO. 0:15-CV-00046-DLB

DAVID ERMOLD, *et al.*  　　　　　　　　　　　　　　　　　　　PLAINTIFFS

v.

KIM DAVIS, INDIVIDUALLY  　　　　　　　　　　　　　　　　　　DEFENDANT

**PLAINTIFFS' REPLY TO DEFENDANT KIM DAVIS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Pursuant to LR 7.1(c) and the Court's Virtual Order of October 31, 2023 (Doc #: 161), Plaintiffs David Ermold and David Moore ("Plaintiffs"), by counsel, file this Reply to Defendant Kim Davis's Response in Opposition to Plaintiffs' Motion for Attorney's Fees and Expenses (Doc. #: 162) (the "Objection"). In the Objection, Defendant Kim Davis ("Davis") attacks the fees and expenses that Plaintiffs seek to be awarded for three different law firms that represented Plaintiffs in and in connection with this action since July 15, 2015. The attorney who represented Plaintiffs and the names of their firms are Joseph D. Buckles, Esq. of Buckles Law Office, PLLC (collectively, "Buckles"), Michael J. Gartland, Esq. ("Gartland") of DelCotto Law Group PLLC ("DLG"), and Adam R. Pulver, Esq. ("Pulver") of the Public Citizens Litigation Group ("PCLG"). This Reply will address the attacks made on PCLG, DLG and Buckles. The arguments contained in the Objection are petty and should be overruled. In response to Davis's arguments, Plaintiffs argue as follows.

**ARGUMENT**

I. **THE FEES SOUGHT FOR THE WORK OF PCLG ARE JUSTIFIED.**

   A. *The rates sought for PCLG attorneys are reasonable.*

Davis challenges the reasonableness of the rates sought for the work of PCLG attorneys in opposing her Supreme Court petition for a writ of certiorari. In determining the reasonableness of rates, "[d]istrict courts are free to look to a national market, an area of specialization market or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Louisville Black Police Officers Org. v. City of Louisville,* 700 F.2d 268, 278 (6th Cir. 1983). "When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Ne. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016). Both factors are satisfied here.

   1. *It was reasonable to hire PCLG.*

As to the first factor, for Plaintiffs to retain lawyers with expertise in opposing certiorari petitions was reasonable. As this Court recognized in approving comparable rates sought by out-of-town counsel in the related *Miller v. Davis* action, 267 F. Supp. 3d at 996, Davis's defenses posed issues of constitutional law that benefit from counsel, like the PCLG lawyers in this case, *see* Declaration of Adam R. Pulver (Doc #: 157-3) (the "Pulver Declaration") ¶¶ 5–8, with relevant experience. The high-profile nature of this case also made it reasonable for Plaintiffs to bring in counsel with expertise in preparing oppositions to certiorari petitions. Such counsel are both able to draft an opposition more efficiently based on their experience with Supreme Court procedure and the issues relevant at the petition stage, and are able to improve the odds of a denial of certiorari.

2

Davis asserts that there is no such thing as expertise in opposing certiorari. *See* Objection at 5–7. But "[t]he brief in opposition is a less well-appreciated expertise in Supreme Court advocacy, but no less important because the document is, by its very nature, so counter-intuitive for most lawyers to prepare." Richard J. Lazarus, *Advocacy Matters Before and Within the Supreme Court: Transforming the Court by Transforming the Bar*, 96 Geo. L.J. 1487, 1510 (2008). Lawyers with expertise in preparing such briefs "not only know how to stress the kinds of arguments that make a case seem most attractive for review, but also how most effectively to tap into the kinds of concerns that are likely to make a law clerk wary of recommending in favor of plenary review …. The expert Supreme Court advocates know the Court and understandably work every relevant dimension of the Court's decision making process to their client's advantage." *Id*. As others have observed, "[a]ccumulated practice before the Supreme Court allows attorneys to develop specialized knowledge of the Justices and their specific predilections," including insight into "what the Court might find useful and, consequently, the type of material that will draw attention on cert." Adam Feldman & Alexander Kappner, *Finding Certainty in Cert: An Empirical Analysis of the Factors Involved in Supreme Court Certiorari Decisions From 2001–2016*, 61 Villanova L. Rev. 795, 802 (2016).

