# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# ASHLAND DIVISION

| | | |
|---|---|---|
| DAVID ERMOLD, ET AL., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | 0:15-CV-00046-DLB |
| | : | |
| v. | : | DISTRICT JUDGE |
| | : | DAVID L. BUNNING |
| KIM DAVIS, ET AL., | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT KIM DAVIS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND EXPENSES

Pursuant to Local Rule 7.1(c), Defendant, Kim Davis, hereby responds in opposition to Plaintiffs' Motion for Supplemental Award of Attorney's Fees and Costs Incurred on Appeal. (Dkt. 189.) For the following reasons, Plaintiffs' Supplemental Fee Motion should be denied in part.

## INTRODUCTION

In their Fee Motion, Plaintiffs seek an additional total of $201,592.60 in attorney's fees and $3,608.61 in expenses. (Dkt. 189, PageID #3239.) Astoundingly, Plaintiffs seek an award of attorney's fees for work that was performed over a couple of months that is eighty-one percent (81%) of the prior award for work that spanned almost a decade. Plaintiffs' request is patently unreasonable and should be reduced.

For comparison, in the prior award, Plaintiffs sought a total award of $33,446.40 based on 59.2 hours of work for a prior cert petition opposition brief at the Supreme Court. Even adding a response brief at the Sixth Circuit to that work, Plaintiffs now seek compensation for 191.55 hours of work (over three times the prior number), and compensation for four attorneys who participated in the appeal. Plaintiffs' prior fee award and the billed hours were almost entirely from two

attorneys for a decade of litigation, but their response to an appeal and petition for writ of certiorari that they claim was destined to fail required twice as many attorneys and nearly a quarter of the total time spent litigating the decade-long merits phase. That is excessive and unreasonable.

Section 1988 was intended to provide reasonable compensation and attract competent counsel for civil rights litigants, not to "produce windfalls to attorneys." *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983). Plaintiffs' request is patently unreasonable, excessive, and should be reduced significantly. Plaintiffs err by (a) seeking hourly rates far in excess of those appropriate for the Eastern District of Kentucky, where this case was litigated and tried, and (b) seeking compensation for time billed in excess of reason, particularly when compared to prior awards in this case.

Plaintiffs' failures demand significant reductions in the requested award. As recognized by numerous courts in the Sixth Circuit, a court is justified in "utiliz[ing] a simple across-the-board reduction by a certain percentage as an alterative to line-by-line reductions, particularly when the fee documentation is voluminous." *Project Vote v. Blackwell*, No. 1:06-CV-1628, 2009 WL 917737, *6 (N.D. Ohio Mar. 31, 2009). Neither Defendant nor this Court are required to "'and indeed should not' become a 'green-eyeshade accountant' when reviewing a timesheet for attorney's fees." *L.H. v. Hamilton Cnty. Dep't of Educ.*, 356 F. Supp. 3d 713, 726-27 (E.D. Tenn. 2019) (quoting *Fox v.* Vice, 563 U.S. 826, 838 (2011)). Defendant's suggested percentage reductions for Plaintiffs' billing errors are appropriate and justified by precedent throughout the Sixth Circuit. Plaintiffs' requested attorney's fees should be reduced to $50,000.00, with expenses paid in the amount of $3,608.61.00.

# ARGUMENT

Section 1988 provides that "the court, in its discretion, may allow a prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. §1988(b). While there is little question that a prevailing party is entitled a reasonable attorney's fee, "[t]he amount of the fee, of course, must depend on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). And, the burden to establish both entitlement to and the reasonableness of an attorney's fee under Section 1988 rests squarely on the movant. *Id.* at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."); *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award.").

"The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed*, 179 F.3d at 471. "A reasonable fee under §1988 is one that is 'sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case' but does not 'produce a windfall to attorneys.'" *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 601 (6th Cir. 2014) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). The starting place for an award of attorney's fees is the "lodestar" amount, "which is the proven number of hours reasonably expended on the case by an attorney multiplied by his court-ascertained reasonable hourly rate." *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994). When awarding attorney's fees to a party claiming to have prevailed, the district court must "provide a concise but clear explanation for its reasons for the fee award" and "should make clear that it has considered the relationship between the amount of fees awarded and the results obtained." *Hensley*, 461 U.S. at 437.

