**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

| | | |
|---|---|---|
| **DAVID ERMOLD, ET AL.,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | **0:15-CV-00046-DLB** |
| **v.** | : | **DISTRICT JUDGE DAVID L. BUNNING** |
| **KIM DAVIS, ET AL.,** | : | |
| **Defendants.** | : | |

## DEFENDANT KIM DAVIS'S RESPONSE TO SHOW CAUSE ORDER

Defendant Kim Davis, pursuant to L.R. 7.1 and in accordance with the Court's Order (Doc. 204) hereby files this Response to the Court's Order to Show Cause why sanction should not be imposed for alleged discovery abuses. For the reasons that follow and for those articulated in Davis's Declaration in Support filed simultaneously herewith, sanctions are unwarranted, unsupported by the record, and should not be imposed.

## FACTUAL BACKGROUND

On December 28, 2023, the Court entered Judgement in this matter awarding damages and attorney's fees and costs to Plaintiffs (Doc. 201–1), and subsequently entered an order on fees and costs from an appeal Davis pursued after Judgment. (Doc. 200.) Eight months after the Court entered Judgment, Plaintiffs served post-judgment discovery on Davis, seeking information relating to her assets and the Judgment. (*See* Doc. 190, at 3.) On December 18, 2025, Davis provided her complete responses and objections to Plaintiffs' post-judgment discovery requests (*see* Doc. 191–1), and produced the remainder of the responsive documents that she had in her custody, possession, and control on January 28, 2026. (Doc. 195.)

On July 28, 2026, Plaintiffs filed the Motion (Doc. 201) giving rise to the Court's Show Cause Order (Doc. 204) on the premise that Davis abused the discovery process by providing what Plaintiffs contend were "demonstrably false" answers to post-judgment discovery requests. (Doc. 201, at 1.) Plaintiffs contend that Davis's answers were "not merely incomplete," but allegedly "contradicted by recorded instruments." (Doc. 201, at 6.) On the basis of those claims, Plaintiffs filed a state-court suit in the Rowan County Circuit Court (Doc. 201–1) seeking to avoid the alleged transfers Davis allegedly made personally.[1] Davis responded to that Motion preliminarily, contending that the request was at least premature and should be held pending the outcome of the suit. (Doc. 202, at 2–8.) The Court disagreed with that contention, noting its conclusion that the relief sought in each separate matter was distinct, and that it could proceed to the merits of Plaintiffs' Motion notwithstanding the ongoing and unresolved questions in the state suit. (Doc. 204, at 3–4.)[2] The Court then entered its Show Cause Order (Doc. 204). Davis hereby provides her response to that Order.

On January 11, 2025, Davis's mother passed away. Davis was tasked with administering her late mother's estate in accordance with the specific instructions she provided to Davis and her

[1] As noted in Davis's initial response to Plaintiffs' Motion, the undersigned counsel are not counsel of record in the state court suit and were retained solely to provide a defense in the action pending in this Court. (Doc. 202, at 1 n.1.) The undersigned are not licensed to provide and do not provide an opinion or contentions concerning the merits of the state suit or the facts alleged therein.

[2] Davis notes, only for the record, that her contentions concerning the Court holding Plaintiffs' Motion in abeyance or staying resolution of it until resolution of the state-court proceeding were not premised on a jurisdictional argument (Doc. 204, at 3), but merely a matter of comity and federalism that counseled in favor of the Court exercising its discretion to await the outcome of the suit prior to making any determinations in this matter. Nevertheless, regardless of the nomenclature ascribed to Davis's contentions, she understands the Court exercised its discretion to continue with resolution of Plaintiffs' Motion.

family before her passing. (*See* Declaration of Kim Davis in Response to Show Cause Order, "Davis Decl.," ¶¶11–14.)