Davis maintains that expertise is unattainable because it is a "virtual statistical certainty" that petitions for certiorari will be denied. *See* Objection at 5. That assertion is particularly odd coming from the party who went to the time and expense of filing a petition. The assertion also contradicts statements of Davis's counsel about this very case. *See, e.g.*, Liberty Counsel, *Kim Davis Headed to Supreme Court*, Sept. 14, 2023 (asserting that this Court's "improper action has teed UP Kim's case to go to the U.S. Supreme Court");[1] *Kentucky clerk who refused gay marriage licenses can be sued*, Reuters, Aug. 26, 2019 (quoting Davis's counsel, in response to

---

[1] https://lc.org/newsroom/details/230915-kim-davis-headed-to-the-supreme-court.

the Sixth Circuit decision that gave rise to the cert petition as stating "It's a matter of time before [a case like Davis's] goes squarely before the Supreme Court.").[2]

Moreover, the relevant question is not whether opposing *some* petitions for certiorari reasonably require expertise, but whether opposing Davis's did. Here, the Plaintiffs initially waived the filing of a response, but the Supreme Court very quickly directed that they file one, indicating the interest of at least one justice, and statistically, increasing the likelihood of a grant.[3] *See* David C. Thompson & Melanie F. Wachtell, An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General, 16 Geo. Mason L. R. 237, 248–52 (2009). At that point, retaining counsel with Supreme Court expertise was plainly reasonable. For one thing, Davis's petition sought review of a denial of qualified immunity. As one commentator has explained, the Supreme Court "giv[es] qualified immunity cases pride of place on the Court's docket. It exercises jurisdiction in cases that would not otherwise satisfy the certiorari criteria and reaches out to summarily reverse lower courts at an unusual pace." William Baude, *Is Qualified Immunity Unlawful?*, 106 Cal. L. Rev. 45, 48 (2018); *see also* Alexander A. Reinert, *Qualified Immunity on Appeal: An Empirical Assessment* (Mar. 2021) at 45 (empirical study concluding that certiorari is much more likely to be granted where petitioner is a defendant asserting qualified immunity).[4] Moreover, the Supreme Court has developed "a pattern of summary reversals that freely overturns the denial of qualified immunity" based on cert-stage briefing alone, making the brief in opposition exceptionally important in cases concerning qualified immunity. Michael R.

---

[2] https://www.nbcnews.com/feature/nbc-out/kentucky-clerk-who-refused-gay-marriage-licenses-can-be-sued-n1046306.

[3] The Court's docket is available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-926.html. As the docket reflects, the papers in the case were distributed to the Justices on February 12, 2020, and the Court called for Plaintiffs to file a response that same day.

[4] https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3798024.

Dreeben, *Case Selection and Review at the Supreme Court*, Statement for the Presidential Commission of the Supreme Court of the United States (June 25, 2021).[5]

The Supreme Court's treatment of Davis's petition confirms that it was reasonable for plaintiffs to seek PCLG's expertise. After repeatedly rescheduling consideration of the petition, the Court eventually denied it, accompanied by a 4-page statement in which two Justices stated that the case "implicates important questions" but "does not cleanly present them." Pulver Declaration (Doc #: 157-3) at ¶ 4. Explaining to the Supreme Court why an "important" question is nonetheless inappropriate for review is precisely the type of argument that counsel experienced in petition-stage briefing can identify and present—as happened in this case.