3

**A. Plaintiffs improperly seek rates far exceeding those appropriate for the Eastern District of Kentucky for out-of-town counsel.**

"A trial court, in calculating the 'reasonable hourly rate' component of the computation, should initially assess the *prevailing market rate in the relevant community*." *Adcock-Ladd* 227 F.3d at 350 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)) (emphasis original).[1] Here, it is Plaintiffs' burden to demonstrate the appropriateness and reasonableness of the relevant rate requested. *Blum*, 465 U.S. at 895 n.11 ("courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates."). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command *within the venue of the court of record*." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007) (emphasis added). *See also Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 601 (6th Cir. 2014) (same).

> The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, *rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge.*

*Adcock-Ladd*, 227 F.3d at 350 (cleaned up) (emphasis added). *See also Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, (6th Cir. 1983) ("[T]he community to be looked to was 'the jurisdiction where the case was tried.'" (quoting *Horace v. City of Pontiac*, 624 F.2d 765, 770 (6th Cir. 1980)).

---

[1] Defendant acknowledges that the Court has previously considered this argument and rejected it. (Doc. 165, PageID #2584.) Defendant respectfully submits that decision was in error and should not be adopted here as to the Supplemental Fee Award.

Here, Plaintiffs contend that certain counsel are entitled to an award of rates far exceeding those of the Eastern District of Kentucky. (Dkt. 189, PageID #3243.) Plaintiffs suggest that attorneys for Institute for Constitution Advocacy and Protection at Georgetown Law (ICAP) should be awarded rates established in the Washington D.C. market, namely $581.00 per hour for Attorney William Powell, $948.00 per hour for Attorneys Samuel Siegel and Joseph Mead, and $1,141.00 per hour for Attorney Kelsi Brown Corkran. (Dkt. 189, Page ID #3244.)

For Attorney Corkran, Plaintiffs' requested rates are for an attorney with over 20 years of experience. (*Id.*) But Plaintiffs' prior counsel with nearly forty years of experience received only $375.00 per hour at premium. (*See* dkt. 157, PageID #2216.) So, Plaintiffs now request three times the rate for counsel of presumably equivalent (or even less) experience. That is unreasonable and should not be awarded.

More unreasonable still is Plaintiffs' request for hourly rates of $948 for Attorneys Siegel and Mead, who have 13 and 18 years of experience respectively. (Dkt. 189, PageID #3244.) That request is likewise three times the rate of Attorney Buckles, who has identical years of experience. (*See* dkt. 157-2.) And, worse still, it is over 2.5 times the rate of Plaintiffs' other attorney who has nearly forty years of experience, or double that of Plaintiffs' trial counsel. That is unreasonable, excessive, and should be reduced.

Finally, and the most unreasonable of all requested rates, is Plaintiffs' request for $581 per hour for Attorney Powell. Mr. Powell has 6 years of experience. (Dkt. 189, PageID #3244.) He seeks rates 1.5 times greater than Plaintiffs' prior counsel with 37 years of experience. So, despite having 31 years less experience than Attorney Gartland, Plaintiffs seek compensation for Attorney Powell far above their trial counsel with exponentially greater experience. That is unreasonable, excessive, and cannot be awarded.

Plaintiffs' basis for claiming an award of rates far exceeding the Eastern District of Kentucky—the relevant market where the case was tried and where Plaintiffs' instant Motion pends—is based on the matrix maintained by the United States Attorney's Office in Washington D.C., and not any substantive or relevant authorities from the relevant jurisdiction. (Dkt. 189, PageID #3243.) And, ICAP suggests that the requested rates are justified because of their knowledge of the special kinds of arguments needed to oppose a writ of certiorari at the Supreme Court. (*Id.*) This is the definition of a windfall, and should be reduced.