In response to Plaintiffs' discovery requests, Davis provided true and correct answers to each of them to the best of her knowledge. (Davis Decl., ¶3.) As Davis testifies, she "signed the interrogatory responses and responses to the requests for production." (*Id.*, ¶2.) The undersigned counsel provided Davis with Plaintiffs' Post-Judgment Discovery Requests and asked for her to provide the answers to the interrogatories and the documents responsive to the requests to the best of her knowledge and understanding. (Davis Decl., ¶3.) Davis provided truthful answers to each one. (*Id.*) The answers Davis provided to her attorneys and that they provided to Plaintiffs were true and correct to the best of her knowledge. (*Id.*)

Davis is not now, nor has she ever been, a beneficiary of any trust. (Davis Decl., ¶4.) Davis's response to Interrogatory No. 10, which was provided in full in her First Supplemental Responses and Objections to Plaintiff's Post-Judgment Discovery, stated that Davis is "not the beneficiary of any trust," and her response to Request for Production No. 10, which was provided in full in the Second Supplemental Responses and Objections to Plaintiff's Post-Judgment Discovery, stated that Davis has no responsive documents to the request because she was not the beneficiary of any trust. (Davis Decl., ¶5.) Davis's responses were true then and are true now to the best of her knowledge. Davis cannot identify any trust in which she is named beneficiary, because there is no such trust. (*Id.*).

In Interrogatory No. 4, Davis was asked to identify any property that she owns. (Davis Decl., ¶6.) In Davis's First Supplemental Responses and Objections to Plaintiff's Post-Judgment Discovery, Davis stated that she owns no property and has no interest in any property. (*Id.*). As Davis testifies, her response was and is true and correct to the best of her knowledge. (*Id.*).

Similarly, in Davis's response to Request for Production No. 6, which was provided in full in her Second Supplemental Responses and Objections to Plaintiff's Post-Judgment Discovery, Davis stated that she owns no real property and thus did not have any documents responsive to this Request. (Davis Decl., ¶7.) As Davis testifies, her response was and is true and correct to the best of her knowledge. (*Id.*)

In Davis's Second Supplemental Responses and Objections to Plaintiff's Post-Judgment Discovery, in response to Request for Production No. 8, Davis stated that the only transfer valued over $1,000.00 was the assumption of debt by Charles M. Davis, which she more fully discussed in response to Interrogatory No. 13. (Davis Decl., ¶8.) As Davis testifies, her response was and is true and correct to the best of her knowledge. (*Id.*) Similarly, in her First Supplemental Responses and Objection to Plaintiff's Post-Judgment Discovery, in response to Interrogatory No. 8, Davis stated that she has "made no personal transfers of either gifts, funds, or other assets that exceed $2,000.00." (Davis Decl., ¶9.) As Davis testifies, her response was and is true and correct to the best of her knowledge. (*Id.*)

Davis understands that Plaintiffs have challenged her answers on the basis that transfers of property that were owned solely and exclusively by her late mother were actually transfers that Davis made. (Davis Decl., ¶10.) Davis did not understand such an assertion to be true then, and she does not believe it is true now. (*Id.*) As Davis testifies, if her understanding was incorrect or mistaken, her answers were not given out of any intent to deceive or to be untruthful, but rather were the product of her understanding at the time she provided her answers and her understanding even now. (*Id.*)

Davis's answers to the discovery requests that asked for answers and documents concerning transfers of property that she made personally reflected her honest and, what Davis

believes is correct, knowledge of the information. (Davis Decl., ¶11.) As Davis testifies, she has made no personal transfers of property that she owned because she was merely the conduit and administrator transferring property in the manner that her late mother explicitly stated was her desire. (*Id.*) Davis's mother articulated that desire to Davis and her family, and Davis's mother was clear in her desires and intentions. (*Id.*) Davis's late mother provided specific instructions to Davis and her family as to how she wanted her property distributed upon her passing. (Davis Decl., ¶12.) Davis did not receive anything from my mother's estate because her mother fully articulated her desire to her children that the properties be placed in trust with some of her grandchildren being the caretakers of properties that Davis's family has had in its possession for many years with long familial ties. (*Id.*) Davis's mother's clearly stated intent was for the properties to be passed in a manner that recognized the generations as merely caretakers. (*Id.*) As such, Davis understood then and believes now that she was merely acting as an administrator of her mother's estate to execute her mother's wishes to the best of her ability. (Davis Decl., ¶13.)