> 2. **There is no merit to Davis's argument that the reasonableness of PCLG's rates is "supported solely by the affidavits of the attorneys requesting them."**

Davis incorrectly asserts that the reasonableness of PCLG's rates is "supported solely by the affidavits of the attorneys requesting them." Objection at 7. However, as the Sixth Circuit has held, "rates from prior cases" and "surveys of rates provide evidence of a market rate." *B & G Min., Inc. v. Office of Workers' Comp. Progs.*, 522 F.3d 657, 664 (6th Cir. 2008). Plaintiffs' motion provided just that evidence, citing:

(1) the Fitzpatrick Matrix, which used a regression analysis to calculate "a reliable assessment of fees charged for complex federal litigation in the District of Columbia," where the majority of Supreme Court practitioners are located, and is an updated version of the matrix this Court looked to as providing reasonable rates in *Miller*. 267 F. Supp. 3d at 996, Plaintiffs' **Ex. D** (Doc #: 157-3) at 2 ¶ 1;

(2) two court decisions awarding comparable rates for the work of PCLG lawyers in opposing certiorari. Pulver Declaration (Doc #: 157-3) ¶ 15; and

(3) four additional court decisions finding that comparable (or higher) rates were reasonable for Supreme Court work, including for work performed by PCLG attorneys. *Id*.

---

[5] https://www.whitehouse.gov/wp-content/uploads/2021/06/Dreeben-Statement-for-the-Presidential-Commission-on-the-Supreme-Court-6.25.2021.pdf

This evidence in the Pulver Declaration, as well as articles recognizing PCLG's considerable expertise, are adequate to support the hourly rates requested. *See* Feldman & Kappner, 61 Villanova L. Rev. at 837 (finding that PCLG was one of the nation's most successful law firms in opposing certiorari); Lazarus, 96 Geo. L. J. at 1501 (noting that PCLG has "long provided high-quality assistance" at the certiorari stage).

### 3. *The outcome in Yates v. Davis does not require a reduction in fees for work necessarily performed on behalf of the Ermold Plaintiffs.*

PCLG's work in this case involved an opposition to a single petition for certiorari that Davis filed, arising out of a single Sixth Circuit opinion. Although the petition applied to both this action and *Yates*, none of Davis's arguments in support of certiorari made distinctions between the two cases. Likewise, none of the arguments in the opposition distinguished between the two cases.

Davis does not challenge that PCLG's hours for opposing her petition were reasonable. Nonetheless, citing no authority, Davis argues that the fact that the successful opposition to her petition was filed on behalf of the couples in two cases requires a 50-percent reduction in fees. *See* Objection at 8–9. But "[p]revailing parties who obtain excellent results … are generally entitled to a fully compensatory fee." *Deja Vu v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 421 F.3d 417, 423 (6th Cir. 2005) (internal quotation marks omitted). Plaintiffs are unquestionably prevailing parties and are entitled to a fee that compensates them for the cost of an entire opposition to certiorari—not half of one. The time required to respond to the petition on behalf of the *Yates* plaintiffs and the *Ermold* plaintiffs was the same as if the petition had addressed only this action. That the *Yates* plaintiffs did not prevail at trial does not mean that the time expended on the joint opposition brief was not reasonable and necessary for Plaintiffs' success in this action. *Cf. Fox v. Vice*, 563 U.S. 826, 834 (2011) ("the presence of []

6

unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in remedying a breach of his civil rights").

      **II.    THE FEES SOUGHT FOR THE WORK OF ATTORNEYS WITH DLG AND BUCKLES ARE JUSTIFIED.**

      *A.    The hourly rates sought by DLG and Buckles are reasonable.*

Citing this Court's July 21, 2017 fee opinion in *Miller v. Davis*, Davis argues that the prevailing rates "for attorneys of comparable skill and experience to those who represent Plaintiffs here" are between $250 and $350 per hour. *See* Objection at 9. The argument is sheer nonsense.

This Court's fee opinion in *Miller* is more than six years old. *See* Memorandum Opinion and Order (Doc #: 206) entered in *Miller* on July 21, 2017, Case No. 0:15-cv-00044-DLB. The *Miller* plaintiffs sought approval of hourly rates between $250 and $350, which this Court found to be "reasonable and proper for attorneys in this geographic area possessing similar skills and experience." *Id.* at 41 (Page ID#: 2983). Just because those hourly rates were found to be "reasonable and proper" in July 2017 does not mean that they are forever etched in stone and are reasonable and proper today.