Logic and precedent dictate a different result. Abundant precedent (and common sense among litigators who present arguments to the Supreme Court) suggest that—contrary to ICAP's contention—there is no "specialized or deep experience" (dkt. 189, PageID #3244) required for opposing something that is routinely denied thousands of times per year. *See, e.g.*, *Idaho Dep't of Employment v. Smith*, 434 U.S. 100, 104 (1977) (Stevens, J., dissenting) ("We are much too busy to correct every error that is called to our attention in the thousands of certiorari petitions that are filed each year."); *Singelton v. C.I.R.*, 439 U.S. 940, 946 (1978) (Stevens, J., opinion) (noting the "processing of thousands of certiorari petitions that are reviewed each year). *See also* Tom Staunton, *Annual Survey of Am. Law* 1992/1993 ANNSAL 347, 353 (1994) (noting the "thousands of unofficial pronouncements that are made in the form of certiorari denials").

ICAP's contention that they have specialized expertise in obtaining denials of certiorari, and that this purported expertise was required here, rings hollow. Something that is a virtual statistical certainty cannot require expertise to obtain. As Justice Marshall has pointed out, viewing a case as an inappropriate vehicle for certiorari review is quite common. As he noted, "in the thousands of cases in which we annually deny certiorari," the Justices routinely see "many cases in which a colleague's dissent from the denial of certiorari pointed to an issue of great concern . .

. but in which we did not join because we did not consider the case to be an appropriate vehicle for determination of that issue." *United States v. Kras*, 409 U.S. 434, 461 & n.3 (1973) (Marshall, J. dissenting). Indeed, "the denial of certiorari should suggest, again, nothing at all about the views of any other Members of the Court on the merits of the petition." *Id.* 461 n.3. "Under this definition of expertise, apparently anyone . . . should be considered an expert in the field." *Parker v. United States*, No. 4:92-CV-28, 1993 WL 300184, *5 n.10 (W.D. Mich. May 10, 1993).

ICAP's precise contention was addressed in *Deal ex rel Deal v. Hamilton Cnty. Dep't of Educ.*, No. 1:01-cv-295, 2006 WL 2854463 (E.D. Tenn. Aug. 1, 2006). There, the district court correctly noted that "the fact remains that obtaining certiorari is a much more difficult task than defeating a petition for certiorari based on the *miniscule percentage of petitions granted* by the Supreme Court." *Id.* at *16 (emphasis added). As such, "while it may behoove a party to hire extremely experienced Supreme Court practitioners to craft a petition for certiorari, the need for experienced practitioners is not as great when drafting an opposition to a petition for certiorari." *Id.* at *15. And, because of this indisputable fact, Plaintiffs are not entitled to rates far in excess of those appropriate for the Eastern District of Kentucky, for a practice that requires no expertise.

Much like Plaintiffs here, the plaintiffs in *Wayne v. Village of Sebring* argued that "the court should have considered the prevailing market rates for the attorney's home practice." 36 F.3d 517, 533 (6th Cir. 1994). The Sixth Circuit rejected that argument, finding instead that it was proper for the district court "to apply *local* market rates." *Id.* (emphasis added). Where, as here, "competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by an out-of-town specialist." *The N.E. Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 716 (6th Cir. 2016). Since no expertise is required to obtain that which thousands of attorneys obtain every year (*i.e.*, a denial of certiorari),

7

no out-of-town rates are warranted or appropriate here. Indeed, "Section 1988 does not guarantee civil rights plaintiffs the best counsel in the country; it guarantees them competent counsel." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). And, alleged "[p]roof that [ICAP] has a national reputation for expertise in this kind of litigation does not constitute proof that [its] expertise was necessary." *Id.* The rates for ICAP attorneys should therefore be reduced to the relevant community rates.

> **B.** **Plaintiffs improperly rely solely on ICAP's own affidavits and out-of-market and irrelevant precedent to support the requested rates far exceeding those appropriate for the Eastern District of Kentucky.**

Leaving aside that no specialization was required to oppose a petition that is routinely denied by the thousands every year, ICAP's requested rates are unreasonable for a separate and independent reason—they are supported solely by the affidavits of the attorneys requesting them. As the Supreme Court has recognized, "the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (emphasis added). *See also Dye v. Bellsouth Tele., Inc.*, 462 F. Supp. 2d 485 (W.D. Tenn. 2006) (same). Here, ICAP attorneys submit only the Mead Declaration to suggest that they are experts in the field of opposing certiorari and that rates far in excess of the relevant community are justified. (*See generally* dkt. 189-1.) No other satisfactory evidence is submitted to demonstrate the need for their participation, except the Laffey Matrix, that other counsel in the Eastern District of Kentucky could not have provided similar services, or that Plaintiffs sought unsuccessfully to obtain local counsel skilled enough to obtain a certiorari denial that is all but a statistical certainty in just about every case. That fact alone demands reducing the rates of ICAP attorneys to the relevant market rates in the Eastern District of Kentucky.