In accordance with the strict instructions provided to Davis and her family by Davis's late mother, a trust was created by an attorney in the Commonwealth of Kentucky to facilitate the distribution of Davis's mother's estate in accordance with her wishes. (Davis Decl., ¶14.) As Davis testifies, she was not then, is not now, and has never been intended as a beneficiary of that trust. (Davis Decl., ¶15.) Davis, along with her brother, were merely the ones that their mother tasked with ensuring that her estate passed in accordance with her wishes. (*Id.*) Davis's mother specifically requested that the property be distributed in the manner in which it was distributed so that the caretaking of long familial property would continue to the subsequent generations of the family. (Davis Decl., ¶16.) Davis had no intent then, and has no intent now, to avoid anything. (Davis Decl., ¶17.) Davis had no intent then, and has no intent now, to conceal anything or to

otherwise answer in any way other than the truth as she understood it to be. (*Id.*) As Davis testifies, she understood her answers to be accurate reflections of the manner in which property was distributed in accordance with her mother's wishes. (*Id.*)

When Davis answered that she owned no property, that was true because she does not and has not owned any property, including the properties that Plaintiffs have sued about in state court. (Davis Decl., ¶18.) The properties that were listed in the state-court suit belonged to Davis's late mother and late father, and Davis and her brother ensured that they were given to the individuals that their mother requested receive them upon her passing. (*Id.*) As Davis testifies, she loved her mother dearly and promised her that Davis and her brother would act in accordance with her wishes upon her passing. (*Id.*) Davis believes that she did that by requesting the attorneys in the Commonwealth of Kentucky draft a trust document to distribute the properties in the manner that Davis's mother desired. (*Id.*)

Davis was not informed by those creating the trust that her understanding of the creation of a trust to administer her mother's estate had any meaning other than the one she understood to be true or that its effect was not as she understood it to be. (Davis Decl., ¶19.) Davis thus had no reason then and does not believe now that her understanding was not accurate or that her answers to Plaintiffs' interrogatories and requests were not truthful and accurate. (*Id.*) As Davis testifies, she believes them to be true and correct to the best of her knowledge. (*Id.*)

If Davis's understanding is determined to have been inaccurate or incomplete, it was neither incomplete nor inaccurate in her mind at the time that she gave each of her responses. (Davis Decl., ¶ 20.) As Davis swears in her declaration, she would never knowingly provide false answers, and she did not do so here. (*Id.*) If her understanding was inaccurate, then it was completely and honestly the result of misunderstanding or mistake, but not intent. (*Id.*) Davis offers

her sworn testimony to explain her answers to the discovery requests at issue, the reasons for them, and the reasons why Davis believed then and believes now that those answers were true and accurate to the best of her knowledge. (Davis Decl., ¶21.) As she testifies, Davis's answers and responses were, indeed, answered to the best of her knowledge and belief as she subscribed at the end of each response. (*Id.*)

## ARGUMENT

The Court should deny Plaintiffs' Motion for Sanctions (Doc. 201) because Davis has shown cause why her answers to discovery requests were not the result of any intent to deceive or conceal anything, and she did not knowingly provide any false answers to her counsel or to Plaintiffs. The Court should decline to exercise its inherent authority to impose sanctions because Davis's sworn testimony demonstrates that allegedly incomplete, inaccurate, or false answers, if found to be incomplete or inaccurate, did not arise from any bad faith.

### I. Rules-based sanctions are unwarranted because Davis had no intent to deceive and did not knowingly provide false answers to any discovery request.