Relying on nothing but this Court's July 21, 2017 fee opinion in *Miller*, Davis argues that Gartland's requested hourly rate of $375 should be reduced to $350 and Buckles's requested hourly rate of $275 should be reduced to $250. *See* Objection at 9–10. The argument is petty. Attached hereto as **<u>Exhibit 1</u>** is Gartland's bio. This document evidences that Gartland graduated a top fifteen U.S. law school, worked as an associate for than six years at one of the most prestigious international law firms in the U.S., is admitted to seventeen state and federal courts across the U.S., and has been lead counsel in approximately 1,000 civil actions, including appeals. Gartland's requested hourly rate of $375 is well below market. The Court should reject

7

Davis's request that Gartland's requested hourly rate of $375 be reduced to $350. It should also reject Davis's request that Buckles's requested hourly rate of $275 be reduced to $250.

> **B.** *All of DLG's time records are contemporaneous time records and Davis's request that Buckles's requested hours be reduced by thirty percent across the board for failure to keep contemporaneous time records is excessive.*

Davis argues that "Plaintiffs' records reveal a failure to keep contemporaneous time records (which is all by admitted by Attorney Buckles)." Objection at 10. As made clear in Paragraph 11 of the Declaration of Michael J. Gartland (Doc #: 157-1) (the "Gartland Declaration"), all of the time entries on **Exhibit A** to the Gartland Declaration (Doc #: 157-1 pp. 7–38) "were contemporaneously recorded in the timekeeping program used by DLG in the ordinary course of its business." Davis has submitted no evidence to the contrary because no such evidence exists.

Davis's attack concerning the failure to keep contemporaneous time records appears to be directed solely at Buckles. *See* Objection 11–12. She claims that Buckles's time entries were "merely copied from entries supplied by Mr. Gartland, and thus could not have been contemporaneously entered." *Id.* at 12. For this reason, Davis requests that "Buckles's requested hours [] receive a thirty percent across the board reduction for failure to keep contemporaneous records." *Id.* (citing *Henlsey v. Eckerhart*, 461 U.S. 424, 438 n.13 (1983)). The thirty percent reduction of one attorney's time by the trial court in *Henlsey* was proper for two reasons, *to wit*, to account for the attorney's "inexperience and failure to keep contemporaneous time records." *Id.* Such a thirty percent across-the-board reduction as to Buckles's requested hours here is unwarranted because Davis has never contended that Buckles is inexperienced. At most, the Court should reduce Buckles's requested hours by a de minimis amount, say five percent.

8

### C. Davis's argument that Plaintiffs' requested fee award should be reduced for excessive billing that largely mirrored the litigation in *Miller v. Davis* is baseless.

Citing *Miller v. Davis*, Davis argues that "Plaintiffs' Fee Award Should Be Reduced for Excessive Billing That Largely Mirrored Prior Litigation." Objection at 12. The argument is specious. To make matters worse, Davis has the audacity to represent that "[t]he pleadings in this matter largely mirrored and presented the same arguments as those already filed and litigated in *Miller v. Davis*." *Id.* at 13. The representation is knowingly false, and the best evidence of its falsity is Davis's citation to only Pages 2–6 of the Complaint With Jury Demand filed in this action (Doc #: 1) and Pages 10–12 of the Complaint filed in *Miller* (Doc #: 1). *Id.* Contrary to Davis's false representation to the Court, the litigation of this action, which has been ongoing for more than eight years with four appeals to the Sixth Circuit, a trip to the U.S. Supreme Court and a three-day jury trial, has not "largely mirrored prior litigation" in *Miller*, which was dismissed by the Court's Order of August 16, 2016 (*see Miller* Doc #: 182), less than fourteen months after *Miller* was initiated. *See* docket in *Miller* attached hereto as **Exhibit 2**, which indicates that *Miller* was filed on July 2, 2015 and terminated on August 18, 2016. Even though the documents filed in this action have not "largely mirrored and presented the same arguments as those already filed and litigated in *Miller v. Davis*" (Objection at 13), Davis requests an across-the-board reduction of the time requested by DLG and Buckles. *Id.* Davis's request should be rejected out of hand because this case has not "largely mirrored" the litigation in *Miller*.