### C. ICAP's requested award should be reduced to $50,000.00 for comparable work already awarded in this litigation.

In addition to requesting unreasonable rates, the hours billed by Plaintiffs' counsel are excessive and redundant. "In calculating a fee applicant's lodestar, a district court should exclude hours that were not reasonably expended by counsel." *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm.*, 590 F. App'x 597, 602 (6th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "It is the responsibility of the prevailing party's counsel to exclude from their fee requests those hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* at 602-03 (quoting *Hensley*, 461 U.S. at 434).

For example, Attorney Powell billed 43 hours for oral argument preparation. (Dkt. 189, PageID #3276.) Courts have similarly reduced hours spent preparing for oral argument of similar numbers when clearly excessive. *E.g.*, *Bisig v. Time Warner Cable, Inc.*, 2018 WL 11474559, *13 (W.D. Ky. Jan 30, 2018) (finding 37.1 and 32.2 hours of oral argument preparation time "wildly excessive" and reducing by 50%); *Putnam v. Davies*, 960 F. Supp. 1268, 1276 (S.D. Ohio 1997) (finding 38.75 hours of oral argument preparation excessive and reducing by 50%). This Court should find similarly.

On the briefing, counsel also billed excessive hours on the briefing. Attorney Powell spent 115.75 hours on the response brief at the Sixth Circuit (dkt. 189-1, PageID #3277); and that was combined with another 11.3 hours from Attorney Corkran and another 14.1 hours from Attorney Mead. All told, Plaintiffs' counsel spent 141.15 hours briefing what they described as an appeal that was destined to fail. This is excessive and should be reduced. Counsel's sworn testimony states that they are experts in this type of appeal (dkt. 189-1, PageID #3248), but needed over 140 hours to brief a claim that Plaintiffs contend was unsurprising "los[s] yet again." (Dkt. 188, PageID #3199.) Courts routinely find similar hours excessive for counsel with particular expertise, as

Plaintiffs' counsel claim here. *Fox v. Washington*, 2024 WL 4249802, *3 (W.D. Mich. Sept. 4, 2024). Indeed, "[w]hile . . . thorough research is foundational to effective advocacy," counsel with claimed expertise should be reduced when "there appears to be a disproportionate allocation of time" towards research on what they claim are "relatively well-established principles of law." *In re Vaughn*, 660 B.R. 827, 863 (S.D. Ohio 2024). Plaintiffs' claimed hours are excessive and should be reduced.

Based on the rates this Court has awarded in similar cases, *e.g.*, *Miller v. Davis*, 267 F. Supp. 3d 961 (E.D. Ky. 2017) (BUNNING, J), and reducing ICAP's requested rates to those appropriate for the jurisdiction in which this case was tried and in which Plaintiffs' instant Motion pends, and after reducing the requested hours by an appropriate percentage to match the prior work in the case, Plaintiffs award should be reduced to $50,000.00, which is still 1.5 times more than the prior award for similar work.

## CONCLUSION

For the foregoing reasons, Plaintiffs' requested fee award should be reduced to $50,000.00 with expenses paid in the amount of $3,608.61 as requested by Plaintiffs.

Respectfully submitted,

                                        /s/ Daniel J. Schmid
A.C. Donahue                            Mathew D. Staver
Donahue Law Group, P.S.C.               Horatio G. Mihet
P.O. Box 659                            Daniel J. Schmid
Somerset, Kentucky 42502                LIBERTY COUNSEL
(606) 677-2741                          P.O. Box 540774
ACDonahue@DonahueLawGroup.com           Orlando, Florida 32854
                                        (407) 875-1776
                                        hmihet@LC.org
                                        dschmid@LC.org
                                        court@LC.org

                                        *Attorneys for Defendant, Kim Davis*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 22nd day of December, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's NEF/electronic notification system.


                                        /s/ Daniel J. Schmid
                                        Daniel J. Schmid