Plaintiffs contend in their Motion that Davis's discovery responses were knowingly false. (Doc. 201, at 5–7.) Plaintiffs further contend that Davis's discovery responses were materially false and intentionally concealing. (Doc. 201, at 6.) Each contention is incorrect and unsupported by the record before the Court. First, materially false or perjurious answers require a finding of specific intent and cannot be the result of confusion, mistake, or misunderstanding. Davis's sworn testimony before the Court demonstrates that she had no specific intent to provide incomplete, inaccurate, or false answers to any discovery request, and to the extent the Court finds that any answer was incomplete or inaccurate, Davis's sworn testimony demonstrates that it was the result of a mistake or misunderstanding.

**A. Materially false or perjurious answers require a finding of specific intent and cannot be the result of confusion, mistake, or misunderstanding.**

A party seeking sanctions for conduct it claims was materially false or abusive of the discovery process, as Plaintiffs contend here (Doc. 201, at 7), must demonstrate that the party against whom sanctions are sought acted in bad faith, willfully, or with fault. *See Ricci v. Scott*, 2026 WL 1147611, *10 (W.D. Ky. Apr. 28, 2026). That, in turn, requires a showing that the allegedly offending party "display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his or her conduct on the proceedings." *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013). A discovery response that is the result of confusion, mistake, faulty memory, or misunderstanding is not a materially false or perjurious answer. *See, e.g.*, *United States v. Boring*, 557 F.3d 707, 712 (6th Cir. 2009) ("The elements of perjury are 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than the result of confusion, mistake, or faulty memory.'" (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). *See also United States v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) (same).

**B. Davis had no specific intent to provide incomplete, inaccurate, or false answers to any discovery request, and to the extent the Court finds that any answer was incomplete or inaccurate, Davis's sworn testimony demonstrates that it was the result of a mistake or misunderstanding.**

Davis's sworn testimony before the Court demonstrates that her answers were not provided with any intent to deceive, conceal, or evade anything, and that she had no specific intent to provide materially false answers. Davis understands that Plaintiffs have challenged her answers on the basis that transfers of property that were owned solely and exclusively by her late mother were actually transfers that Davis made. (Davis Decl., ¶10.) Davis did not understand such an assertion to be true then, and she does not believe it is true now. (*Id.*) As Davis testifies, if her understanding was incorrect or mistaken, her answers were not given out of any intent to deceive or to be

untruthful, but rather were the product of her understanding at the time she provided her answers and her understanding even now. (*Id.*)

Davis's answers to the discovery requests that asked for answers and documents concerning transfers of property that she made personally reflected her honest and, what Davis believes is correct, knowledge of the information. (Davis Decl., ¶11.) As Davis testifies, she has made no personal transfers of property that she owned because she was merely the conduit and administrator transferring property in the manner that her late mother explicitly stated was her desire. (*Id.*) Davis's mother articulated that desire to Davis and her family, and Davis's mother was clear in her desires and intentions. (*Id.*) Davis's late mother provided specific instructions to Davis and her family as to how she wanted her property distributed upon her passing. (Davis Decl., ¶12.) Davis did not receive anything from my mother's estate because her mother fully articulated her desire to her children that the properties be placed in trust with some of her grandchildren being the caretakers of properties that Davis's family has had in its possession for many years with long familial ties. (*Id.*) Davis's mother's clearly stated intent was for the properties to be passed in a manner that recognized the generations as merely caretakers. (*Id.*) As such, Davis understood then and believes now that she was merely acting as an administrator of her mother's estate to execute her mother's wishes to the best of her ability. (Davis Decl., ¶13.)