### D. The Court should reject Davis's block billing attack directed at DLG.

Davis struggles to tell the truth. She argues that "Plaintiffs' Fee Award Should be Reduced for Impermissible Block Billing" and represents that "even a cursory review of the DLG time records reveals substantial amounts of block billing." Objection at 13–14. The representation is materially false.

9

DLG's time records were filed as **Exhibit A** to the Gartland Declaration. *See* Doc #: 157-1 at 7–38. DLG has submitted a request for approval of 554.20 hours for a total fee award of $164,910. *See* **Exhibit A** to the Gartland Declaration (Doc #: 157-1 at 38). As the Court can plainly see, when DLG attorneys made block billing entries, the vast majority of time each task was followed by parentheticals showing to the tenth of an hour the time expended working. Davis implicitly acknowledged this fact because she complained of just six isolated instances of block billing in the Objection that totaled just 26.1 hours. *See* Objection at 14–15. The Court should reject Davis's request for a ten percent across-the-board reduction of DLG's request for approval of 554.20 hours of time for alleged improper block billing.[6]

> **E.     The Court should reject Davis's request to reduce Plaintiffs' requested fee award by ten percent for performing alleged clerical tasks that took just 1.2 hours of time.**

In a straw-grasping effort, Davis argues that Plaintiffs' requested fee award should be reduced by ten percent because billing records of DLG and Buckles are "rife with clerical tasks

---

[6] Liberty Counsel's block billing argument in the Objection is hypocrisy. Daniel J. Schmid, Esq. ("Schmid") filed the Objection on behalf of Davis. Schmid is a block biller. In *Otto v. City of Boca Raton, Florida*, U.S. District Court for the Southern District of Florida, Case No. 9:18-cv-80771-RLR ("*Otto*"), Liberty Counsel filed Plaintiffs' Verified Motion for Attorney's Fees and Non-Taxable Expenses and Costs (Doc. 221) (the "*Otto* Fee Motion"), seeking an award of attorney's fees in the amount of $2,115,018 and non-taxable expenses and costs in the amount of $12,864.30, for a total award of $2,127,882.30. Liberty Counsel also claimed that the *Otto* plaintiffs were "entitled to an enhancement multiplier of 1.5," which was included in the $2,115,018 of requested fees. *See* Otto Fee Motion attached hereto as **Exhibit 3** at 2, 11. In his Report and Recommendation on Motion for Attorney's Fees and Non-Taxable Expenses and Costs [ECF No. 221] (Doc. 240) (the "*Otto* Report & Recommendation"), United States Magistrate Judge Bruce E. Reinhart recommended that the district court award the *Otto* plaintiffs just $736,227.53 of the requested $2,115,018 of attorney's fees. *See Otto* Report & Recommendation attached hereto as **Exhibit 4** at 42. In the Report and & Recommendation, the Magistrate Judge Reinhart discussed three block billing entries made by Schmid and Horatio E. Mihet, both of whom were trial counsel for Davis in this action, finding a fee reduction was warranted for failure to meet their burden to explain why 12.9 hours of block billed time "were reasonably and necessarily incurred." **Ex. 4** at 21. Magistrate Judge Reinhart was very generous to Liberty Counsel because the time entries submitted by Liberty Counsel were rife with block billed time entries, including several by Schmidt. *See* Liberty Counsel Time Report filed in *Otto* as Doc. 221-2, a copy of which is attached hereto as **Exhibit 5**, at p. 4 (Schmid's 7.2 hour block billed time entry of May 8, 2018); p. 4 (Schmid's 5.9 hour block billed time entry of June 6, 2018); p. 5 (Schmid's 7.1 hour block billed time entry of June 12, 2018); p. 11 (Schmid's 6.9 hour block billed time entry of July 12, 2018); p. 16 (Schmid's 8.9 hour block billed time entry of July 31, 2018); p. 19 (Schmid's 8.3 hour block billed time entry of August 7, 2018); p. 31 (Schmid's 8.1 hour block billed time entry of September 13, 2018). Plaintiffs could spend hours citing numerous block billed time entries made by Liberty Counsel attorneys in *Otto*, but will refrain from doing so. The examples of block billed time entries discussed in this footnote will suffice to show the hypocrisy of the block billing argument made by Davis's counsel in this action.

billed at attorney rates" and show a "litany of clerical tasks for which Plaintiffs seek attorney compensation." Objection at 16. The statement is false and reflects Davis's propensity not to tell the truth.