In accordance with the strict instructions provided to Davis and her family by Davis's late mother, a trust was created by an attorney in the Commonwealth of Kentucky to facilitate the distribution of Davis's mother's estate in accordance with her wishes. (Davis Decl., ¶14.) As Davis testifies, she was not then, is not now, and has never been intended as a beneficiary of that trust. (Davis Decl., ¶15.) Davis, along with her brother, were merely the ones that their mother tasked with ensuring that her estate passed in accordance with her wishes. (*Id.*) Davis's mother

specifically requested that the property be distributed in the manner in which it was distributed so that the caretaking of long familial property would continue to the subsequent generations of the family. (Davis Decl., ¶16.) Davis had no intent then, and has no intent now, to avoid anything. (Davis Decl., ¶17.) Davis had no intent then, and has no intent now, to conceal anything or to otherwise answer in any way other than the truth as she understood it to be. (*Id.*) As Davis testifies, she understood her answers to be accurate reflections of the manner in which property was distributed in accordance with her mother's wishes. (*Id.*)

When Davis answered that she owned no property, that was true because she does not and has not owned any property, including the properties that Plaintiffs have sued about in state court. (Davis Decl., ¶18.) The properties that were listed in the state-court suit belonged to Davis's late mother and late father, and Davis and her brother ensured that they were given to the individuals that their mother requested receive them upon her passing. (*Id.*) As Davis testifies, she loved her mother dearly and promised her that Davis and her brother would act in accordance with her wishes upon her passing. (*Id.*) Davis believes that she did that by requesting the attorneys in the Commonwealth of Kentucky draft a trust document to distribute the properties in the manner that Davis's mother desired. (*Id.*) Davis was not informed by those creating the trust that her understanding of the creation of a trust to administer her mother's estate had any meaning other than the one she understood to be true or that its effect was not as she understood it to be. (Davis Decl., ¶19.) Davis thus had no reason then and does not believe now that her understanding was not accurate or that her answers to Plaintiffs' interrogatories and requests were not truthful and accurate. (*Id.*) Davis believes them to be true and correct to the best of her knowledge. (*Id.*)

If Davis's understanding is determined to have been inaccurate or incomplete, it was neither incomplete nor inaccurate in her mind at the time that she gave each of her responses.

(Davis Decl., ¶ 20.) As Davis swears in her declaration, she would never knowingly provide false answers, and she did not do so here. (*Id.*) If her understanding was inaccurate, then it was completely and honestly the result of misunderstanding or mistake, but not intent. (*Id.*) Davis offers her sworn testimony to explain her answers to the discovery requests at issue, the reasons for them, and the reasons why Davis believed then and believes now that those answers were true and accurate to the best of her knowledge. (Davis Decl., ¶21.) Davis's responses were, indeed, answered to the best of her knowledge and belief as she subscribed at the end of each response.

Simply put, Davis had no specific intent to provide an allegedly false or incomplete answer. The answers she provided to her counsel in response to the interrogatories and document requests, and that she subscribed her name to at the bottom of the discovery responses were in accordance with her best understanding. If she was incorrect, or the Court finds that her answers were not in conformance with the operations of laws in the Commonwealth of Kentucky, Davis's answers were at best an honest mistake and should not be sanctionable. As this Court has noted, "[a]n honest mistake or one that would not indicate bad faith or an attempt to conceal information, which would include a genuine misinterpretation or misunderstanding of a rule or order." *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013)

## II. The Court should decline to exercise its inherent authority to impose sanctions because Davis's allegedly incomplete, inaccurate, or false answers did not arise from any bad faith.

### A. Inherent authority sanctions require some showing of bad faith on the part of the party allegedly abusing discovery processes.

Importantly, though inherent authority sanctions are permissible, a "court should ordinarily rely on the Rules rather than the inherent power" to impose sanctions. *Metz v. Unizan Bank*, 655 F.3d 485, 491 (6th Cir. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991)). Nevertheless, "[b]ecause of their very potency, inherent powers must be exercised with restrain

and discretion." *Chambers*, 501 U.S. at 45. And the discretion to impose a discovery sanction should only be exercised "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 46 (cleaned up). *See also id.* (permitting inherent authority sanctions "when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order"). The Sixth Circuit, too, requires a showing of bad faith conduct to impose an inherent authority sanction. *See, e.g.*, *Metz*, 655 F.3d at 491 (noting that a court can impose an inherent authority sanction for "bad-faith conduct"); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) ("[T]he imposition of inherent authority sanctions requires a finding of bad faith . . . or conduct that is tantamount to bad faith.").