In support of her argument that attorneys with DLG and Buckles performed a "litany of clerical tasks for which Plaintiffs seek attorney compensation" (Objection at 16), Davis points to just seven examples for which DLG and Buckles billed just 1.2 total hours. *Id.* According to Davis, the miniscule 1.2 hours of alleged clerical tasks justifies reducing the 554.20 hours of time requested by DLG (*see* Doc #: 157-1 at 7–38) and the 158.9 hours of time requested by Buckles (*see* Doc #: 157-2 at 4–37). Such a reduction should be rejected out of hand as an obvious attempt by Davis to punish Plaintiffs for their complete and utter victory at trial.

Regardless, none of Davis's clerical task gripes have merit. There is nothing clerical about: emails between Plaintiffs' attorneys requesting copies of filed documents; the drafting of a supplemental engagement agreement between the undersigned and Plaintiffs when the undersigned's role in this action was expanded after their first victory at the Sixth Circuit; the undersigned's emails to Plaintiffs concerning the filing of documents in this action or appellate briefs filed with the Sixth Circuit. Counsel for Davis can't be serious about complaining about attorneys with DLG and Buckles performing clerical tasks at attorney rates seeing as Liberty Counsel did the same thing in *Otto* on numerous occasions. *See* Liberty Counsel Time Report filed in *Otto* as Doc. 221-2 (**Ex. 5**) at p. 2 (Richard L. Mast's 1.3 time entry of December 22, 2017 to, *inter alia*, "[p]repare contracts of representation for SOCE ban clients; discuss same with clients and obtain signatures" at a requested hourly rate of $625); p. 5 (Schmid's 4.1 hour time entry of June 13, 2018 to, *inter alia*, prepare a table of contents, a table of authorities, a civil cover sheet and a summons, all of which are paralegal functions, at a requested hourly rate of $625); p. 5 (Schmid's 0.4 hour time entry of June 13, 2018 to "[r]eview email correspondence from

11

HGM re case filed, and email correspondence to clients re same"); p. 11 (Horatio G. Mihet's 2.2 hour time entry of July 13, 2018 to, *inter alia*, serve plaintiffs' initial disclosures on all parties at a requested hourly rate of $700); p. 31 (Roger K. Gannam's 0.3 hour time entry of September 12, 2018 for "submission of transcript request"—a quintessential paralegal function—at a requested hourly rate of $700).

## CONCLUSION

For all of the foregoing reasons, the Court should overrule the Objection and grant Plaintiffs' Motion for Award of Attorneys' Fees and Expenses (Doc #: 157).

Respectfully submitted,

/s/ Michael J. Gartland
Michael J. Gartland, Esq.
DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY  40507
Telephone: (859) 231-5800
mgartland@dlgfirm.com

-and-

Joseph D. Buckles, Esq.
Buckles Law Office, PLLC
149 North Limestone
Lexington, KY  40507
Telephone: (859) 225-9540
Facsimile:  (859) 251-6020
Joe@JoeBuckles.com

COUNSEL FOR PLAINTIFFS
DAVID ERMOLD AND DAVID MOORE

## CERTIFICATE OF SERVICE

I hereby certify that the above document has been electronically filed and served via the Court's CM/ECF System on November 28, 2023.

/s/ Michael J. Gartland
Michael J. Gartland, Esq.
COUNSEL FOR PLAINTIFFS
DAVID ERMOLD AND DAVID MOORE

Plfs' Reply to Obj to fee motion - FV 20231128.doc