**B. Davis's sworn testimony before the Court demonstrates there was no bad faith in any answer that she provided.**

To warrant a finding of bad faith, the Sixth Circuit requires "a clear record of delay or contumacious conduct," *i.e.*, a "perverse resisting authority or stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013). In other words, "[a] party's conduct is motivated by bad faith, willfulness, or fault if it displays either an intent to thwart judicial proceedings or a reckless disregard for the effect of his or her conduct on those proceedings." *Ricci v. Scott*, 2026 WL 1147611, *10 (W.D. Ky. Apr. 28, 2026) (quoting *Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019)).

As demonstrated *supra* Section I.B, Davis's answers and responses to Plaintiffs' discovery requests were neither intentional, willful, nor provided in bad faith. Davis's sworn testimony before the Court demonstrates that her answers were not provided with any intent to deceive, conceal, or evade anything, and that she had no specific intent to provide materially false answers. (Davis Dec., ¶10.) And, even if her understanding was incorrect, she did not provide answers with the intent to deceive or act in bad faith. (*Id.*)

Nor, for that matter, can her answers and responses be considered a reckless disregard for the effect of her answers. Davis, in accordance with the strict instructions provided to Davis and her family by Davis's late mother, sought the advice of an attorney in the Commonwealth of Kentucky to facilitate the distribution of Davis's mother's estate in accordance with her wishes. (Davis Decl., ¶14.) Davis was not informed by those creating the trust that her understanding of the creation of a trust to administer her mother's estate had any meaning other than the one she understood to be true or that its effect was not as she understood it to be. (Davis Decl., ¶19.) Davis thus had no reason then and does not believe now that her understanding was not accurate or that her answers to Plaintiffs' interrogatories and requests were not truthful and accurate. (*Id.*) When she provided her answers to counsel's questions concerning Plaintiffs' post-judgment discovery requests, it was the understanding she had concerning the distribution of her mother's estate and an understanding that was not corrected by those with knowledge of the issue in the Commonwealth of Kentucky. Davis believed the answers she provided to counsel were correct, that her subscription at the bottom of her responses was accurate and true, and believes it to be now.

To the extent Davis's beliefs and honest answers were mistaken, it was just that—an honest mistake. And honest mistakes do not amount to bad faith. As the Sixth Circuit has recognized, "bad faith . . . is a common term of art," *United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017), and is defined as "*not prompted by an honest mistake* as to one's rights or duties, but by some interested or sinister motive." *Id.* (quoting *Black's Law Dictionary* 139 (6th ed. 1990)) (emphasis added). Because Davis's honest mistake (if it even was a mistake at all) does not amount to bad faith, inherent authority sanctions are inappropriate.

## CONCLUSION

For the foregoing reasons, Davis respectfully submits that she has shown sufficient cause to withstand Plaintiffs' Motion for Sanctions. Davis's conduct was not the result of intentional misleading or any specific intent to conceal or avoid anything. Davis provided her answers to Plaintiffs and swore to those answers on the basis of her good faith beliefs that her answers were true and correct to the best of her knowledge. Davis did not display any bad faith, and sanctions are unwarranted. Davis therefore respectfully requests that the Motion be denied.

Respectfully submitted,

A.C. Donahue
Donahue Law Group, P.S.C.
P.O. Box 659
Somerset, Kentucky 42502
(606) 677-2741
ACDonahue@DonahueLawGroup.com

/s/ Daniel J. Schmid
Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
Liberty Counsel
P.O. Box 540774
Orlando, Florida 32854
(407) 875-1776
hmihet@LC.org
dschmid@LC.org
court@LC.org

*Attorneys for Defendant, Kim Davis*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of November, 2026, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's NEF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid